**BUCHANAN INGERSOLL & ROONEY PC**
Samantha Southall (*pro hac vice* forthcoming)
Jacqueline Weyand (01572011)
Natalie Peled (*pro hac vice* forthcoming)
550 Broad Street, Suite 810
Newark, New Jersey 07102-4582
(973) 273-9800
*Attorneys for Defendants Trans Union LLC, Neustar, Inc.,
and TransUnion Risk and Alternative Data
Solutions, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons, et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TRANSUNION, LLC, NEUSTAR, INC., TRANSUNION RISK AND ALTERNATIVE DATA SOLUTIONS, INC., RICHARD ROES l-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities,* <br><br> Defendants. | Case No.: |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 Defendant Trans Union LLC, ("TransUnion"), Neustar, Inc. ("Neustar"), and TransUnion Risk and Alternative Data Solutions, Inc. ("TRADS") (collectively, the "Defendants"), by and through their undersigned counsel, hereby remove this action from the Superior Court of the State of New Jersey, County of Bergen to the United States District Court for the District of New Jersey. In support of this Notice of Removal, Defendants state the following:

**D.N.J. LOCAL RULE 10.1 STATEMENT**

1. Pursuant to Local Civil Rule 10.1(a), the addresses of the named parties are as follows:

    a. Plaintiff Atlas is a Delaware corporation. It is located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

    b. Plaintiffs Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (collectively, the "Individual Plaintiffs") are natural persons. The Individual Plaintiffs did not disclose their street addresses in the Complaint. Defendants are not otherwise aware of their locations.

    c. Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of GENOVA BURNS LLC, 494 Broad Street, Newark, NJ 07012 and John A. Yanchunis, Esq., MORGAN & MORGAN, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

    d. Defendant TransUnion is a Delaware corporation with its principal place of business in Illinois.

    e. Defendant Neustar is a Delaware corporation with its principal place of business in Virginia.

    f. Defendant TRADS is a Delaware corporation with its principal place of business in Florida.

    g. Defendants Richard Roes 1-10 and ABC Companies 1-10 are fictitious names of unknown natural persons and entities. Defendants are not aware of the street and post office addresses of Richard Roes 1-10 or the principal places of business of ABC Companies 1-10.

      h.      Defendants TransUnion, Neustar, and TRADS are represented by Jacqueline M. Weyand of Buchanan Ingersoll & Rooney, PC, 550 Broad Street, Suite 810, Newark, NJ 07102-4582.

## NATURE OF CASE

2.      On February 8, 2024, Atlas Data Privacy Corporation ("Atlas") and the Individual Plaintiffs (collectively, "Plaintiffs") commenced this action against TransUnion and Neustar in the Superior Court of New Jersey, Law Division, Bergen County, entitled *Atlas Data Privacy Corporation, et al., v. Trans Union, LLC, et al.*, Docket No. BER-L-000810-24 (the "Action"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

3.      On February 16, 2024, Plaintiffs filed an Amended Complaint, naming TRADS as an additional defendant. A true and correct copy of the Amended Complaint is attached hereto as Exhibit B.

4.      TransUnion and Neustar were served on February 26, 2024. A true and correct copy of the Affidavits of Service are attached hereto as Exhibit C. Pursuant to 28 U.S.C. § 1446(a), the: (1) Complaint, (2) Amended Complaint, (3) Case Information Statement, and (4) Track Assignment Notice, constitute all pleadings, process, or orders served upon TransUnion and Neustar in this Action. As required by 28 U.S.C. § 1446(a), copies of all process, pleadings, and order in this matter are attached to this Notice of Removal. (Exs. A, B, & C).

5.      TRADS was served on March 8, 2024. A true and correct copy of the Affidavit of Service is attached hereto as Exhibit D. Pursuant to 28 U.S.C. § 1446(a), the: (1) Complaint, (2) Amended Complaint, (3) Case Information Statement, and (4) Track Assignment Notice, constitute all pleadings, process, or orders served upon TRADS in this Action. As required by 28

U.S.C. § 1446(a), copies of all process, pleadings, and order in this matter are attached to this Notice of Removal. (Exs. A, B, C, & D).

6. By filing this notice of removal, Defendants do not waive, and expressly preserve, any and all of Defendants' available rights, arguments, defenses, or objections.[1]

7. In their Complaint and Amended Complaint, Plaintiffs purport to assert claims against Defendants for their alleged violation of Daniel's Law, N.J. Stat. Ann. § 56:8-166 *et seq*. (*See, e.g.,* Ex. B, at ¶¶ 56-62). More specifically, Plaintiffs claim Defendants have failed to cease making available the home addresses or unpublished home telephone numbers of covered persons upon request pursuant to the statute.

8. In addition to the claims asserted by the Individual Plaintiffs, Atlas purports to assert claims on behalf of 19,517 unidentified individuals "who are all 'covered persons' under Daniel's Law (together, the 'Covered Persons'), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors." (Ex. B, at ¶ 25).

9. In their Amended Complaint, Plaintiffs seek to recover actual damages of not less than $1,000 for each violation, punitive damages, reasonable attorneys' fees, pre- and post-judgment interest and litigation costs. (*See* Ex. B, at p. 22).

---

[1] Defendants do not concede the veracity of any allegation pleaded against them. *Faltaous v. Johnson & Johnson*, 2007 WL 3256833, at *8 (D.N.J. Nov. 5, 2007) ("Defendant need not concede aspects of the complaint in order to prove federal jurisdiction."); *Samuel-Basset v. KIA Motors Am., Inc.*, 357 F.3d 392, 298, n. 3 (3d Cir. 2004) ("A pretrial ruling on jurisdictional facts should not be made if it constitutes a decision on the merits.").

10. Plaintiffs also allege that they are entitled to "injunctive relief" with respect to the "protected information" of each "Individual Plaintiff" and each unnamed "Covered Person." (*See id.*).

## GROUNDS FOR REMOVAL

11. "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) *quoting* 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart*, 574 U.S. at 87; *see Grace v. TG.I. Fridays, Inc.*, 2015 WL 4523639, at *3 (D.N.J. July 27, 2015). "No evidentiary support is required, and the Court should accept a defendant's allegations unless they are contested by the plaintiff or questioned by the Court." *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020 *citing* Dart*, 153 S. Ct. at 553.

12. This case is a civil action within the meaning of 28 U.S.C. § 1441.

13. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty (30) days of February 26, 2024, when TransUnion and Neustar were served with the Complaint and within thirty (30) days of March 8, 2024, when TRADS was served with the Amended Complaint.

14. This filing of the Notice of Removal in this Court is appropriate because the District of New Jersey is the District where the state court action is pending. 28 U.S.C. §§ 1441(a) and 1446(a).

15. Defendants have not answered or otherwise filed a responsive pleading. 28 U.S.C. § 1446(a).

## DIVERSITY JURISDICTION

16. Defendants are entitled to removal of the Action pursuant to 28 U.S.C. § 1332(a). Section 1332(a) vests the United States District Courts with original jurisdiction when: (1) the parties are citizens of different states, and (2) the amount in controversy exceeds $75,000.

**There is Complete Diversity of Citizenship**

17. There is complete diversity in this matter. For diversity jurisdiction to exist, there must be "complete" diversity, meaning that all plaintiffs must be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

### **Defendants**

18. TransUnion is incorporated in the State of Delaware and has its principal place of business in Illinois. TransUnion is a citizen of Delaware and Illinois for federal diversity purposes under 28 U.S.C. § 1332(a)(1).

19. Neustar is incorporated in the State of Delaware and has its principal place of business in Virginia. Neustar is a citizen of Delaware and Virginia for federal diversity purposes under 28 U.S.C. § 1332(a)(1).

20. TRADS is incorporated in the State of Delaware and has its principal place of business in Florida. TRADS is a citizen of Delaware and Florida for federal diversity purposes under 28 U.S.C. § 1332(a)(1).

21. RICHARD ROES 1-10 and ABC COMPANIES 1-10 are wholly fictitious and disregarded for purposes of removal. *See, e.g.*, *Dozier v. E. Mfg. Corp.*, 19-CV-21378, 2020 WL 3068191, at *1 (D.N.J. June 8, 2020).

**Individual Plaintiffs**

22. The Amended Complaint alleges that Plaintiff Jane Doe-1 is a police officer working in northern New Jersey. (*See* Ex. B, at ¶ 15). As an active law enforcement officer, Plaintiff Jane Doe-1's principal residence must be in the State of New Jersey law. *See* N.J.S.A. 52:14-7, N.J.S.A. 40A:14-122.8. Thus, Jane Doe-1 is a New Jersey citizen for federal diversity purposes under 28 U.S.C. § 1332(a)(1).

23. The Amended Complaint alleges that Plaintiff Jane Doe-2 is a veteran correctional police officer living in northern New Jersey. (*See* Ex. B, at ¶ 16). Thus, Jane Doe-2 is a New Jersey citizen for federal diversity purposes under 28 U.S.C. § 1332(a)(1).

24. The Amended Complaint alleges that Plaintiff Edwin Maldonado is an officer in the Plainfield, New Jersey Police Department. (*See* Ex. B, at ¶ 17). Maldonado is a citizen of New Jersey for federal diversity purposes under 28 U.S.C. § 1332(a)(1). *See* N.J.S.A. 52:14-7, N.J.S.A. 40A:14-122.8.

25. The Amended Complaint alleges that Plaintiffs Scott Maloney and Justyna Maloney are Rahway, New Jersey police officers and a married couple who live together in New Jersey. (Ex. B, at ¶ 18). Thus, they are New Jersey citizens for federal diversity purposes under 28 U.S.C. § 1332(a)(1). *See* N.J.S.A. 52:14-7, N.J.S.A. 40A:14-122.8.

26. The Amended Complaint alleges that Plaintiff Patrick Colligan is a veteran of the Franklin Township Police Department in Somerset, New Jersey. (Ex. B, at ¶ 22). He is therefore a New Jersey citizen for federal diversity purposes under 28 U.S.C. § 1332(a)(1). *See* N.J.S.A. 52:14-7, N.J.S.A. 40A:14-122.8.

27. The Amended Complaint alleges that Plaintiff William Sullivan is a veteran of the New Jersey Department of Corrections. (Ex. B, at ¶ 23). He is therefore a New Jersey citizen for

federal diversity purposes under 28 U.S.C. § 1332(a)(1).  *See* N.J.S.A. 52:14-7, N.J.S.A. 40A:14-122.8.

**Atlas Data Privacy Corporation**

28. Atlas is the purported assignee of the rights of 19,517 individuals who are all "covered persons" under Daniel's Law.  (Ex. B, at ¶ 25).

29. The assignees are described as individuals who are judges, law enforcement officers, prosecutors and/or family members of same. (*Id.*)

30. Upon information and belief, the assignees of Atlas are residents of New Jersey.[2]  *See* N.J.S.A. 40A:14-122.8 ("Every member of a police department and force shall be a resident of the State of New Jersey while serving in such position."); N.J.S.A. 52:14-7(a)(3) ("Every person holding an office, employment, or position … (3) with a county, municipality, or other political subdivision of the State or an authority, board, body, agency, district, commission, or instrumentality of the county, municipality, or subdivision … shall have his or her principal residence in this State and shall execute such office, employment, or position.").

31. Atlas is a Delaware corporation with its principal place of business located in New Jersey.  Therefore, for diversity purposes, Atlas is a citizen of Delaware and New Jersey.

32. While typically, the presence of Atlas would eliminate diversity jurisdiction (because Defendants also are Delaware corporations), this Court may disregard the citizenship of Atlas because it is not the real party in interest and, upon information and belief, the assignees partially assigned their rights to Atlas for the purpose of improperly and/or collusively defeating diversity jurisdiction.

---

[2] Atlas also asserts that the assignees include persons who "had previously resided or worked in New Jersey." (Ex. B, at ¶ 26).  Defendants are not in possession of the assignments, but, upon information belief, none of the assignees reside in Delaware, Illinois, Virginia, or Florida.

33. In *Kramer v. Caribbean Mills, Inc.*, the Supreme Court held that assignments, even ones permissible under state law, can be disregarded for diversity purposes where "improperly or collusively" made for purposes of manipulating diversity jurisdiction. 394 U.S. 823, 825 (1969). The Supreme Court has since made pronouncements that the "diversity jurisdiction statute [requires] courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (emphasis added).

34. Circuit courts and district courts around the country have taken the position that assignments cannot "improperly or collusively" be used to create or destroy diversity jurisdiction. *See, e.g., Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) ("Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact."); *Attorneys Tr. v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 597 (9th Cir. 1996) ("There has been much less case law on the question of assignments which destroy jurisdiction. Of course, assignments of that kind are not specifically covered by 28 U.S.C. § 1359. However, what modern authority there is also focuses on the reality of the transaction."); *Slater v. Republic- Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) ("In many cases considering whether a partial assignment created or destroyed diversity jurisdiction, federal courts have disregarded assigned or retained interests that were more substantial than the $100 interest retained by LCI."); *Carter v. Seaboard Coast Line R. Co.*, 318 F. Supp. 368, 372 (D.S.C. 1970) ("It is accordingly, the right of this Court, when the issue of federal jurisdiction is raised, to inquire into the purpose and character of an assignment, which either creates or defeats federal jurisdiction."); *E. I. Du Pont D Nemours & Co. v. Agfa NV*,

2019 WL 279989, at *9 (E.D. Va. Jan. 22, 2019) ("Most cases that have considered this narrow question have determined that a collusive transfer to defeat subject matter jurisdiction may be held invalid."); *JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 93 (D. Mass. 1999); *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 940 (M.D. La. 1981); and *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166-67 (D. Me. 1969).

35. In determining whether an assignment has been "improperly" and/or "collusively" made, courts look to a number of factors including: (1) the comparative size of the interest assigned;[3] (2) whether the assignee held any interest in the litigation before the assignment; (3) whether the assignor and assignee are controlled by the same party; (4) whether the assignment occurred shortly before the litigation commenced; (5) whether the assignment represents what is essentially a contingent fee arrangement for collection work; and (6) whether there is a strong likelihood of prejudice against the defendant. *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, 2021 WL 5231870, at *4 (E.D. La. Nov. 10, 2021), *citing Grassi*, 894 F.2d at 186.

36. These factors weigh in favor of ignoring the assignments to Atlas by the persons alleged to be covered under the auspices of Daniel's Law for purposes of diversity jurisdiction. Indeed, the timeline of events shows that Atlas is a de facto contingent fee/litigation finance vehicle formed solely to serve as a litigation tool for Daniel's Law claimants, Atlas's investors, and the lawyers representing Atlas at the Genova Burns, LLC and Morgan & Morgan law firms.

---

[3] Even in the unlikely event that Atlas is a complete assignee, the trend is for courts to look at and behind the pleadings to determine whether an assignee's citizenship should be deemed collusive and disregarded as inconsequential to the diversity analysis. *See Attorneys Trust*, 93 F.3d at 600 (holding that courts "may look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction").

37. As an initial matter, Atlas did not exist prior to the passage of Daniel's Law. Daniel's Law was enacted in November 2020. (Ex. B, at ¶ 8). Atlas was not incorporated until April 27, 2021. (Ex. E).

38. Upon information and belief, on or about April 11, 2023, Rajiv D. Parikh – *i.e.,* Plaintiffs' present counsel from Genova Burns, LLC – registered as a lobbyist for Atlas in New Jersey, pushing for amendments to Daniel's Law to: (i) allow covered persons to assign their interests to companies like Atlas to pursue claims in litigation; and (ii) make the previously permissive damages provisions mandatory. (Exs. F and G).

39. Based on these lobbying efforts, Daniel's Law was, in fact, amended on July 20, 2023 on those two grounds most beneficial to entities like Atlas.

40. Upon information and belief, after passage of amendments to Daniel's Law in July 2023, Atlas obtained partial assignments from covered persons for the purpose of initiating litigation against companies like Defendants.

41. Atlas registered to do business in New Jersey on or about January 12, 2024. *See* Exhibit H.

42. Ten days before registering to do business in New Jersey, Atlas began sending more than 19,517 requests to Defendants for removal of information covered under Daniel's Law, as part of a campaign to send thousands of requests to more than 130 businesses.[4] (Ex. B, at ¶¶ 25, 53 ("Starting on or about January 2, 2024, each of the Individual Plaintiffs and all of the

---

[4] The 130 companies Atlas has sued are listed in five consolidation motions filed by Atlas on March 12, 2024 in *Atlas Data Privacy Corporation, et al. v. Pipl, Inc.*, Case No. MON-L-000481-24 (Monmouth County, NJ); *Atlas Data Privacy Corporation, et al. v. New Jersey Property Records, LLC*, Case No. MID-L-000811-24 Middlesex County, NJ); *Atlas Data Privacy Corporation, et al. v. Melissa Data Corp.*, Case No. MRS-L-000224-24 (Morris County, NJ); *Atlas Data Privacy Corporation, et al. v. Enformion, LLC*, Case No. BER-L-000767-24 (Bergen County, NJ); *Atlas Data Privacy Corporation, et al. v. Whitepages, Inc.*, Case No. MER-L-000270-24 (Mercer County, NJ).

Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure request (via email) in accordance with Daniel's Law, suing AtlasMail.").

43. Less than a month after registering to do business in New Jersey, Atlas filed this lawsuit, with its lobbying firm signing on as Plaintiffs' counsel. (Ex. B, at p. 1). Thus, it could not be clearer, that the assignments to Atlas are part of a broader, well-coordinated litigation strategy concocted by Plaintiffs' counsel and Atlas in an effort to monetize New Jersey's Daniel's Law for their benefit.

44. Courts in such situations do not hesitate to disregard an entity like Atlas's citizenship in assessing diversity jurisdiction. Prior to these assignments, Atlas had no interest in the rights now assigned. Indeed, presently, Atlas has no claims of its own separate and apart from those of the assignees.

45. Upon information and belief, these assignments – much like assignments that courts across the country have found to be "improper" or "collusive" for the purpose of defeating diversity jurisdiction, even where, as here, expressly permitted under state law – are in essence partial assignments to collect a debt allegedly owed by virtue of Defendants' purported noncompliance with Daniel's Law. In other words, they are the sort of contingent fee arrangement for collection work that many courts have found to be improper and/or collusive for purposes of defeating diversity jurisdiction.

46. No assignment was necessary for Atlas to perform this function.

47. Thus, from the face of the pleadings and based on the applicable legal standard, this Court may ignore the assignments to Atlas for purposes of diversity jurisdiction. And, in the absence of Atlas, complete diversity of citizenship existed between the parties at the time Plaintiffs' Complaint was filed, and complete diversity of citizenship exists at the time of removal.

48. If this Court nevertheless still questions diversity of citizenship, it should – at a minimum, and before ruling on any motion to remand – order discovery of Atlas related to the factors relevant to the diversity analysis under *Grassi* and its progeny (such as the size of the interest assigned, whether the assignee had any interest in the matter before the assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant. *See also, e.g., Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 794 F. Supp. 2d 265, 268 (D. Mass. 2011) (permitting limited jurisdictional discovery into assignments alleged to be collusive in nature); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant to take jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *Mithril GP Emp. Feeder LLC v. McKellar*, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (same).

49. Indeed, the default position in the Third Circuit is that jurisdictional discovery should be allowed unless [a jurisdictional] claim is 'clearly frivolous.'" *Qtech Servs., LLC v. Verition Fund Mgmt., LLC*, 2010 WL 4961636, at *2 (D.N.J. Nov. 30, 2010), *quoting, Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). *See also, Fabricant v. Intamin Amusement Rides Int. Corp. Est*, 2019 WL 3315496, at *3 (D.N.J. July 24, 2019) ("Jurisdictional discovery is appropriate where a party raises a factual challenge to jurisdiction."). Therefore, at a minimum, the Court should permit limited jurisdictional discovery into Atlas if Atlas seeks to remand this case to Superior Court in New Jersey.

**The Amount in Controversy Exceeds $75,000.**

50. The second requirement of traditional diversity of citizenship jurisdiction, that the amount in controversy exceed $75,000, also is met here. *See* 28 U.S.C. § 1332(a).

51. When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 Fed. App'x 780, 782, n.2 (3rd Cir. 2020). A single plaintiff can satisfy this requirement and this Court can then exercise supplemental jurisdiction over any other plaintiffs, regardless of the value of their claims. *Burgess v. Bennet*, 2021 WL 1050313, at *5, n. 9, (D.N.J. Mar. 19, 2021).

52. Plaintiffs request "actual damages, not less than liquidated damages under Daniel's Law, at $1,000 for each violation." (*See* Ex. B, at p. 22). Thus, assuming each Covered Person or Individual Plaintiff asserts only one violation, the amount in controversy or actual damages alone would exceed $19,517,000.

53. In addition to actual and statutory damages, Plaintiffs seek punitive damages, attorneys' fees, and injunctive relief.

54. The Third Circuit has held that claims for punitive damages that are made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008) *quoting Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3rd Cir. 2004) (emphasis omitted). The Third Circuit also has held that "[I]n calculating the amount in controversy, we must consider potential attorney's fees. Although 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part

of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3rd Cir. 1997) (citation omitted).

55. Accordingly, because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## **CAFA JURISDICTION**

56. Even though this Court has diversity jurisdiction for the reasons stated above, removal of this action is also proper under the Class Action Fairness Act ("CAFA"). "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement)." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)). In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

57. This suit satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit was filed under a state-law analogue to Rule 23.

58. As noted above, minimal diversity is met, because the citizenship of the Individual Plaintiffs – all residents of New Jersey – is different from that of Defendants, who are citizens of Delaware, Illinois, Virginia, and Florida. The aggregate amount in controversy is likewise met by aggregating – at a minimum – the liquidated damages under Daniel's Law of $1,000 per violation

for 19,517 assignees, totaling $19,517,000. This is to say nothing of the claims for punitive damages, attorneys' fees or request for injunctive relief.

59. The numerosity requirement also is met. "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020), *citing, In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)). Here, the proposed class consists of 19,524 members – Atlas as assignee for 19,517 assignors plus the seven Individual Plaintiffs. Thus, the number of proposed class members exceeds the 100 members necessary to satisfy the numerosity requirement for purposes of CAFA jurisdiction.

60. Lastly, although CAFA requires that the suit be filed under state law analogue of Rule 23, the analogous state law need not be pled in the complaint to satisfy CAFA. That is because, if courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mutual Casualty Company*, 845 F.3d 891, 901 (8th Cir. 2017); *see also Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action."). Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is in substance an interstate class action." *Erie Ins. Exchange v. Erie Indemnity Co.*, 68 F.4th 815, 819 (3d Cir. 2023).

61.    Here, the Amended Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction). Plaintiffs' decision not to cite a Rule 23-analogue in the Amended Complaint does not "disguise the true nature of the suit." Atlas can only bring this suit in its capacity as the assignee for the claims of 19,517 assignors. In that capacity, Atlas purports to bring claims on behalf of 19,517 individuals (numerosity), alleges commonality among the claims, and purports to present this case as one in which joinder of nearly 20,000 is not impracticable or impossible.[5] Further, although Plaintiffs do not cite any joinder rule, the Amended Complaint does not demonstrate how Plaintiffs could join 19,517 claims in a single suit, absent the class action mechanism.

62.    Thus, all of the requirements for CAFA jurisdiction over a class action have been met.

63.    In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper because the instant case is a "mass action" under CAFA. Federal jurisdiction exists under CAFA for a mass action that satisfies: (1) the class action requirements of (a) minimal diversity and (b) the $5,000,000 aggregate amount-in-controversy; (2) numerosity for a mass action; and (3) the $75,000 individual amount-in-controversy requirement.

---

[5]    Defendants do not concede that Plaintiffs have established any element of class certification.

64. All of these elements, including the $75,000 individual amount-in-controversy requirement, have been discussed at length supra. Thus, this Court may separately find that it has jurisdiction in the instant case as it is a "mass action" under CAFA.

65. Finally, none of the exceptions to CAFA apply. CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class actions. 28 U.S.C. § 1332(d)(3)-(4). None of these exceptions applies here. Each CAFA exception requires, as a starting point, an in-state defendant. Defendants are, as shown above, citizens of Delaware, Illinois, Virginia, and Florida.

66. Nor do any of the exceptions for federal jurisdiction over a "mass action" apply here. 28 U.S.C. § 1332(d)(11)(B)(ii).

## THE REQUIREMENTS OF 28 U.S.C. § 1466 ARE MET

67. In accordance with 28 U.S.C. § 1446(d), upon filing this Notice of Removal, Defendants will give written notice of this Notice of Removal to Plaintiffs and the Clerk of the Superior Court of New Jersey, Law Division, Bergen County.

WHEREFORE, Defendants remove this Action to this Court for further proceedings according to law.

Date: March 27, 2024

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By: /s/ *Jacqueline M. Weyand*
    Samantha Southall (*pro hac vice* forthcoming)
    Jacqueline Weyand (01572011)
    Natalie Peled (*pro hac vice* forthcoming)
550 Broad Street, Suite 810
Newark, New Jersey 07102-4582
(973) 273-9800

*Counsel for Defendants Trans Union LLC, Neustar, Inc., and TransUnion Risk and Alternative Data Solutions, Inc.*

## D.N.J. LOCAL CIVIL RULE 11.2 STATEMENT

Pursuant to Local Civil Rule 11.2, the undersigned counsel, on behalf of Defendants TransUnion, Neustar, and TRADS, certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Date: March 27, 2024　　　　　　　　　　**BUCHANAN INGERSOLL & ROONEY PC**

By: /s/ *Jacqueline M. Weyand*
　　Samantha Southall (*pro hac vice* forthcoming)
　　Jacqueline Weyand (01572011)
　　Natalie Peled (*pro hac vice* forthcoming)
550 Broad Street, Suite 810
Newark, NJ 07102-4582
(973) 273-9800

*Counsel for Defendants Trans Union LLC, Neustar, Inc., and TransUnion Risk and Alternative Data Solutions, Inc.*