UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                                :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                :      CIVIL ACTION
        v.                      :      NO. 24-3993
                                :
BLACKBAUD, INC., et al.         :
                                :
_____
                                :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                :      CIVIL ACTION
        v.                      :      NO. 24-3998
                                :
WHITEPAGES, INC., et al.        :
                                :
_____
                                :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                :      CIVIL ACTION
        v.                      :      NO. 24-4000
                                :
HIYA, INC., et al.              :
                                :
_____
                                :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                :      CIVIL ACTION
        v.                      :      NO. 24-4037
                                :
WE INFORM, LLC                  :
_____
```

- - -

April 18, 2024

STATUS CONFERENCE

- - -


Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
AnnMarie_Mitchell@njd.uscourts.gov
(856) 576-7018

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

```
_____
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :
          v.                            :  CIVIL ACTION
                                        :   NO. 24-4041
INFOMATICS, LLC, et al.                 :
                                        :
_____
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :
          v.                            :  CIVIL ACTION
                                        :   NO. 24-4045
THE PEOPLE SEARCHERS, LLC, et al.       :
                                        :
_____
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :
          v.                            :  CIVIL ACTION
                                        :   NO. 24-4073
COMMERCIAL REAL ESTATE EXCHANGE, INC.,:
et al.                                  :
_____
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :
          v.                            :  CIVIL ACTION
                                        :   NO. 24-4075
DM GROUP, INC., et al.                  :
                                        :
_____
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :
          v.                            :  CIVIL ACTION
                                        :   NO. 24-4077
CARCO GROUP INC., et al.                :
                                        :
_____
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :
          v.                            :  CIVIL ACTION
                                        :   NO. 24-4080
DELUXE CORPORATION, et al.              :
_____
```

*United States District Court*

```
 1  _____ :  _____
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
 3          v.                       :   NO. 24-4095
                                     :
 4  TWILIO INC., et al.              :
                                     :
 5  _____ :  _____
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
 7          v.                       :   NO. 24-4096
                                     :
 8  DELVEPOINT, LLC, et al.          :
                                     :
 9  _____ :  _____
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
11          v.                       :   NO. 24-4098
                                     :
12  QUANTARIUM ALLIANCE, LLC, et al. :
                                     :
13  _____ :  _____
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
15          v.                       :   NO. 24-4103
                                     :
16  YARDI SYSTEMS, INC., et al.      :
                                     :
17  _____ :  _____
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
19          v.                       :   NO. 24-4104
                                     :
20  6SENSE INSIGHTS, INC., et al.    :
                                     :
21  _____ :  _____
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
23          v.                       :   NO. 24-4105
                                     :
24  LIGHTBOX PARENT, L.P., et al.    :
                                     :
25  _____ :  _____
```

```
ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :   CIVIL ACTION
         v.                            :   NO. 24-4105
                                       :
SEARCH QUARRY, LLC, et al.             :
                                       :
_____:_____
                                       :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :   CIVIL ACTION
         v.                            :   NO. 24-4107
                                       :
ACXIOM, LLC, et al.                    :
                                       :
_____:_____
                                       :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :   CIVIL ACTION
         v.                            :   NO. 24-4110
                                       :
ENFORMION, LLC, et al.                 :
                                       :
_____:_____
                                       :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :   CIVIL ACTION
         v.                            :   NO. 24-4111
                                       :
COSTAR GROUP, INC., et al.             :
                                       :
_____:_____
                                       :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :   CIVIL ACTION
         v.                            :   NO. 24-4112
                                       :
ORACLE INTERNATIONAL CORPORATION, et   :
al.                                    :
                                       :
_____:_____
                                       :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :   CIVIL ACTION
         v.                            :   NO. 24-4113
                                       :
RED VIOLET, INC., et al.               :
                                       :_____
```

United States District Court

```
 1  _____:_____
                                            :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :      CIVIL ACTION
 3            v.                            :     NO. 24-4114
                                            :
 4  RE/MAX, LLC, et al.                     :
                                            :
 5  _____:_____
                                            :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :
 7            v.                            :      CIVIL ACTION
                                            :     NO. 24-4141
    DIGITAL SAFETY PRODUCTS, LLC, et al.   :
 8                                          :
                                            :
 9  _____:_____
                                            :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :      CIVIL ACTION
11            v.                            :     NO. 24-4143
                                            :
12  CIVIL DATA RESEARCH                     :
                                            :
13  _____:_____
                                            :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :      CIVIL ACTION
15            v.                            :     NO. 24-4160
                                            :
16  SCALABLE COMMERCE, LLC, et al.          :
                                            :
17  _____:_____
                                            :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :      CIVIL ACTION
19            v.                            :     NO. 24-4168
                                            :
20  EPSILON DATA MANAGEMENT, LLC, et al.   :
                                            :
21  _____:_____
                                            :
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :      CIVIL ACTION
23            v.                            :     NO. 24-4171
                                            :
24  PEOPLE DATA LABS, INC., et al.          :
                                            :
25  _____
```

```
──────────────────────────────────────────  :  ──────────────────────
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :   CIVIL ACTION
            v.                          :   NO. 24-4174
                                        :
LABELS & LISTS, INC.                    :
                                        :
──────────────────────────────────────────  :  ──────────────────────
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :   CIVIL ACTION
            v.                          :   NO. 24-4175
                                        :
CLARITAS, LLC, et al.                   :
                                        :
──────────────────────────────────────────  :  ──────────────────────
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :   CIVIL ACTION
            v.                          :   NO. 24-4176
                                        :
INNOVIS DATA SOLUTIONS INC., et al.     :
                                        :
──────────────────────────────────────────  :  ──────────────────────
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :   CIVIL ACTION
            v.                          :   NO. 24-4178
                                        :
ACCURATE APPEND, INC., et al.           :
                                        :
──────────────────────────────────────────  :  ──────────────────────
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :   CIVIL ACTION
            v.                          :   NO. 24-4181
                                        :
DATA AXLE, INC., et al.                 :
                                        :
──────────────────────────────────────────  :  ──────────────────────
ATLAS DATA PRIVACY CORPORATION, et al.:
                                        :   CIVIL ACTION
            v.                          :   NO. 24-4182
                                        :
REMINE INC., et al.                     :
──────────────────────────────────────────
```

```
1  _____ :_____
                                            :
2  ATLAS DATA PRIVACY CORPORATION, et al. :
                                            :     CIVIL ACTION
3            v.                              :     NO. 24-4184
                                            :
4  LUSHA SYSTEMS, INC., et al.              :
   _____ :_____
5                                           :
6  ATLAS DATA PRIVACY CORPORATION, et al. :
                                            :     CIVIL ACTION
7            v.                              :     NO. 24-4217
                                            :
8  TELTECH SYSTEMS, INC., et al.            :
                                            :
9  _____ :_____
                                            :
10 ATLAS DATA PRIVACY CORPORATION, et al. :
                                            :     CIVIL ACTION
11           v.                              :     NO. 24-4227
                                            :
12 PEOPLECONNECT, INC., et al.              :
   _____ :_____
13                                          :
14 ATLAS DATA PRIVACY CORPORATION, et al. :
                                            :     CIVIL ACTION
15           v.                              :     NO. 24-4230
                                            :
16 CORELOGIC, INC., et al.                  :
   _____ :_____
17                                          :
18 ATLAS DATA PRIVACY CORPORATION, et al. :
                                            :     CIVIL ACTION
19           v.                              :     NO. 24-4233
                                            :
20 BLACK KNIGHT TECHNOLOGIES, LLC, et al. :
                                            :
21 _____ :_____
                                            :
22 ATLAS DATA PRIVACY CORPORATION, et al. :
                                            :     CIVIL ACTION
23           v.                              :     NO. 24-4256
                                            :
24 ZILLOW, INC., et al.                     :
   _____ :_____
25
```

```
 1  _____:_____

 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
 3           v.                      :   NO. 24-4261
                                     :
 4  EQUIMINE, INC., et al.           :
                                     :
 5  _____:_____

 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
 7           v.                      :   NO. 24-4269
                                     :
 8  THOMSON REUTERS CORPORATION, et al.  :
                                     :
 9  _____:_____

10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
11           v.                      :   NO. 24-4271
                                     :
12  CHOREOGRAPH LLC, et al.          :
                                     :
13  _____:_____

14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
15           v.                      :   NO. 24-4288
                                     :
16  TRANSUNION, LLC, et al.          :
                                     :
17  _____:_____

18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
19           v.                      :   NO. 24-4292
                                     :
20  MELISSA DATA CORP., et al.       :
                                     :
21  _____:_____

22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
23           v.                      :   NO. 24-4298
                                     :
24  EQUIFAX INC., et al.             :

25  _____
```

*United States District Court*

```
 1  _____:_____
                                            :
 2  ATLAS DATA PRIVACY CORPORATION, et al.  :
                                            :  CIVIL ACTION
 3           v.                             :  NO. 24-4299
                                            :
 4  SPOKEO, INC., et al.                    :
                                            :
 5  _____:_____
                                            :
 6  ATLAS DATA PRIVACY CORPORATION, et al.  :
                                            :  CIVIL ACTION
 7           v.                             :  NO. 24-4324
                                            :
 8  RESTORATION OF AMERICA, et al.          :
                                            :
 9  _____:_____
                                            :
10  ATLAS DATA PRIVACY CORPORATION, et al.  :
                                            :  CIVIL ACTION
11           v.                             :  NO. 24-4345
                                            :
12  i360, LLC, et al.                       :
                                            :
13  _____:_____
                                            :
14  ATLAS DATA PRIVACY CORPORATION, et al.  :
                                            :  CIVIL ACTION
15           v.                             :  NO. 24-4354
                                            :
16  TELNYX LLC, et al.                      :
                                            :
17  _____:_____
                                            :
18  ATLAS DATA PRIVACY CORPORATION, et al.  :
                                            :  CIVIL ACTION
19           v.                             :  NO. 24-4380
                                            :
20  GOHUNT, LLC, et al.                     :
                                            :
21  _____:_____
                                            :
22  ATLAS DATA PRIVACY CORPORATION, et al.  :
                                            :  CIVIL ACTION
23           v.                             :  NO. 24-4383
                                            :
24  ACCUZIP, INC., et al.                   :
                                            :
25  _____
```

```
 1  _____:_____
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
 3           v.                      :    NO. 24-4385
                                     :
 4  SYNAPTIX TECHNOLOGY, LLC, et al. :
                                     :
 5  _____:_____
                                     :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
 7           v.                      :    NO. 24-4389
                                     :
 8  JOY ROCKWELL ENTERPRISES, INC., et al.:
                                     :
 9  _____:_____
                                     :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
11           v.                      :    NO. 24-4390
                                     :
12  FORTNOFF FINANCIAL, LLC, et al.  :
                                     :
13  _____:_____
                                     :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
15           v.                      :    NO. 24-4392
                                     :
16  MYHERITAGE, LTD., et al.         :
                                     :
17  _____:_____
                                     :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
19           v.                      :    NO. 24-4434
                                     :
20  E-MERGES.COM, INC.               :
                                     :
21  _____:_____
                                     :
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
23           v.                      :    NO. 24-4442
                                     :
24  WILAND, INC., et al.             :
                                     :
25  _____:_____
```

United States District Court

```
 1  _____:_____

 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :   CIVIL ACTION
 3            v.                          :    NO. 24-4447
                                          :
 4  ATDATA, LLC, et al.                   :
                                          :
 5  _____:_____
                                          :
 6  JOHN DOE-1, et al.                    :
                                          :   CIVIL ACTION
 7            v.                          :    NO. 24-4566
                                          :
 8  LEXISNEXIS RISK DATA MANAGEMENT, LLC, :
    et al.                                :
 9                                        :
10  _____:_____
                                          :
11  ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :   CIVIL ACTION
            v.                          :    NO. 24-4571
12                                        :
    PRECISELY HOLDINGS, LLC, et al.       :
13                                        :
14  _____:_____
                                          :
15  ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :   CIVIL ACTION
16            v.                          :    NO. 24-4609
                                          :
17  NUWBER, INC., et al.                  :
                                          :
18  _____:_____
                                          :
19  ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :   CIVIL ACTION
20            v.                          :    NO. 24-4664
                                          :
21  ROCKETREACH LLC, et al.               :
                                          :
22  _____:_____
                                          :
23  ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :   CIVIL ACTION
24            v.                          :    NO. 24-4696
                                          :
25  OUTSIDE INTERACTIVE, INC.             :
    _____
```

*United States District Court*

```
 1  _____
                                           :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
 3          v.                             :    NO. 24-4770
                                           :
 4  VALASSIS DIGITAL CORP., et al.         :
    _____
 5                                         :
    ATLAS DATA PRIVACY CORPORATION, et al.:
 6                                         :   CIVIL ACTION
            v.                             :    NO. 24-4850
 7                                         :
    THE LIFETIME VALUE CO. LLC, et al.     :
 8                                         :
    _____
 9                                         :
    ATLAS DATA PRIVACY CORPORATION, et al.:
10                                         :   CIVIL ACTION
            v.                             :    NO. 24-4949
11                                         :
    BELLES CAMP COMMUNICATIONS, INC., et   :
12  al.                                    :
                                           :
13  _____

14
         Mitchell H. Cohen Building & U.S. Courthouse
15       4th & Cooper Streets
         Camden, New Jersey 08101
16       April 18, 2024
         Commencing at 9:58 a.m.
17
18  B E F O R E:        THE HONORABLE HARVEY BARTLE, III,
                        UNITED STATES DISTRICT JUDGE
19

20
    A P P E A R A N C E S:
21

22       BOIES SCHILLER FLEXNER LLP
         BY:  ADAM R. SHAW, ESQUIRE
23       30 South Pearl Street, 12th Floor
         Albany, New York 12207
24       For the Plaintiffs

25
```

1    **<u>A P P E A R A N C E S (cont.'d)</u>:**

2        BOIES SCHILLER FLEXNER LLP
         BY:  HSIAO (MARK) C. MAO, ESQUIRE
3        44 Montgomery Street, 41st Floor
         San Francisco, California 94104
4        For the Plaintiffs

5
         BOIES SCHILLER FLEXNER LLP
6        BY:  JAMES LEE, ESQUIRE
         100 S.E. 2nd Street, Suite 2800
7        Miami, Florida 33131
         For the Plaintiffs
8

9        MORGAN & MORGAN
         BY:  RYAN JOSEPH McGEE, ESQUIRE
10       201 N. Franklin Street, 7th Floor
         Tampa, Florida 33602
11       For the Plaintiffs

12
         PEM LAW LLP
13       BY:  RAJIV D. PARIKH, ESQUIRE
         1 Boland Drive, Suite 101
14       West Orange, New Jersey 07052
         For the Plaintiffs
15

16       TROUTMAN PEPPER HAMILTON SANDERS LLP
         BY:  ANGELO A. STIO III, ESQUIRE
17       BY:  MICHAEL A. SCHWARTZ, ESQUIRE
         301 Carnegie Center, Suite 400
18       Princeton, New Jersey 08543
         For the Defendants CARCO Group Inc.; Acxiom, LLC; AtData,
19       LLC; Deluxe Corporation; DM Group, Inc.; Enformion, LLC;
         Red Violet, Inc.; Remine Inc.; RocketReach LLC; CoreLogic
20       Inc.

21
         VEDDER PRICE, P.C.
22       BY:  BLAINE C. KIMREY, ESQUIRE
         222 North LaSalle Street
23       Chicago, Illinois 60601
         For the Defendants Whitepages, Inc. and Hiya, Inc.,
24       et al.

25

*United States District Court*

1  **A P P E A R A N C E S (cont.'d)**:

2

3      SEYFARTH SHAW LLP
       BY:  ROBERT T. SZYBA, ESQUIRE
4      620 Eighth Avenue, 32nd Floor
       New York, New York 10018
5      For the Defendants Infomatics, LLC; The People Searchers,
       LLC; and We Inform, LLC, et al.

6

7      GREENSPOON MARDER
       BY:  KELLY MAGNUS PURCARO, ESQUIRE
8      1037 Raymond Boulevard, Suite 900
       Newark, New Jersey 07102
9      For the Defendant Joy Rockwell Enterprises, Inc.

10     FISHERBROYLES, LLP
       BY:  JASON A. SPAK, ESQUIRE
11     6460 Broad Street, #5262
       Pittsburgh, Pennsylvania 15206
12     For the Defendant Innovis Data Solutions, Inc.

13

14     LATHAM & WATKINS LLP
       BY:  SERRIN TURNER, ESQUIRE
15     1271 Avenue of the Americas
       New York, New York, 10020
16     For the Defendants CoStar Group, Inc.; CoStar Realty
       Information, Inc.; LightBox Parent, L.P.; LightBox
17     Holdings, L.P.; Oracle International Corporation; Oracle
       America, Inc.; Oracle Corp.; PeopleConnect Holdings,
18     Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC

19     CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
       BY:  JOHN E. MACDONALD, ESQUIRE
20     100 Charles Ewing Boulevard, Suite 140
       Ewing, New Jersey 08628
21     For the Defendants Restoration of America, Voter
       Reference Foundation LLC, and Accurate Append, Inc.

22

23     SIDLEY AUSTIN LLP
       BY:  TYLER J. DOMINO, ESQUIRE
24     787 Seventh Avenue
       New York, New York 10019
25     For the Defendant MyHeritage (USA), Inc.

```
 1    A P P E A R A N C E S (cont.'d):

 2

 3         LOWENSTEIN SANDLER LLP
           BY:  GAVIN J. ROONEY, ESQUIRE
 4         One Lowenstein Drive
           Roseland, New Jersey 07068
 5         For the Defendant LexisNexis Risk Data Management, LLC

 6         RKW LAW GROUP
           BY:  H. MARK STICHEL, ESQUIRE
 7         10075 Red Run Boulevard, Suite 401
           Owings Mills, Maryland 21117
 8         For the Defendant eMerges.com, Inc.

 9
           FAEGRE DRINKER BIDDLE & REATH LLP
10         BY:  ROSS LEWIN, ESQUIRE
           105 College Road East, Suite 300
11         Princeton, New Jersey 08542
           For the Defendant Epsilon Data Management, LLC;
12         Conversant LLC; and Citrus Ad International, Inc.

13
           QUINN EMANUEL URQUHART & SULLIVAN, LLP
14         BY:  ANTHONY J. STALTARI, ESQUIRE
           51 Madison Avenue, 22nd Floor
15         New York, New York 10010
           For the Defendant Yardi Systems, Inc.

16

17    A L S O   P R E S E N T:

18         DAVID BRUEY, Courtroom Deputy

19
                               -  -  -
20

21

22

23

24

25
```

 1              (PROCEEDINGS held in open court before The Honorable

 2    HARVEY BARTLE, III at 9:58 a.m.)

 3              THE COURT:  Good morning.

 4              RESPONSE:  Good morning, Your Honor.

 5              THE COURT:  Please be seated.  Thank you all for

 6    coming.

 7              The Court has before it this morning a status

 8    conference in some 67 cases where the plaintiff has alleged

 9    that the defendants have violated a New Jersey statute called

10    Daniel's Law.

11              As you all know, I've been designated by the chief

12    judge of the Court of Appeals to handle these cases which have

13    all been removed from the Superior Court of New Jersey.

14              Before we get into more substantive matters, I want

15    to deal with some preliminary issues.

16              I've received a plethora of pro hac vice motions.

17    Sometimes the lawyers are filing something called notice of

18    motion.  I have no idea what that means.  If you want to have

19    someone admitted pro hac vice, file a motion.  Attach to it a

20    form of order.  Do not put the word "proposed" on the order.

21    It's implicit when you give me a form of order that it's

22    proposed.  When I sign it, I have to cross out the word

23    "proposed" if it's typed on the caption.  So please just give

24    me a form of order with the pro hac vice motion.

25              Also, the filing fee for a pro hac vice motion is

1   $250.  Some of you haven't gotten the word that the amount was

2   increased from 150.  In the Eastern District of Pennsylvania,

3   you have to file your check concurrently with the motion, but

4   in New Jersey they're a little bit more trusting about it.

5          Also, all these cases are assigned to the Camden

6   Vicinage.  I think sometimes people are putting on their

7   papers either Newark or Trenton.  They've all been

8   automatically reassigned to the Camden vicinage.

9          There was a request by one of the attorneys that we

10  have people listening in by phone or electronically in some

11  fashion.  I think we'll avoid that at the moment.  I think

12  it's better if everybody appears in person.  There will

13  obviously be a transcript, so if someone wants a transcript,

14  they can purchase it.  And there are many people here who can

15  advise their absent colleagues about what happened.

16         Now, I'd like to turn to -- oh, before we do that, if

17  whoever speaks, please precede your comments by your name,

18  please spell your last name for the benefit of the court

19  reporter, also at least initially identify the case in which

20  you're involved.  Some of you are involved in multiple cases;

21  just identify one maybe with the case number.  But each time

22  you speak, please use your name.

23         I entered an order -- several orders, actually --

24  setting up this status conference.  And I included some

25  subjects that I thought would be the subject of discussion.

1  That's not an inflexible agenda.  Obviously we'll talk about

2  whatever is relevant that you want to talk about today.

3         But the first matter that I want to raise is the

4  question of subject matter jurisdiction, whether plaintiffs'

5  counsel are going to seek to file motions for remand.

6         Plaintiffs' counsel?

7         MR. SHAW:  Yes, Your Honor.  Could I stay here or

8  would you like me at the lectern?

9         THE COURT:  You can come up here.

10         MR. SHAW:  Good morning, Your Honor.

11         THE COURT:  Good morning.

12         MR. SHAW:  Adam Shaw, S-H-A-W, for the plaintiffs.

13         THE COURT:  All right.

14         MR. SHAW:  Judge, if I can just give you a little bit

15  of the lay of the land.

16         There's been about 145 cases filed in New Jersey.  As

17  you say, 67 of them have gotten removed here.  And my

18  understanding is all have been assigned to you.

19         Just to tell you a little bit about the state of New

20  Jersey, so there's about 80 of them still there, and we've

21  moved to consolidate in the various counties there.

22         It's my understanding that there's -- most of the

23  cases, time has run out to remove, but there's still a few

24  where we're serving defendants, so there's still some time for

25  that.  And there's still a couple more cases that might come

1   this way.

2          So of the 67 or so that have been filed in front of

3   Your Honor, about just under 30 seem to be -- clearly have

4   diversity jurisdiction, where there's complete diversity --

5          THE COURT:  Of course we don't need complete

6   diversity here under CAFA.  It's minimal diversity, correct?

7          MR. SHAW:  Well, I'll get to that in a second.

8          THE COURT:  All right.

9          MR. SHAW:  So some of them, it's very clear on the

10  face that there is full diversity and as a threshold met.  We

11  still have to investigate a little bit on a couple of the LLCs

12  to make sure of that.  But there's about 30 of them or so that

13  there's not diversity between the plaintiff and the defendant,

14  complete diversity.  And the defendants have suggested that

15  they could get through the plaintiffs' diversity, saying that

16  it was collusive, to avoid jurisdiction in this Court.  That's

17  one of the arguments they make.

18         The second argument they make is about CAFA.  We

19  don't think either of those arguments are good.  And we intend

20  to make a motion to remand for a certain set of the cases.

21         The reason that's not collusive is obviously --

22  usually that's directed to one defendant, you know, the

23  plaintiff has set up some form of citizenship to avoid

24  jurisdiction here.  That's obviously not the case here.

25  There's 50 different defendants.

```
 1            THE COURT:  Well, under CAFA all we need is minimal
 2    diversity.  Correct?
 3            MR. SHAW:  Correct.
 4            THE COURT:  Let's step back.
 5            You agree that in each of the cases, there are more
 6    than 100 plaintiffs?
 7            MR. SHAW:  No, Your Honor.
 8            THE COURT:  You have 19,000, don't you?
 9            MR. SHAW:  We do.  But the way CAFA works, Your
10    Honor, is it's actually the named plaintiff.  And there's
11    Supreme Court cases that say you do not look to try to figure
12    out whether there's some other represented party or real party
13    in interest.  And in Supreme Court cases, I believe it's a
14    Mississippi case where the AG brought a case, it's whoever is
15    on the caption.  If that's on the caption, that's what it is.
16    Or if you bring it in the form of a class action, if you bring
17    it under some state vehicle that looks like a class action.
18    Daniel's Law does not look like a class action.
19            So we would say that there's not -- you do not look
20    through the plaintiff to see how many people we have
21    assignments for, for example.  We are the plaintiff in this
22    case, Atlas, with a few individual plaintiffs.  And that's our
23    position.  And we'd like to -- you know, we're going to be --
24    like to submit remand motions on that ground.
25            THE COURT:  We have 67, and you say in 30 of the
```

1    cases you're not going to challenge jurisdiction?

2            MR. SHAW:  Correct, Your Honor.

3            THE COURT:  And then in the other 30 or so you will

4    be challenging?

5            MR. SHAW:  Yes, Your Honor.

6            THE COURT:  All right.  Let me just hear from any

7    defense counsel that wishes to speak to that subject, and then

8    we can talk about the scheduling of that.

9            MR. SHAW:  Thank you, Your Honor.

10            THE COURT:  Good morning.

11            MR. STIO:  Good morning, Your Honor.  Angelo Stio

12    from Troutman Pepper Hamilton Sanders.  I represent a group of

13    ten defendants.

14            THE COURT:  Ten, right.

15            MR. STIO:  The CARCO Group is one of them, Docket

16    Number 0477.

17            Your Honor, we agree that there are 30 cases where

18    there is complete diversity.  And we understand that the

19    plaintiff wants to file motions for remand, but just to take a

20    step back --

21            THE COURT:  Motions for remand on the ones where

22    there is not complete diversity?

23            MR. STIO:  Where they claim that -- yes, where they

24    claim there's not complete diversity.

25            THE COURT:  So that would be -- in other words, there

```
 1  are 37 that they're challenging jurisdiction, roughly, and 30
 2  that they are not?
 3          MR. STIO:  Correct, Your Honor.
 4          But to take a step back, where they talked about we
 5  had this theory about the defendants or the plaintiffs being
 6  collusively joined.
 7          This case presents a really unique circumstance.  And
 8  the best way to describe it, as we did in our letter, it's an
 9  inverse multidistrict litigation.
10          THE COURT:  Right.
11          MR. STIO:  We have one common thread in all the
12  cases.  We have a corporate plaintiff who claims that they
13  have assignments for 19,000 individuals, and on the basis of
14  these assignments, they can assert the rights of these
15  individuals under Daniel's Law.
16          The case is about Atlas's actions.  This is a company
17  that bombarded the defendants with thousands of emails from an
18  email address @atlasmail.com.  They didn't provide a lot of
19  information.  They were form emails.  And they're cookie
20  cutter/boilerplate complaints.
21          Now, the defendants are in different industries.  The
22  defendants have unique defenses, both factual and legal, and
23  there's a large number of defendants who have
24  jurisdictional -- personal jurisdictional defenses.  There are
25  some defendants that have issues with arbitrability that
```

1    they're going to bring to the Court's attention.

2           But if we are going to go down the road to motions to

3    remand, we think that there is limited discovery that should

4    be produced that will bear on that.

5           And what we believe would make sense is, A, let's

6    have the plaintiffs turn over the assignments that they allege

7    they have for 19,000 people.  It's going to go directly to

8    this issue.  It will allow the defendants to examine them.

9    And in full disclosure, under New Jersey law, they have a rule

10   that you can request an assignment within five days to be

11   produced.  Plaintiffs did produce those to four of my clients.

12   And there's a motion to seal, a motion for protective order

13   out there that needs to be decided.  But there are other

14   defendants here that don't have the assignment.  They should

15   produce that.

16          Second, we need defendants to produce if --

17   plaintiffs to produce if any defendants request a list of who

18   these covered people are and the information they claim that

19   they sent out to over 200 businesses to an unverified email by

20   the thousands.  We need that to know are there claims here, do

21   we have the information.

22          THE COURT:  Let's back up.  We have 30 cases where

23   there's no challenge to subject matter jurisdiction; is that

24   correct?

25          MR. STIO:  Where they're not.

*United States District Court*

 1          THE COURT:  Yeah.

 2          MR. STIO:  Correct.

 3          THE COURT:  There are 30 -- all right.

 4          MR. SHAW:  Yes, Your Honor.

 5          THE COURT:  Let's focus on those for a moment, and

 6  then we'll deal with the other 37.

 7          From at least one of the motions to dismiss that I've

 8  seen, a constitutional challenge has been raised to Daniel's

 9  Law; is that correct?

10          MR. STIO:  There is one case that I'm aware of that

11  includes a constitutional challenge, yes.

12          THE COURT:  Now, with respect to those 30 cases where

13  there is jurisdiction, is there going to be a constitutional

14  challenge to the statute?

15          MR. STIO:  So, Your Honor, what I would propose to

16  that -- I don't know the answer, but I think that we would

17  like the opportunity to meet and confer with the plaintiffs,

18  because this is the first time we have known that they're

19  going to file a motion to remand.  We've asked --

20          THE COURT:  On some cases, not all.

21          MR. STIO:  Correct.  But I do think that from the

22  defendants' standpoint -- I'm talking about the signatory

23  defendants.  I don't want to speak on defendants who didn't

24  join in the letter that we submitted.

25          THE COURT:  No, I understand.  I'm going to hear from

1  anybody else who wants to speak to it.

2         MR. STIO:  But from the defendants' standpoint, we

3  would like to have the opportunity to meet and confer.  And it

4  would help with, A -- we'll meet and confer with the

5  plaintiffs to come up with a joint letter to the Court, A, how

6  are we going to handle this bucket of 30 cases that they're

7  not going to challenge on remand, and how are we going to do

8  it efficiently.

9         And what I mean by that, Your Honor, is I don't think

10 Your Honor wants to get 67 12(b)(6) motions on the same

11 subject.  Let us talk among ourselves and with plaintiff, can

12 we put together a schedule, can we try to come to an agreement

13 on some sort of consolidated briefing on the defendants' side,

14 and we present it in an orderly fashion to the Court.

15        But I don't think that we can start doing those 30

16 cases and have that sequenced or consolidated briefing until

17 we resolve this preliminary issue of subject matter

18 jurisdiction with regard to the other 37.

19        THE COURT:  Why?  Why can't we go forward with the

20 30?

21        MR. STIO:  Because I think that if they are going to

22 file a 12(b)(6) motion, and we have other defendants who have

23 similar defenses, it's not going to work with consolidated

24 briefing.  What we're trying to do is to make this as

25 efficient as possible so that if there are defendants that

1  have the same defenses, they can join in and either file, you

2  know, a shorter brief or one consolidated brief.

3         But the best way I think for us -- because, again, we

4  just found out they're going to file a motion for remand -- is

5  let us meet and confer with plaintiffs.  Let us submit a joint

6  letter to the Court where we'll try to bracket, we have these

7  30 that they're not going to challenge on remand, we have

8  these 67, and how do we come up with a schedule that works for

9  the Court, that works for plaintiffs and that works for

10  defendants that is efficient, that doesn't result in some

11  plaintiffs not having the ability to join in briefing, and

12  allows the Court to decide threshold issues at the beginning,

13  which are subject matter jurisdiction, personal jurisdiction,

14  and arbitrability.  Because none of the defendants want to

15  waive personal jurisdiction or subject matter jurisdiction.

16         THE COURT:  I mean, obviously there's some urgency

17  here, at least according to the plaintiffs.  And I think

18  that's probably true on everybody's part.

19         MR. STIO:  See, Your Honor, may I speak to that for a

20  moment?

21         THE COURT:  Yes.

22         MR. STIO:  Everyone in this courtroom understands the

23  noble intent of Daniel's Law.  It's to protect the privacy and

24  safety of public servants.

25         These cases are not about protecting the privacy and

1    safety of public servants.  These cases are about a private

2    corporation's actions.  And as we described in our letter, you

3    know, they want to hide behind urgency, but their actions here

4    do not show urgency.  They abrogated nearly 19,000

5    individuals' information, and they waited to make requests.

6    They could have made requests individually --

7            THE COURT:  Well, now we're getting into the merits.

8            MR. STIO:  I'm sorry?

9            THE COURT:  It just seems to me that it's clear that

10   the constitutionality of the statute is going to be

11   challenged.  I mean, let's not hide the ball here.  Isn't that

12   what's going to happen?

13           MR. STIO:  For some defendants.

14           THE COURT:  Other defendants are going to say it's

15   constitutional?

16           MR. STIO:  Other defendants will either join in or

17   take no position.  And the reason for that is other defendants

18   want to get a ruling on personal jurisdiction, arbitrability,

19   before having to get into or waive, possibly, the ability to

20   pursue the jurisdictional arguments.

21           THE COURT:  Well --

22           COUNSEL:  Excuse me, Your Honor.  I'm sorry.  We

23   can't hear back here.

24           THE COURT:  Oh, keep your voice up.  Speak up.

25           MR. STIO:  What I'm saying is there are defendants

*United States District Court*

1  who have personal jurisdiction, arbitrability defenses.

2          THE COURT:  What do you mean, arbitrability?

3  There's a contract --

4          MR. STIO:  There's -- they have a terms of use --

5  yeah.  I could have one of the defendants' counsel speak to

6  that.

7          THE COURT:  Okay.

8          MR. STIO:  But there's a terms of use.  In order to

9  use the website, they have to click on a terms of use, accept

10  it, and it calls for an arbitration.

11          THE COURT:  Okay.

12          MR. STIO:  And then there's personal --

13          THE COURT:  I'm talking about the ones where there's

14  no subject matter jurisdiction challenge.

15          In some of those cases, you're saying that there's

16  personal jurisdiction issues?

17          MR. STIO:  Correct.  Now, and there's also -- there

18  may be arbitrability challenges in the second bucket, which

19  is the 37 --

20          THE COURT:  Let's just talk about --

21          MR. STIO:  The first bucket?

22          THE COURT:  Let's just talk about the first bucket.

23          So with respect to those where there is no challenge

24  to subject matter jurisdiction, in some of those there will be

25  challenges to personal jurisdiction, and there may also be

1  issues of arbitrability, is that what you're saying, in the --
2  of the 30 where there's no challenge to subject matter
3  jurisdiction?
4           MR. STIO:  I believe so, Your Honor.  And the reason
5  I am hesitant is that there are some arbitrability in the
6  second bucket.
7           But personal jurisdiction, I know for a fact that at
8  least my clients are in that first bucket, a couple of them,
9  and they will have a challenge on personal jurisdiction.
10          THE COURT:  Now, will all your clients challenge
11 personal jurisdiction?
12          MR. STIO:  Not all my clients, no, Your Honor.  The
13 ones where there was complete diversity and they don't have
14 contact with New Jersey.
15          THE COURT:  This is no way we can decide these 67
16 cases all at once.  And I'm thinking out loud now, because
17 that's why we have this status conference.  And I want to hear
18 from other lawyers too who have anything to say about it.
19 Whether we should tee up a case that deals with the
20 constitutional challenge, that's going to -- where there's no
21 issue about the personal jurisdiction, where there's no issue
22 about subject matter jurisdiction -- we have to start
23 somewhere -- and file a motion to dismiss on the ground that
24 the statute violates the First Amendment, have briefing, get
25 it decided.

1          If I decide it's unconstitutional, that's the end of

2     it.  If I decide it's constitutional, then maybe there can be

3     a certification under 1292, go up immediately to the Court of

4     Appeals and get it decided.

5          Now, what's the problem with that?

6          MR. STIO:  The problem is with regard to

7     jurisdiction.  Personal jurisdiction, arbitrability.

8          THE COURT:  No.  I'm talking about the cases where

9     there's no challenge to personal jurisdiction, where there's

10    no challenge to subject matter jurisdiction.

11         MR. STIO:  And you would put all the other --

12    everything else would be stayed?

13         THE COURT:  Well, I can't decide them all at once,

14    can I?

15         MR. STIO:  No.

16         THE COURT:  Look, let's be practical about it.  That

17    seems to me the heart of it.  I know people may have personal

18    jurisdiction issues.  But those that don't, why don't we tee

19    it up, get the central issue decided, one way or the other,

20    and I would certify it under 1292.  If I decide it's

21    constitutional, you get to the Court of Appeals, and the issue

22    will be resolved in our lifetime.

23         MR. STIO:  Your Honor, again, I would like to have --

24    meet and confer with the plaintiffs.

25         I understand where the Court wants to go, but I can't

*United States District Court*

1    speak on behalf of 67 cases.

2          THE COURT:  I'm just talking -- I know.

3          I'd like to hear anybody else's comment on that

4    proposal.  I am not wedded to it.  I just throw it out to try

5    to move it along, because we could get ourselves bogged down

6    for years on discovery and other things when this is the

7    central issue here.

8          Now, I know every defendant is different, and I know

9    there may be other defenses, but would anybody else like to

10   speak to that?

11         Yes, you may.

12         Good morning.

13         MR. KIMREY:  Good morning, Your Honor.  May it please

14   the Court, I'm Blaine Kimrey, that's K-I-M-R-E-Y.

15         THE COURT:  All right.

16         MR. KIMREY:  I represent Whitepages and Hiya.  The

17   Whitepages case number is 24-cv-3998.  Hiya is 24-cv-4000.

18         I don't speak on behalf of this entire group,

19   obviously.

20         THE COURT:  I understand.

21         MR. KIMREY:  I speak only on behalf of those two

22   clients, Your Honor.

23         We think your idea is fantastic one.  We agree that

24   the constitutional issue should be decided.

25         We, if we ever get there, would challenge the

1    constitutionality of the statute.

2            THE COURT:  Right.

3            MR. KIMREY:  We do believe that it is

4    unconstitutional, both facially and as applied.

5            I do know note, however, that Whitepages and Hiya are

6    in the group that is going to be fighting about subject matter

7    jurisdiction apparently, so we won't be in one of those lead

8    cases.

9            THE COURT:  Apparently or you will be?

10           MR. KIMREY:  Well their motion to remand is due today

11   in both cases, so we'll see.

12           THE COURT:  Yes.

13           MR. KIMREY:  But that sounds like a fantastic idea,

14   Your Honor.  Get that constitutional issue teed up, you can

15   decide it as a matter of law, and then if you wish, you can

16   1292 it up to the Court of Appeals.

17           THE COURT:  Right.

18           MR. KIMREY:  I do note, Your Honor, just so you know,

19   you may know this already, but there is a constitutional

20   challenge ongoing right now that's led by the ACLU.  It's

21   currently before the New Jersey Court of Appeals, so it's

22   something that you'll probably want to watch.  And it may go

23   up to the New Jersey Supreme Court.  Although, obviously,

24   that's not necessarily dispositive for you, because this is a

25   federal constitutional issue.

1          THE COURT:  Right, right.

2          MR. KIMREY:  But something to be aware of.

3          THE COURT:  Is there a challenge under both the US

4    Constitution and the Constitution of New Jersey?

5          MR. KIMREY:  Yes.  And New Jersey's constitution, its

6    free speech clause has been deemed to be -- to protect more

7    speech than the US Constitution.

8          THE COURT:  All right.  I'd like to hear anybody else

9    comment on that, on this particular issue.

10          Let's hear from defense counsel here.

11          MR. SZYBA:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. SZYBA:  Robert Szyba.  I represent three

14    different defendants, Infomatics, The People Searchers, and We

15    Inform, from one of the case numbers, at least, 24-cv-4037.

16          THE COURT:  Are you one of the 30 defendants or the

17    37 group?

18          MR. SZYBA:  I'm one of the 30 defendants that have

19    complete true diversity.

20          THE COURT:  Okay.  Thank you.

21          MR. SZYBA:  From our perspective, Your Honor, two

22    points.

23          Regarding the idea about having staggered briefing to

24    address fundamental threshold constitutional issues and then

25    moving on to the personal jurisdiction issues, we concur with

1  our colleagues, that seems like a really great idea, because

2  that would likely address a lot of these threshold issues for

3  the lowest common denominator of cases and address these in a

4  very organized and orderly fashion where parties can sign on

5  or not.

6        I think each case will likely have unique issues

7  where some -- some companies will have some arguments more

8  than others.  So if we do address it that way, there may be

9  collections of cases.  The cases that are not moving on those

10  issues, for my clients, for example, we're attempting to

11  engage in settlement discussions with the plaintiffs.  So for

12  us, we're not necessarily looking to get bogged down with

13  briefing initially.  Obviously, if other parties are engaged

14  in that and taking the lead, we can join or we can participate

15  somewhat.

16        But the one thing I wanted to raise for your

17  attention is that to the extent there are companies -- I know

18  there's at least a handful that are attempting to engage in

19  settlement discussions that may obviate the need for our

20  participation and streamline altogether anyway, we'd like for

21  them -- for there to be some sort of settlement track that's

22  factored in.  But the staged approach to briefing might

23  already have built in some of that -- let's call it protection

24  or carveout timing-wise.

25        THE COURT:  All right.  Thank you.

```
 1              MR. SZYBA:  Sure.  Thank you, Your Honor.

 2              THE COURT:  Sure.

 3              Good morning.

 4              MS. PURCARO:  Thank you, Your Honor.

 5              THE COURT:  Give us your name.

 6              MS. PURCARO:  My name is Kelly Purcaro.  I'm from

 7  Greenspoon Marder.

 8              THE COURT:  Spell your name, please, for the

 9  reporter.

10              MS. PURCARO:  P-U-R-C-A-R-O.  And I'm the attorney

11  for Joy Rockwell, and it's Docket Number 4389.  Thank you.

12              THE COURT:  Which category are you in?

13              MS. PURCARO:  Briefly, Your Honor, I'm in the

14  complete diversity, 30 category.

15              THE COURT:  Thank you.

16              MS. PURCARO:  And I agree with the recommendation on

17  the threshold issues.  And absolutely the constitutionality

18  and the assignment issue I think are the main issues that

19  would be dispositive.

20              But I wanted to address briefly a note about the

21  urgency.

22              I think that one of my concerns, and the reason I'm

23  not a signatory defendant, is because I don't have the issue

24  with remand and -- that we anticipate might happen.

25              THE COURT:  What's a signatory defendant?
```

```
 1          MS. PURCARO:  The defendants that signed a letter
 2   that are all coming together as a group.  The defendants that
 3   are --
 4          THE COURT:  These letters that --
 5          MS. PURCARO:  Correct, correct.
 6          THE COURT:  All right.
 7          MS. PURCARO:  One of the issues that we have is,
 8   number one, not all of the cases seem to have been served, and
 9   so not all of the cases that will be removed have been
10   removed.
11          THE COURT:  Right.
12          MR. PURCARO:  So our concern was that for those
13   defendants that are still in the process of retaining counsel
14   or recently have, they didn't want to miss out on any of the
15   briefing schedule or any of those things.  So your suggestion
16   would not interfere with those that may come later if all
17   cases are stayed.
18          Secondly, we did not want to engage in discovery at
19   this point if these cases are going to be dismissed.  However,
20   as a former plaintiffs' counsel, I also understand and I think
21   we all sympathize with the purpose of the law.  And Your Honor
22   mentioned the urgency here.
23          So one of the things that I wanted to raise for
24   consideration is the production of the lists of the covered
25   persons that made the request to the defendants.  I know that
```

1  was raised before, but it's worth reiterating.

2          THE COURT:  Right.  Would that be necessary for a

3  constitutional challenge?

4          MS. PURCARO:  I think yes.

5          THE COURT:  At some point it certainly would be.

6          MS. PURCARO:  I think yes.

7          THE COURT:  Why?

8          MS. PURCARO:  Because if it is constitutional, we as

9  the defendants want the ability to know whom it is that

10 requested the protections under the law.  And I can tell

11 you --

12         THE COURT:  But that would come later.  Obviously if

13 it's held to be constitutional, you're going to be permitted

14 to get a lot of discovery, because they're seeking damages,

15 so --

16         MS. PURCARO:  Right.  So the issue is that we have a

17 complaint in my -- I'll speak to my case that I represent

18 today as an example.  And I know others are in a similar

19 situation, where we don't know who made the request to us.

20 And we've been attempting for about three months to get a list

21 of those requests so we can cross-check for compliance.

22 Whether it's constitutional or not, we feel best practices is

23 to protect the information while everybody's waiting for a

24 decision.

25         And so we have not been able to get that information

```
 1  from the plaintiffs.  We don't know who these people are.  And
 2  I have other defendants that have reached out saying, I don't
 3  know who these people are that asked for these protections
 4  under Daniel's Law.
 5          THE COURT:  Well, you obviously have names.  You
 6  don't know who --
 7          MS. PURCARO:  We do not.
 8          THE COURT:  When people make requests to redact,
 9  isn't there a name?
10          MS. PURCARO:  So the issue is in my case, it was New
11  Year's Day, midnight, thousands of emails start coming in.
12          THE COURT:  Okay.
13          MS. PURCARO:  My client's system, which usually gets
14  200 emails a week --
15          THE COURT:  Right.
16          MS. PURCARO:  -- flagged it as a spam attack and shut
17  down the email, so we don't know who made the requests.
18          THE COURT:  No.  I think your -- I don't understand
19  what you're saying.
20          In other words, if I send an email to remove my
21  information --
22          MS. PURCARO:  Uh-huh.
23          THE COURT:  -- you have my name.
24          MS. PURCARO:  Only if it comes through to my server.
25          So if you have the @atlas email, it's identified as a
```

1  spam attack, and the email is blocked.  It's like the mailbox

2  is shut.  The letter can't be delivered.  We don't have

3  visibility into who made the requests.

4          So we've been --

5          THE COURT:  Do you know a request was made?

6          MS. PURCARO:  That what we're trying to find out.

7          THE COURT:  Oh, you say you don't even know if a

8  request was made?

9          MS. PURCARO:  We think a couple came in --

10         (Court reporter clarification.)

11         THE COURT:  All right.  The hypothetical John Doe

12  requests information to be removed, directed at your company.

13  You're saying you don't know that John Doe made the request on

14  January 1, 2024?

15         MS. PURCARO:  It could have been.  If more requests

16  came in after the spam attack was identified and the door

17  closed --

18         THE COURT:  You're saying --

19         MS. PURCARO:  So our point is, if people were trying

20  to make requests --

21         THE COURT:  I see.

22         MS. PURCARO:  -- regardless if they were valid or

23  not, regardless if they were coverable or not, we still want

24  to make sure that these folks if they're covered persons and

25  they made a request, at least for now, we can remove them from

1    any type of information distribution.

2            THE COURT:  All right.  So what you're saying is that

3    because of some blockage, I will call it, on your technology,

4    you didn't -- even though somebody may have tried to contact

5    you, it was never received?

6            MS. PURCARO:  Correct.

7            THE COURT:  All right.

8            MS. PURCARO:  So my point is, I do agree with the

9    approach of the threshold issues, but in the interim, if there

10   is a stay, I would like the ability, for the benefit of this

11   defendant and other defendants I have in state court, to be

12   able to proactively --

13           THE COURT:  I see.

14           MS. PURCARO:  -- cross-check the information and

15   remove folks for now.

16           THE COURT:  I understand.

17           MS. PURCARO:  Without any waiver or any admission,

18   just to maintain status quo and make sure that anyone that

19   doesn't want their information out, my folks are doing the

20   best they can to make sure that it's not released.  But

21   without that information, we cannot do so.

22           THE COURT:  So what you're asking is that the

23   plaintiffs identify all the individuals and the dates when the

24   requests were made, the subject of the complaints?

25           MS. PURCARO:  Correct.

```
 1          THE COURT:  And I assume the plaintiffs have all that

 2   available electronically?  I assume you know who your 19,000

 3   assignees are?

 4          MR. SHAW:  Yes, Your Honor.

 5          THE COURT:  Assignors, right?  All right.

 6   Thank you very much.

 7          MS. PURCARO:  Thank you, Your Honor.

 8          THE COURT:  Anyone else?

 9   Good morning.

10          MR. SPAK:  Good morning, Your Honor, my name is Jason

11   Spak.

12          THE COURT:  Spell your name, please.

13          MR. SPAK:  S-P-A-K.  One defendant in case number

14   4176.

15          And I'm going to make this very quick.  We agree with

16   the notion of teeing up constitutionality first.

17          And I'd just like to echo prior counsel's comments on

18   the urgency that my client feels for getting a list of all the

19   plaintiffs.  My company could determine very quickly, number

20   one, did it redact or otherwise protect the addresses and the

21   phone numbers of the people if we had a list of them.

22          THE COURT:  Right.

23          MR. SPAK:  And, number two, we could also track, did

24   anybody ask us for information about them, where we possibly

25   could have provided their address or phone number.  And that
```

*United States District Court*

 1   would be very useful for settlement purposes, even while the

 2   constitutionality argument is going forward.

 3          So having plaintiffs provide the list which we think

 4   they already have is not discovery, it's just a way of getting

 5   everyone who shares an interest in protecting people who under

 6   the law as it's currently written deserve to be protected,

 7   getting them protected.

 8          That's all.  Thank you.

 9          THE COURT:  Any other defense counsel?

10          Yes, sir.

11          MR. TURNER:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. TURNER:  Serrin Turner, T-U-R-N-E-R, from Latham

14   & Watkins, representing CoStar defendants, LightBox, Oracle,

15   and PeopleConnect.

16          THE COURT:  Which group are you in, the 30 or the 37?

17   If you know.

18          MR. TURNER:  I guess it depends on how plaintiffs are

19   counting it, Your Honor, but I would expect that the

20   plaintiffs may be contesting subject matter jurisdiction for

21   our defendants, at least some of them.

22          THE COURT:  All right.

23          MR. TURNER:  But, Your Honor, I just wanted to come

24   back to the constitutional issue.  And first, I think it's

25   worth emphasizing, that is only one defense that defendants --

1    at least our defendants are considering raising.  There are

2    important statutory questions, such as the validity of these

3    requests that were made.  We think there are serious questions

4    whether they are valid under the statute.

5           And there are statutory exceptions that potentially

6    apply to some defendants.  And under the document of

7    constitutional avoidance, I think there should be some concern

8    for jumping to the constitutional issues where the cases could

9    be decided on statutory grounds instead.

10          But on the constitutional issues, I think it's very

11   important -- at least, our defendants to the extent we are

12   considering those defenses, it would be as-applied challenges.

13   There would be challenges that would require a factual record.

14          So, for example, we're considering a due process

15   challenge.  But it would be a due process challenge as applied

16   to the facts here.

17          Because what happened here is that, as was previewed

18   earlier, the plaintiffs had blasted defendants very

19   intentionally with 20,000 requests at a time, over a holiday

20   period, trying to make it impossible to comply with the

21   ten-day deadline.

22          (Court reporter clarification.)

23          MR. TURNER:  So while the ten-day deadline might be

24   reasonable on its face, that's one question.  But there is a

25   separate question whether it is -- whether it satisfies due

 1   process here.

 2          And I would be concerned about that question, that

 3   constitutional question being decided without a factual record

 4   about how these requests were made.  It's not evident from the

 5   complaint.  And we would want to do discovery into how they

 6   were made, why they were made this way.  We would want a full

 7   factual record on that issue.

 8          And the same with the First Amendment.  There is a

 9   potential First Amendment challenge here.  But I think that

10   question is much better decided on the basis of a factual

11   record, for example, about the nature of each defendant's

12   business that might be at issue.  Because you can imagine that

13   there are some businesses, for example, that have no

14   functionality, where they actually make plaintiffs'

15   information or people's information available on the internet.

16   We're just talking about selling to private subscribers.

17          THE COURT:  Right.

18          MR. TURNER:  And there would be a real --

19          THE COURT:  What difference would that make?

20          MR. TURNER:  Because, Your Honor, in terms of the

21   interest that's at issue here, which is preventing bad guys

22   from simply finding people's addresses on the internet --

23          THE COURT:  Right.

24          MR. TURNER:  -- it doesn't really apply to a service

25   that doesn't function that way.

1    So for a statute to prohibit, you know -- or to apply

2 in that circumstance would not be tailored to the governmental

3 interest at stake.

4    It's just one example of the sort of argument that

5 requires a factual record that isn't going to be evident from

6 the plaintiffs' complaint here.

7    So that would be my worry about jumping to litigate

8 constitutional issues on the face of the complaint.  The

9 complaint here is very bare bones.  And to the extent the

10 defendants want to go beyond the face of the statute to bring

11 constitutional challenges, that's the concern I would have.

12    THE COURT:  So how would you deal with it?  On each

13 of the cases then you would have to take discovery, and then

14 it would be years before this would be litigated.

15    MR. TURNER:  As I think was alluded to earlier, I

16 think all defendants here have an interest in obtaining

17 discovery from the plaintiffs about this Atlas operation, how

18 the requests were made, et cetera.

19    So one possible method of organizing things would be

20 to bifurcate some discovery and allow for that discovery to go

21 forward first, and then we can see where we're at after that

22 discovery ends where things shake out.  There may be some

23 cases that settle.  There may be some cases that get

24 transferred elsewhere for personal jurisdiction reasons, could

25 be a more limited set of cases to pursue after that where

```
 1   discovery could proceed in the opposite direction.
 2          THE COURT:  So there would be discovery with respect
 3   to all cases then --
 4          MR. TURNER:  As to the plaintiffs.  Right.  Discovery
 5   directed to the plaintiffs and the -- how the requests were
 6   made and the operation of Atlas.
 7          THE COURT:  How what requests were made, requests to
 8   delete?
 9          MR. TURNER:  The requests to delete, the requests to
10   suppress the information, yes, Your Honor.  Because, again --
11          THE COURT:  You have -- you have 19,000.
12          MR. TURNER:  Uh-huh.
13          THE COURT:  So you're going to be asking discovery as
14   to how each of the 19,000 made the request, whether they
15   picked up the telephone, whether they did it by email, whether
16   they sent a letter, whether they walked into the office?
17          MR. TURNER:  No.  We know more than that, Your Honor.
18          The requests were sent in giant email blasts from
19   Atlas.
20          THE COURT:  Okay.  You're not talking about how the
21   individual contacted Atlas; you're talking about what Atlas
22   did in contacting the defendants?
23          MR. TURNER:  That, but we would want to understand
24   the relationship between Atlas and the covered persons.  I
25   think that's an important issue.
```

```
 1              THE COURT:  So you would be -- so if you want to find

 2     out, you would have to take discovery on each of the 19,000,

 3     wouldn't you?

 4              MR. TURNER:  That seems unnecessary, Your Honor.  I

 5     think it's more a question of Atlas's business practices.  I

 6     don't think it would vary much from covered person to covered

 7     person.  I don't think it would require 19,000 depositions.

 8              THE COURT:  All right.  Other defense counsel want to

 9     be heard?

10              MR. MacDONALD:  Good morning.

11              THE COURT:  Good morning.

12              MR. MacDONALD:  Good morning, Judge.  John MacDonald

13     from Constangy, Brooks, Smith & Prophete.  I am here on behalf

14     of Restoration and Append.  Those are extensions 4324 and

15     4178.

16              One of the 30, I believe.

17              THE COURT:  Okay.

18              MR. MacDONALD:  So, Your Honor, it's just a request.

19     With respect to handling the case prior to constitutional

20     challenge and to avoid having to go there if necessary, there

21     may be -- and I believe there is -- a small subset of

22     defendants who did delete the information within the ten days.

23     Plaintiffs' counsel wouldn't know that, of course.  They would

24     have no idea of knowing that.

25              So the question would be, can we have the required
```

1   meet and confer prior to the constitutional handling in order

2   to sort out that issue, because there may be --

3           THE COURT:  So you're saying there may be some

4   defendants who deleted all the information within the ten days

5   and, therefore, were in compliance with the statute?

6           MR. MacDONALD:  Yes.  And in order to avoid having

7   them have to go through the expense of dealing with the

8   constitutional issue needlessly if they are in compliance as

9   the plaintiffs seek compliance, we would simply ask that there

10  be in your order a meet and confer requirement with the

11  plaintiffs on that topic for that limited group.

12          Thank you, Judge.  Unless you have any further

13  questions --

14          THE COURT:  No.  Thank you.

15          MR. MacDONALD:  Thank you, Judge.

16          THE COURT:  Good morning.

17          MR. DOMINO:  Good morning, Your Honor.  My name is

18  Tyler Domino, D-O-M-I-N-O, from Sidley Austin.  I represent

19  MyHeritage, Case Number 4392.

20          To begin with the buckets, I don't know if we fit in

21  either of those buckets.

22          We also raised for removal on fraudulent joinder of a

23  defendant ground, and it's unclear from the discussion this

24  morning whether plaintiffs would be challenging that on

25  remand.

1        But we also raised the other two grounds, CAFA and

2   collusion, which they are challenging.  But if they don't

3   challenge fraudulent joinder, then we would be in the 30

4   bucket as opposed to the 37.

5        As to your proposal about the constitutional issues,

6   my clients do believe they have a personal jurisdiction

7   argument.  And we would be concerned of kind of missing the

8   boat on being able to make those constitutional arguments to

9   you if we had to wait in the background so as to not to waive

10  our personal jurisdiction argument, to be able to make them.

11       And then finally, I agree with Mr. Turner about that

12  they're mostly going to be as-applied challenges that require

13  a lot of fact-finding maybe on individual defendants and

14  mostly on how Atlas's email system worked.

15       THE COURT:  Well, I think we could establish some

16  kind of an order where if we teed up one issue, you wouldn't

17  be waiving the other issues.  In other words, simply

18  because you -- if we did go forward with a constitutional

19  challenge, you wouldn't be waiving your right to personal

20  jurisdiction, the issue of personal jurisdiction.  That may be

21  possible.  I mean, obviously you wouldn't have to raise all

22  your defenses at once.  I mean, normally you may have to do

23  that under the rules, but we can probably fashion some kind of

24  an order to protect you from that.

25       MR. DOMINO:  Okay.  If there is a way for Your Honor

*United States District Court*

1    to do that, we would be interested.

2            THE COURT:  All right.  Let me hear from Mr. Shaw

3    now.

4            Anybody else from defense counsel wants to speak at

5    this point?

6            Oh, go ahead.  I'll let you -- you've already spoken

7    once before, but go ahead.

8            MR. KIMREY:  Blaine Kimrey again, Your Honor.

9            THE COURT:  Yes.

10           MR. KIMREY:  Just one quick suggestion on this issue

11   of reservation of all other arguments.

12           What the Court could do is perhaps take briefing on

13   the facial challenges and say that as-applied challenges are

14   reserved for the future, but there are facial challenges to

15   the statute that do not require any discovery to decide on.

16           THE COURT:  Mr. Shaw.

17           MR. SHAW:  Thank you, Your Honor.  Adam Shaw for

18   plaintiffs.

19           THE COURT:  Yes.

20           MR. SHAW:  I think what we're hearing is that there's

21   a lot of common issues.  As to the cases in the bucket that

22   are going forward, it seems to me that there should be a

23   process for those parties to make a motion to dismiss to move

24   those cases forward.

25           I don't -- you know, I disagree with the notion that

1  somehow the case should be stayed or that there's not some

2  imminence -- some imminence here.  We checked yesterday, and

3  some of these named plaintiffs' information is still out

4  there.  We have pictures of maps with targets on -- dots on

5  people's houses.  So it's very important to protect this

6  information.  This is imminent harm out there.

7          Now, the people --

8          THE COURT:  That raises a question.

9          You would be able to supply all defendants relatively

10 quickly, would you not, the names of the individuals whose

11 information you sought to have deleted?  You have that

12 electronically, I assume?

13         MR. SHAW:  Yes, Your Honor.  And we can do that.

14         But do I want to say, I think that's merits

15 discovery.  And we're happy to do that.  But we have

16 information from them we'd like to get as well.

17         THE COURT:  No, I understand.

18         MR. SHAW:  But, yes, we can do that.

19         THE COURT:  It just seems to me --

20         MR. SHAW:  Yes.

21         THE COURT:  -- that if the defendants are genuinely

22 interested in complying with Daniel's Law in futoro --

23         MR. SHAW:  For sure.

24         THE COURT:  -- isn't it in the public interest to

25 give every defendant the information you have concerning the

```
 1  19,000 names that you submitted to them for deletion?

 2        MR. SHAW:  Absolutely, Your Honor.  But I do want to

 3  say that I think it's somewhat contrived, because that

 4  information has been delivered to them and they have it, you

 5  know.

 6        THE COURT:  When did you do that?

 7        MR. SHAW:  Each individual covered person sent an

 8  email themselves, which the Atlas service has verified has

 9  been delivered to these defendants.  So they have it

10  somewhere.  If they put it in their own spam bucket, if they

11  threw it in the garbage, you know, fine.

12        But I hear Your Honor.  We can supply them the names

13  again, no problem.

14        THE COURT:  Maybe they did throw it away.

15        MR. SHAW:  Right.  No problem.

16        THE COURT:  But the point is, let's give it to them.

17        MR. SHAW:  Sure.

18        THE COURT:  How soon could you do that?  Aside from

19  all the other issues today.

20        MR. PARIKH:  Your Honor, Raj Parikh, also on behalf

21  of the plaintiffs.

22        THE COURT:  Spell your name, please, for the record.

23        MR. PARIKH:  Yes, Your Honor.  It's R-A-J, last name,

24  P-A-R-I-K-H.

25        THE COURT:  Yes, Mr. Parikh, go ahead.
```

```
 1            MR. PARIKH:  Thank you, Judge.

 2            Just -- yes, I'll come up.

 3            Just to kind of move it back one step so I can answer

 4    your question directly about providing information to the

 5    defendants.

 6            THE COURT:  Right.

 7            MR. PARIKH:  So as Mr. Shaw mentioned, each of these

 8    individual people sent an email through the Atlas email

 9    service.  It's their own personal email account, like a Gmail

10    account or Yahoo account --

11            THE COURT:  Okay.  Right.

12            MR. PARIKH:  -- to the defendants.

13            Those individuals choose which defendants they want

14    to send requests to.

15            THE COURT:  Okay.

16            MR. PARIKH:  So Mr. Smith may have sent a request to

17    three defendants, and Ms. Jones may have sent a request to 20

18    defendants.

19            THE COURT:  So in other words, what you're saying is

20    that the -- at least -- I haven't read all the complaints.

21    I've looked at --

22            There's a group of 19,000.

23            MR. PARIKH:  Correct.

24            THE COURT:  So what you're telling me is those 19,000

25    did not send emails to all the defendants that are in these 67
```

1    cases?

2            MR. PARIKH:  Right.  So it's a little bit different

3    than that, Your Honor.  Let's say there's approximately 20,000

4    total covered people --

5            THE COURT:  Right.

6            MR. PARIKH:  -- that use Atlas's service.

7            THE COURT:  Right.

8            MR. PARIKH:  Any subset of those people -- and it

9    usually hovers between 16,000 and 19,000 who have sent

10   requests to these defendants.

11           So each list, each compliance list that Your Honor is

12   asking about, that the defendants are asking for, is

13   different.  And so they can be provided, and we have in fact

14   provided them two buckets.

15           First, Your Honor, there are multiple data brokers

16   who receive these requests who reached out and were then

17   provided the lists at the time and aren't defendants in these

18   lawsuits because they complied with the law.

19           There are others here --

20           THE COURT:  Okay.  Then, for example, we'll take the

21   hypothetical John Doe, a police officer in whatever town in

22   New Jersey.

23           MR. PARIKH:  Uh-huh.

24           THE COURT:  He wants to delete the information that

25   he has.

*United States District Court*

```
 1        Now, how does he decide -- I mean, there are 67 cases

 2  here, and some of them have multiple defendants.  So how does

 3  he decide -- let's say 67, for example.  67 defendants.  He

 4  doesn't even know the names of some of these companies,

 5  correct?

 6        MR. PARIKH:  I think some of the defendant companies,

 7  that's correct.

 8        THE COURT:  Defendant.

 9        MR. PARIKH:  Correct.

10        THE COURT:  How does John Doe, the police officer who

11  wants to get his information deleted, how does he know where

12  to send the emails?

13        MR. PARIKH:  Yeah.  That's a great question.

14        THE COURT:  That's Atlas.  Correct?

15        MR. PARIKH:  Absolutely.  And that is the privacy

16  tools that Atlas provides.

17        THE COURT:  I'm John Doe.  I know about Atlas.  I go

18  to Atlas and say, listen, I want my home address deleted.

19        So what do you do?

20        MR. PARIKH:  So Atlas provides through its privacy

21  tools a list, and John Doe is able to go and look at that list

22  and say, okay, I would like my information deleted from

23  information brokers A, B, C and F.

24        THE COURT:  Okay.  So Atlas has a list of -- what are

25  we talking about?  100?  200?  300?  500?
```

1          MR. PARIKH:  Yeah.  I'm not sure of the exact number,

2     Judge, but it's hundreds.

3          THE COURT:  It's hundreds.  So John Doe is sitting

4     there, a police officer, so he says, okay.  I want it deleted

5     from all 500 companies on your list, on Atlas's list.

6          MR. PARIKH:  Correct.

7          THE COURT:  Does he push one button or does he have

8     to push 500 buttons?

9          MR. PARIKH:  So it depends on if they -- it depends

10    on which ones they want to do, but it could be either, Judge.

11    They could push, you know, one or two buttons, or they could

12    push 400 buttons, let's say, if they had a subset.

13         THE COURT:  They have to push 400 individual buttons?

14         MR. PARIKH:  Most people, I think, Your Honor -- it's

15    checkboxes, you know, to some extent.  So you can uncheck

16    sites that you don't want to have information removed from.

17         THE COURT:  Well, why wouldn't -- hypothetically, why

18    wouldn't John Doe, if he wants to protect his information, why

19    isn't his information removed from all 500, unless it's going

20    to take him ten hours to do it and individually say A, B, C,

21    and go all the way down the list?

22         MR. PARIKH:  Yeah, it's a great question, Judge.  And

23    I don't have the answer as to what these individual covered

24    persons decided to do, but we do know the numbers are

25    different and the requests that were put in were different.

```
 1          Some, for example, Your Honor, will ask that their

 2     home address be removed but not their phone number.  Others

 3     will have not just their home address but their home address,

 4     they'll also put in information for their spouse, because

 5     covered people include family members, children, et cetera.

 6          And so I think that also has to do with varying

 7     requests.  Right?  There may be some websites where, you know,

 8     they have information on a 13-year-old or a 14-year-old that

 9     continues to be published despite a request and other websites

10     that don't have that type of information because it's real --

11          THE COURT:  So what you're telling me is Atlas is

12     able to provide to each defendant the names of the individuals

13     who request a deletion?

14          MR. PARIKH:  Correct.

15          THE COURT:  How many individual defendants do we

16     have?  There are 67 cases.  There are more, because some of

17     them have multiple defendants.

18          MR. PARIKH:  Correct.  So with respect to the

19     multiple defendants, Your Honor, most of these are -- you

20     know, it may be a series of websites or a series of

21     information of interrelated companies.  So it may be one kind

22     of parent corporate entity that operates five businesses, and

23     that's why you have multiple defendants in one case.

24          THE COURT:  Right.

25          MR. PARIKH:  But the request may have gone in either
```

1    to one or two sites because of the way they are structured.

2              THE COURT:  How soon would you be able to produce

3    that information to the defendants?  I mean, it's going to be

4    different for each defendant, obviously.

5              MR. PARIKH:  It will, Judge.  I'll confer with our

6    client.

7              I believe that a month may be sufficient time, and we

8    can do it on a rolling basis, Your Honor.

9              There are defendants in this room that have gotten

10   that information already.

11             THE COURT:  Well, you don't have to be redundant.

12             MR. PARIKH:  Of course.  Understood.  I think 30 days

13   is an appropriate amount of time to be able to get that done,

14   perhaps sooner.

15             THE COURT:  So we say up to 30 days to produce to

16   each defendant -- how do we characterize that?  A list of --

17             MR. PARIKH:  We would -- I mean, we would just call

18   it a compliance tool, Your Honor.

19             The one thing I would say is that we do need either a

20   protective order entered or a nondisclosure agreement from

21   them given the sensitive nature of the information that's

22   going to be shared and the fact that these covered people

23   don't want that information out there.

24             THE COURT:  Well, rather than waste the time on that

25   at the moment, the Court's order could simply say that this

 1  information shall not be disclosed except by further order of

 2  the Court.

 3          I mean, isn't that a way of sort of getting the ball

 4  rolling?

 5          MR. PARIKH:  I believe so, Your Honor.

 6          THE COURT:  Because if you wait for protective orders

 7  for 67 defendants and everybody is going to be nickel and

 8  diming the protective order, and -- you know, I know how that

 9  goes.

10          MR. PARIKH:  Well, as Your Honor knows, Appendix S in

11  this court's rules is the kind of standard protective order.

12  I think that if we modified it and made sure there was an

13  attorneys' eyes only provision, that's there's -- you know,

14  that's the order that's entered --

15          THE COURT:  I could just say that and then if you

16  want to refine it, at least in the beginning, that could

17  possibly be done.

18          MR. PARIKH:  Okay.  Happy to take a look at that,

19  Judge.

20          THE COURT:  And --

21          MR. PARIKH:  Judge, the one other thing I wanted

22  to --

23          THE COURT:  What about this terms -- there's a

24  document called terms of service.

25          MR. PARIKH:  Yeah, the terms of service issue.

 1          So, Your Honor --

 2          THE COURT:  Any reason why that shouldn't be

 3   produced?  That's just a document that the individual signs,

 4   correct?  It's like a contract with your company?

 5          MR. PARIKH:  It is.  It is one agreement.

 6          THE COURT:  It's a standard contract?

 7          MR. PARIKH:  It is.  And a group of defendants

 8   requested that under a discovery rule in state court.  It was

 9   produced to them pursuant to an agreement that a protective

10   order would be entered.

11          They decided, you know, kind of in -- from my

12   perspective, in violation of local Civil Rule 5.3, to include

13   it in their notice of removal papers.  The rules are

14   explicitly clear that unless absolutely necessary,

15   confidential documents should not be filed in an opening --

16          THE COURT:  What's really confidential about it?

17   You're a police officer or you're a prosecutor, you're a

18   judge, whatever, you want to have a contract with you.  It's a

19   standard form.  You sign it or you don't.

20          MR. PARIKH:  Absolutely.

21          THE COURT:  Those individuals could easily go out and

22   make copies of it for their spouses to -- or children to sign.

23          MR. PARIKH:  They could, Your Honor.

24          I think there's kind of one main component on that.

25          So if an outsider -- there's, well, actually two main

1  components.

2          If an outsider looks at that terms of service, they

3  may be able to understand better how Atlas's systems work.

4  And obviously Atlas takes its security very carefully and

5  wants to ensure that it's protecting, you know, not only its

6  users but protecting itself from external attacks, et cetera.

7  So that's one reason, Your Honor, that we wanted to ensure it

8  was confidential.

9          The other is that ultimately, you know, it shows the

10 operational flow for Atlas.  We have no problem providing that

11 document to defendants.  We've provided it to some of them.

12 Obviously we would assert that this gets into merits discovery

13 at the end of the day.

14          THE COURT:  Well, I understand.  But we want to try

15 to be practical here.

16          MR. PARIKH:  Absolutely.

17          THE COURT:  Even though we may open the door a little

18 bit doesn't mean we're necessarily going to open it all way.

19          MR. PARIKH:  Absolutely.

20          THE COURT:  And that's something that could easily be

21 done.

22          MR. PARIKH:  Uh-huh.

23          THE COURT:  So that I could enter an order requiring

24 the compliance list -- is that how you call it?

25          MR. PARIKH:  Sure, yes.

```
 1          THE COURT:  -- be supplied to every defendant within
 2   30 days.  And the terms of service contract I guess it really
 3   is, isn't it?  Is that what --
 4          MR. PARIKH:  So I think that the defendants really
 5   have a significant misunderstanding about the way this works,
 6   Judge, in that, you know, I think that's where their flawed
 7   reasoning comes in about the assignments and this issue of
 8   needing the assignments before motion practice.
 9          The terms of service is a document that governs the
10   usage of the system.  So any judge, you know, prosecutor, law
11   enforcement officer that wants to use Atlas's privacy tools
12   agrees to those terms of service as part of their usage of the
13   privacy tools --
14          THE COURT:  Well, it seems to me, there's no harm in
15   supplying that.  And I would just say that the compilation
16   terms of service is protected from disclosure, except by
17   attorneys, until further order of the Court.  And then if you
18   want to refine what you want to do, that can be done.
19          And it just seems to me, you know, in the interests
20   of compliance with the law, and some defendants say they may
21   make a good faith effort to delete information, that should be
22   in your interest too and your clients' interest.
23          MR. PARIKH:  It absolutely is, Your Honor.
24          THE COURT:  Regardless of constitutionality and
25   personal jurisdiction and the other issues we're dealing with.
```

```
 1          MR. PARIKH:  That's absolutely right, Your Honor.

 2          THE COURT:  It's without prejudice.  It won't

 3   prejudice you or anybody else.

 4          MR. PARIKH:  And, Judge, you've --

 5          THE COURT:  And it may obviously prevent further

 6   damage.  And you won't collect as much if you're successful in

 7   the case, but we're talking about the public interest here,

 8   assuming the statute --

 9          MR. PARIKH:  Your Honor -- so Your Honor, Your Honor

10   has read the stories that are real stories of real police

11   officers -- it's not a laughing matter, you know, despite what

12   defense counsel may laugh about.

13          THE COURT:  It seems to me that's something we could

14   probably do.

15          MR. PARIKH:  Absolutely, Judge.  And I think

16   compliance is very important for us.

17          I will say, Judge, just two other points.

18          One is that with respect to -- I think Your Honor is

19   spot on.  Each of these defendants, whether they chose to

20   throw the requests away or not, have them all, so they could

21   have compiled the lists.  Many of them have.

22          With respect to the comment regarding the

23   constitutional challenge in state court, I just want to be

24   very clear about that.

25          THE COURT:  Yes.
```

*United States District Court*

1          MR. PARIKH:  The ACLU and the plaintiffs in that case

2    are not challenging the entire constitutionality of Daniel's

3    Law.  It's the first line of their appellate brief.  They are

4    simply challenging in that case whether there should be an

5    exception for the press.

6          That case involves a reporter who wanted

7    information --

8          THE COURT:  I see.

9          MR. PARIKH:  -- and wanted to report on information

10   regarding a covered person, was advised they couldn't do so.

11   And that case is very narrowly tailored towards a press

12   exception, which --

13         THE COURT:  You say it's in the appellate division?

14         MR. PARIKH:  It is, Your Honor.

15         THE COURT:  So it's been decided by a Superior Court

16   judge, I assume?

17         MR. PARIKH:  Correct.  And the challenge was denied

18   in the Superior Court, Your Honor.

19         THE COURT:  All right.  Let's hear from --

20         MR. PARIKH:  I'm going to turn it back over to

21   Mr. Shaw.

22         MR. SHAW:  Pardon me, Your Honor.  My co-counsel --

23         THE COURT:  I just want to -- before we get -- on

24   this issue of the compliance list and the terms, anybody have

25   any disagreement with that?

```
 1            MR. STIO:  I want to comment for a second on that.
 2            THE COURT:  All right.
 3            MR. STIO:  One, I don't like the name "compliance
 4   list," but -- let's call it an assignment list, because I
 5   don't want any implications.
 6            THE COURT:  Look, we're not going to -- look, call it
 7   an assignment list.  All right?
 8            MR. STIO:  Thank you.
 9            Two --
10            THE COURT:  That --
11            MR. STIO:  Two, Your Honor, you just can't just give
12   a list of names.  That's one of the problems.  Right?
13            So I get a name Jim Smith, and I have 60 Jim Smiths.
14   Which one is it?  They have to give us personally identifying
15   information, like an email address.
16            THE COURT:  Well, sure.
17            MR. PARIKH:  The name, address and unpublished phone
18   numbers.  Of course.
19            THE COURT:  Sure.
20            MR. STIO:  The third --
21            THE COURT:  Because there's no way the defendant
22   could attempt to delete it if it doesn't have the information
23   that it's supposed to delete.
24            You're right, there are a lot of Jim Smiths and so
25   forth.
```

```
 1            MR. STIO:  Yeah.  And then the third thing that I
 2  would just ask, because I can't speak on behalf of all the
 3  defendants --
 4            THE COURT:  Right.
 5            MR. STIO:  -- is enter the order and give defendants
 6  five days to send an email to the plaintiffs if they want the
 7  list.  This way, defendants who have personal jurisdiction
 8  arguments or any other arguments --
 9            THE COURT:  No, no, no, no, no.  Don't make life more
10  complicated.
11            MR. STIO:  Okay.
12            THE COURT:  If they don't want the list, they can
13  throw it away.
14            MR. STIO:  Okay.  As long as it's without prejudice.
15            THE COURT:  This business of --
16            MR. STIO:  Thank you.
17            MR. MAO:  Sorry, Your Honor.  Mark Mao, Boies
18  Schiller Flexner for plaintiffs.
19            THE COURT:  Give us your name again.
20            MR. MAO:  Mark Mao, M-A-O.
21            THE COURT:  Yes.  Go ahead.
22            You're with the plaintiffs' firm?
23            MR. MAO:  I am, Your Honor.
24            THE COURT:  Go ahead.
25            MR. MAO:  I just want to make clear, for every single
```

```
 1   defendant who has actually asked for the list, Atlas has
 2   absolutely provided that.
 3           THE COURT:  All right.  That's fine.
 4           MR. MAO:  Right.  I just want to make that, because
 5   people are -- yeah.
 6           THE COURT:  Obviously, if it's been already produced,
 7   we don't require redundancy.  So if defendant X has already
 8   received it, you don't have to send it to them.  All right?
 9   Clearly.
10           All right.  Thank you.
11           Yes, Mr. Shaw.
12           MR. SHAW:  Yes.  Thank you, Your Honor.  Adam Shaw.
13           So kind of getting back to kind of a schedule and the
14   way it would look --
15           THE COURT:  Yeah.  We got sidetracked, but I think
16   it's important.
17           MR. SHAW:  Yeah.
18           THE COURT:  Because it was raised by one of the
19   defense attorneys, and I think it makes sense to get the list
20   out promptly, regardless of what we do with the rest of the
21   cases.
22           MR. SHAW:  Right.  So there's a bucket of cases that
23   are going forward.  I think you heard here that they have some
24   core defenses that they want to raise, and we think that those
25   should be raised and brought to the Court.
```

1          Now, some of them, it sounds like some of the

2   constitutional issues might be more summary judgment issues,

3   not motions to dismiss, but --

4          THE COURT:  Well --

5          MR. SHAW:  But the --

6          THE COURT:  Some of them are apparently facial

7   challenges, and according to counsel, others will be

8   as-applied.

9          MR. SHAW:  Right.

10         THE COURT:  Now, do we want to separate that out?  I

11  mean, because if you're talking about as-applied, you're going

12  to have to get into discovery, are we not?

13         MR. SHAW:  That's why I think it's not a motion to

14  dismiss, I think it's something a little bit more than that.

15         But I think there's a track that could go forward

16  that doesn't have that involved with it.  And I think that the

17  track that is on the remand -- potential remand path should

18  not hold up the rest of the motions that, you know, can take

19  place in this court and move the case forward.

20         THE COURT:  Right.

21         MR. SHAW:  Those people may have to either join in or

22  file some other kind of motion later on if they're even here.

23         But to utilize -- to hold everybody else up doesn't

24  seem to make sense.

25         THE COURT:  Maybe we could -- in other words, if

1  you're going to move to remand a certain number of cases --

2          MR. SHAW:  Yes, Your Honor.

3          THE COURT:  And how soon would you be doing that?

4          MR. SHAW:  Your Honor, if we could have --

5          THE COURT:  I mean, you've got 37 cases, so you

6  obviously have done some thinking about this.

7          MR. SHAW:  We've done some thinking.  And, in fact, a

8  lot of their briefs are exactly the same.  You know, they're

9  almost exactly the same.  So if we can make one kind of

10  omnibus brief and direct it to particular cases where

11  necessary, we can do that probably in 21 days.

12          Some of those were due, by the way, as counsel

13  pointed out.  Hopefully Your Honor will give us some

14  dispensation for --

15          THE COURT:  I did stay everything.

16          MR. SHAW:  Right.  So three weeks.

17          THE COURT:  So -- and obviously the stay runs out

18  today, but we're not going to require people to file anything

19  tomorrow, so we'll work that out.  Everybody relax.

20          Now, if we -- you file the motion to remand, and

21  either -- however you did it, you'd have the caption of the 37

22  cases on the motion, and then the brief would -- to the extent

23  you have to be -- to individualize it, you discuss it in the

24  brief.

25          MR. SHAW:  Yes.  And I think we could do that in a

1  very organized way for Your Honor so you would be able to see

2  it.

3         THE COURT:  And then we would give the defendants an

4  opportunity to respond.  And then a reply brief.

5         And once that's all done, I'm again thinking out

6  loud, maybe at that point we stay those cases, because we have

7  the -- and if we took the 30 cases and dealt with the facial

8  challenge to a statute and deal with that, whoever wanted to

9  file a facial challenge would do it within a certain number of

10  days.  Those who don't want to challenge it and have other

11  defenses and so forth can go ahead and file an answer with all

12  the other defenses, you know, challenge the applicability, the

13  constitutional applicability, personal jurisdiction, whatever

14  other defenses you might want to include, and we -- so we get

15  at least the facial issue teed up.

16         Because if you're talking about as-applied, it's

17  going to be different as to every defendant, and we're going

18  to get bogged down.

19         But the facial challenge would be the same.  People

20  may have different ways of writing their motions, but the

21  issue would be there.  I mean, you might cite different cases,

22  and you may -- some people may be more ingenious than others

23  and have different arguments, but it would be teed up.

24         MR. SHAW:  Your Honor, I commend you for that.

25         That's -- I think we could even be more industrious

1  than that.  I think there's more issues on a motion to dismiss

2  that are common that those people that are in the bucket that

3  are staying here can make and they should be asked to make.

4          THE COURT:  What are the other ones that you --

5          MR. SHAW:  Arbitration.

6          THE COURT:  You shouldn't be speaking --

7          (Court reporter clarification.)

8          THE COURT:  Go ahead.

9          MR. SHAW:  I think there's some common ones, as

10  you've heard here today:  Arbitration.  I think some people

11  would want to challenge some definitions under the statute,

12  what does it mean to get notice, who is a covered person.  If

13  they're going to move to dismiss on those grounds, those are

14  common.

15          THE COURT:  I don't think arbitration necessarily is

16  common, because I don't know whether that would be a common

17  issue or not, because arbitration agreements are written

18  differently.

19          Who is the arbitration agreement between, whom and

20  whom?

21          MR. SHAW:  I don't know.  It sounds pretty --

22          THE COURT:  We'll ask defense counsel.

23          MR. SHAW:  But I do think that there's other common

24  motion -- other common defenses that should be raised and

25  should not be held hostage by the people who are --

```
 1              THE COURT:  Let's just take the facial challenge of
 2    the statute.
 3              MR. SHAW:  Yes.
 4              THE COURT:  That is going to be -- it's going to be a
 5    common issue to every defendant except those defendants who
 6    have removed all the names.  And there may be some.  Maybe you
 7    made an error in suing some of these because they've complied.
 8    But we're talking about those that haven't.  That issue, it
 9    seems to me, would be common.
10              MR. SHAW:  I think we have that one.  And I think
11    anything else that's just a standard motion to dismiss under
12    the statute, saying -- some basis where they're saying the
13    allegations in the complaint don't state a claim under the
14    statute --
15              THE COURT:  No.  Because then it's going to be
16    different.  It may be different for each --
17              MR. SHAW:  Definition under the statute of what does
18    it mean to get notice, what does it mean to deliver, what does
19    it mean to disclose.  Maybe they're saying we didn't meet
20    that.
21              We can hear what their suggestions are.
22              THE COURT:  Yeah.
23              MR. SHAW:  I guess what I'm suggesting is if there
24    are common defenses, I would ask that those also be made in
25    the motion.
```

*United States District Court*

```
 1              THE COURT:  Well, assuming there are any.

 2              MR. SHAW:  If there are any.

 3              I also just want to say, Your Honor, I also think

 4      there should be a separate bucket.  As you've heard here,

 5      we've been in discussions with some of the defendants about

 6      potential settlement.  And we'd like to continue that, that

 7      effort, so those cases regardless of their posture should --

 8              THE COURT:  Well, settlement is always in --

 9              MR. SHAW:  Exactly.  But that goes to a stay.

10              THE COURT:  In any case.  I'm not going to stay a

11      case -- these cases now with the thought that everybody is

12      going to settle them and we're all going to go home happy.

13              MR. SHAW:  Right.  Now, the cases that are -- that go

14      in the bucket that are going to make a motion to dismiss at

15      least with regard to a facial challenge, we don't think there

16      should be a discovery stay as to those.  We can -- you know,

17      we're going to give them some information, and we'd like to

18      get some information from them as well.

19              THE COURT:  I don't know if there's any need for

20      discovery if there's going to be a facial challenge.  We know

21      what the statute says.  We know what's alleged in the

22      complaint.  I have to throw it out.  I don't know what

23      discovery there would be that would be needed.

24              MR. SHAW:  I'm just saying that the cases can move

25      forward if there's basic discovery that goes forward.  We
```

1  don't have to have a general stay of the, you know, meet and

2  confer and exchanging of information.

3          THE COURT:  If the statute is unconstitutional,

4  then -- on its face, that's the end of the ball game, isn't

5  it?

6          MR. SHAW:  It is.  But I think there might be some

7  low-hanging fruit that the parties can continue to do some

8  work on that would be efficient, but...

9          THE COURT:  Well, you're going to have -- or that is

10 the defendants are going to have the names of everyone who

11 requested redaction.  We just talked about that.

12         MR. SHAW:  Correct.

13         THE COURT:  And if those defendants decide that they

14 are going to redact the information, fine.  I mean, that's --

15 nobody -- you're going to be happy, right?

16         MR. SHAW:  Correct.  We're talking about people who

17 we believe did not fully delete the information.

18         (Court reporter clarification.)

19         THE COURT:  That doesn't mean they're not going to be

20 defendants, because they still have violated the statute under

21 your theory.

22         MR. SHAW:  Right.

23         THE COURT:  So maybe they've gotten religion late in

24 the game, but you still have that period before they decided

25 to redact.

```
 1           MR. SHAW:  Correct, Your Honor.  And that's what
 2   we --
 3           THE COURT:  Your theory is you would still be
 4   entitled to damages.
 5           MR. SHAW:  Correct.  And there's no basis to stay
 6   that, especially if there's some basic discovery that we could
 7   move those cases forward, which I think would be efficient for
 8   the Court, the cases that are on that track.
 9           THE COURT:  And then if we just dealt with the facial
10   issue, I'm not saying that's going to -- if the statute is
11   unconstitutional, we all go home.  That's the end of it.  If
12   it's constitutional, then we have a slew of other issues.
13   Constitutional on its face.
14           Then we have as-applied, we have the issue of whether
15   there was compliance, whether it was -- the way you sought
16   redaction, whether that was reasonable under the statute, and
17   whether the ten days is absolutely mandatory, no flexibility,
18   or if you're, you know, giving them the shotgun approach here
19   with thousands of names, is it reasonable to expect the
20   company, that the system wouldn't crash and that they
21   shouldn't be given more leeway.
22           And these are all complicated issues for down the
23   road.
24           MR. SHAW:  Correct.  And I'm suggesting that we
25   can -- we can work on some discovery towards those things that
```

1   wouldn't be burdensome to the parties and that that way, once

2   the decision is made as to the facial -- if we -- if it's

3   unconstitutional and we wrap up the tent and go home, then

4   that happens.

5           But if we don't, we wouldn't have wasted -- you know,

6   we wouldn't have dissipated all of that time, you know,

7   however long it takes to get to the finding that it is

8   constitutional.

9           THE COURT:  But that is not different than any other

10  case.  Somebody files a motion to dismiss --

11          MR. SHAW:  Correct.  And sometimes there's a stay,

12  sometimes there's not.

13          THE COURT:  Normally -- forget the constitutionality,

14  just a motion to dismiss, failure to state a claim under

15  Rule 12(b)(6).

16          MR. SHAW:  Right.

17          THE COURT:  Now, the normal procedure is for the

18  Court to decide that issue, a run-of-the-mill case, before

19  allowing discovery to go forward.  Isn't that generally the

20  procedure?  I don't remember a case where I would say, okay,

21  the parties can go forward with all the discovery.

22          MR. SHAW:  Well, it's not all the discovery.  I've

23  seen in practice where, you know, when there's complex cases

24  like this in the sense of a lot of parties --

25          THE COURT:  Right.

```
 1          MR. SHAW:  -- and you know it's going to take a while
 2   once you get -- if the case stays to get through discovery --
 3          THE COURT:  Right.
 4          MR. SHAW:  -- that you try to do some of the things
 5   that are fairly easy to do up front and not have a stay of
 6   that.
 7          THE COURT:  What are you thinking?
 8          MR. SHAW:  Well, they have some basic information
 9   about their businesses, you know, basic information about what
10   they did with the information when they got it and what they
11   did to comply.  It's some basic internal contract-type
12   documents that they would have, I would think.
13          We're not talking about, you know, extensive
14   depositions or things.  We're just talking about some -- the
15   kinds of things that you, you know, talk about in
16   Rule 26(a)(1), you know, basic documents in the case, basic
17   information about their setups.
18          So we would propose that.  So we would propose a
19   bucket of people who are here in this court, want to make a
20   motion on the facial constitutional grounds, a separate bucket
21   of remand track, and then to the extent people that are in
22   either of those, also allow for meet and confers and other
23   kind of settlement process.
24          THE COURT:  Well, why don't we take about a 15-minute
25   recess now and we will return.  Thank you.
```

```
1            MR. SHAW:  Thank you, Your Honor.

2            THE DEPUTY CLERK:  All rise.

3            (Recess at 11:16 a.m. until 11:29 a.m.)

4            THE DEPUTY CLERK:  All rise.

5            THE COURT:  Have a seat.

6            All right.  Any defense counsel want to speak to what

7    Mr. Shaw was just saying before we recessed?

8            Yes?

9            MR. KIMREY:  Your Honor, may I?

10           THE COURT:  You may.

11           MR. KIMREY:  The issue of arbitration came up.

12           THE COURT:  Yes.

13           MR. KIMREY:  And you asked who would be subject to

14   arbitration and why.

15           THE COURT:  Right.

16           MR. KIMREY:  Would you like me to explain that?

17           THE COURT:  Yeah, I would.  Thank you.

18           MR. KIMREY:  So some of the defendants -- and I don't

19   know all of the defendants for whom this applies or for which

20   this applies, but some defendants have terms and conditions on

21   their websites that say that users of the websites and

22   subscribers to the services that are offered through the

23   websites subject themselves to the terms and conditions.  Some

24   of that is browsewrap, some of that is clickwrap.

25           So we want to make sure that in proceeding with the
```

1  facial challenge constitutionally under the First Amendment

2  and the New Jersey Free Speech Clause, that that arbitrability

3  issue won't be waived.

4         I'm concerned that getting into arbitrability now

5  could be a morass that the Court could avoid by potentially --

6  I know you haven't decided yet, Your Honor --

7         THE COURT:  Yeah.

8         MR. KIMREY:  -- but by potentially declaring the

9  statute unconstitutional.

10        And I just want it to be clear on the record and from

11 Your Honor that in proceeding with this constitutional

12 challenge facially, not as-applied --

13        THE COURT:  Right.

14        MR. KIMREY:  -- all other elemental challenges and

15 defenses are preserved, including, but not limited to,

16 personal jurisdiction and arbitrability.

17        THE COURT:  All right.  Because I -- so the

18 arbitration agreement is between your company and the police

19 officer who is seeking to delete the information; is that

20 correct?

21        MR. KIMREY:  Bingo.  Bingo.  So each and every one of

22 these --

23        THE COURT:  So he's assumed to have agreed or he's

24 deemed to have agreed to the arbitration clause if he seeks to

25 have the information deleted?

1          MR. KIMREY:  No, Your Honor.  So, many -- for

2     instance, Whitepages.  Many people use Whitepages.  There is a

3     group of potentially 19,000, 20,000 individuals as assignors

4     who may be users of Whitepages, subscribers of Whitepages.

5     These are law enforcement officers largely.  We also have

6     judges and prosecutors.

7          THE COURT:  Right.

8          MR. KIMREY:  These are people who investigate things,

9     and they may use Whitepages to investigate those things, and

10    they may have opted in to the terms and conditions, which not

11    only provide for arbitrability but also provide for waiver of

12    class actions, mass actions, et cetera.

13         THE COURT:  Right.

14         MR. KIMREY:  But that would entail potentially

15    discovery as to 19,000 people, which we can avoid if --

16         THE COURT:  Well, let's assume I'm a police officer

17    in a town in New Jersey, and I'm worried about my home address

18    and phone number being available to the public.  So I engage

19    Atlas, and I want them -- I want to delete information.

20         So I understand your client, one of the defendants,

21    has personal information about me.  So I click a button or do

22    whatever you need to do electronically to advise your company

23    to delete it.

24         Now, have I as a police officer in seeking to have

25    your company delete the information agreed to arbitrate any

1   dispute I may have with your company with respect to deleting

2   the information?

3           MR. KIMREY:  If those are the only facts, Your

4   Honor --

5           THE COURT:  Right.

6           MR. KIMREY:  -- the hypothetical is constrained just

7   as you've described it --

8           THE COURT:  Right.

9           MR. KIMREY:  -- perhaps not.  But I say that without

10  waiver.

11          THE COURT:  Right.

12          MR. KIMREY:  However, what we found --

13          THE COURT:  Nobody is being bound by anything.

14          MR. KIMREY:  -- is that people do more than that.  So

15  what we find is that officer not only facilitated the

16  suppression request through whatever apparatus Atlas has --

17          THE COURT:  Right.

18          MR. KIMREY:  -- but also was a regular user of the

19  Whitepages --

20          THE COURT:  To get other people's information --

21          MR. KIMREY:  Right.

22          THE COURT:  -- addresses and phone numbers.

23          MR. KIMREY:  Right.  You know, ex-wives, you know,

24  whatever.  So there are a lot of people who use Whitepages.

25          THE COURT:  Okay.

1          MR. KIMREY:  So I just want to be clear, Your Honor,

2     that that arbitrability issue isn't waived and that the

3     personal jurisdiction issue isn't waived as we litigate the

4     remand issues and as we litigate the facial constitutional

5     challenge.

6          THE COURT:  Well, if -- again, speaking

7     hypothetically for the moment -- I decided I wanted to go

8     forward with the facial challenge and we give those defendants

9     who sought to challenge the statute facially a certain amount

10     of time to file their motion to dismiss and would say that in

11     filing the motion on facial challenges, the parties are not

12     deemed to have waived any other defense that they may have to

13     this lawsuit, I wouldn't go into the details, personal

14     jurisdiction, arbitrability, whatever else there may be.  It

15     seems to me that would protect -- even say, you know, the

16     issue of constitutionality -- any other issue.  And that

17     would, it seems to me, protect -- and then anyone who is not

18     interested in doing it would have to file an answer within a

19     certain --

20          In other words, you have a choice:  Motion to dismiss

21     regarding facial challenge with provision of the order, my

22     order, that no other -- any other defense would not be waived

23     by raising it at this time.

24          Any defendant who does not seek to challenge the

25     facial -- constitutionality facially would file an answer in a

 1   certain period of time.  And in that answer you raise whatever

 2   defenses you want to raise.

 3          MR. KIMREY:  That wouldn't work, Your Honor, I don't

 4   believe, for several reasons.

 5          THE COURT:  Why not?

 6          MR. KIMREY:  First of all, let's go back to

 7   arbitrability.

 8          Typically courts find that if you don't move on

 9   arbitrability early in a case, you just assert it in an

10   answer --

11          THE COURT:  Then what we would do is we would say in

12   the order, all defenses -- and I would specifically reference

13   arbitrability, because -- I would specifically mention that

14   you're not waiving the issue of arbitrability, because I agree

15   with you, if you don't raise it early, you're out of the box

16   often.  But if we put that in the order, that should protect

17   you.

18          MR. KIMREY:  So in other words, what you're saying,

19   Your Honor, is, you answer but you can also still move based

20   on arbitrability when you answer.  Or you can also still move

21   on personal jurisdiction.

22          THE COURT:  Well, let's assume you file an answer.

23   You don't file a Rule 12(b)(6) motion in an ordinary case.

24   And you say as one of your affirmative defenses, failure to

25   state a claim upon which relief can be granted, or you raise

 1 | personal jurisdiction, or you raise statute of limitations,
 2 | all kinds of issues that can be raised by affirmative
 3 | defenses.
 4 |         Can't that later be litigated if you don't -- in
 5 | other words, I think there is a provision in the Federal
 6 | Rules, if you raise one defense by Rule 12(b)(6), you've got
 7 | to raise them all, you can't cherry pick.
 8 |         But if I had an order which gave -- permitted it,
 9 | that would protect you, wouldn't it?
10 |         MR. KIMREY:  Well, Your Honor, I think you can issue
11 | an order saying, we'll take briefing on the facial
12 | constitutional challenge --
13 |         THE COURT:  Right.
14 |         MR. KIMREY:  -- and all other defenses are preserved.
15 |         But I think that assuming -- let's say the Court
16 | finds that the statute is facially constitutional.
17 |         THE COURT:  Right.
18 |         MR. KIMREY:  And let's say the Court certifies it
19 | under 28 U.S.C. 1292 for decision by the circuit.
20 |         THE COURT:  Right, right.
21 |         MR. KIMREY:  And let's say the circuit agrees with
22 | Your Honor.
23 |         THE COURT:  Right.
24 |         MR. KIMREY:  And then there's a petition for cert to
25 | the US Supreme Court.

```
1              THE COURT:  Right.

2              MR. KIMREY:  And let's say that's denied.

3              THE COURT:  Right.

4              MR. KIMREY:  And it comes back down.

5         I think a lot of defendants are going to want to then

6  file either motions to dismiss or perhaps more appropriately

7  termed motions for judgment on the pleadings related to issues

8  beyond the facial constitutional challenge, such as personal

9  jurisdiction --

10             THE COURT:  Right.

11             MR. KIMREY:  -- perhaps improper joinder --

12             THE COURT:  Right.

13             MR. KIMREY:  -- perhaps Twombly/Iqbal arguments

14  about, you know, plausibility of pleading.  And they won't

15  feel comfortable with just asserting those things in their

16  answer --

17             THE COURT:  Right.

18             MR. KIMREY:  -- because they'll want to move on those

19  things because they'll be interested in having those issues

20  decided at the --

21             THE COURT:  So what we could say, then, and what

22  you're suggesting is we go forward with the facial challenge

23  and that any party that makes a facial challenge that can --

24  it's without prejudice to raising any other defense.  And I

25  might even say including arbitrability, once the
```

1  constitutionality issue has been resolved or until further

2  order of the Court.

3          MR. KIMREY:  Yes.

4          THE COURT:  We can do it that way.

5          MR. KIMREY:  Exactly, Your Honor.

6          THE COURT:  So you wouldn't have to file an answer.

7  Everything would just be held in abeyance until that issue is

8  decided.

9          MR. KIMREY:  Sure.  And then, you know, if it goes

10 all the way up to the Supreme Court, and the Supreme Court

11 doesn't grant cert or affirms the --

12         THE COURT:  Then we're back to square one, and we'll

13 be back here talking about what we do next.

14         MR. KIMREY:  But the facial challenge would be

15 resolved, which is kind of the elephant in the room.  I think

16 that's why you raised it.

17         THE COURT:  Yeah, yeah.

18         MR. KIMREY:  And we can move on to the other issues

19 that --

20         THE COURT:  And that wouldn't prevent challenges to

21 the constitutionality of the statue as applied.  It wouldn't

22 prevent --

23         MR. KIMREY:  -- by discovery.

24         THE COURT:  -- arbitration, personal jurisdiction,

25 whatever else anybody can think of they would want to raise.

```
 1            MR. KIMREY:  Right.  And they --

 2            THE COURT:  And also -- and obviously you'd have --

 3   maybe have some statutory defenses too.

 4            MR. KIMREY:  Sure.

 5            THE COURT:  But that would depend on the discovery

 6   and that kind of thing.

 7            MR. KIMREY:  Yes.

 8            THE COURT:  Yes.  Mr. Shaw?

 9            MR. SHAW:  Your Honor, the issue I have -- the issue

10   we have with that is that adds potentially a year of nothing

11   taking place and then a second round of motions.

12            Some of these cases that are in the buckets where

13   they're here, it's effectively a stay which could be up to a

14   year in this case.

15            MR. KIMREY:  Your Honor, it's not because of the

16   information you may require them to produce, which is the

17   names and the PII, the personally identifiable information.

18            THE COURT:  That they're going to do.  We're going to

19   put that in an order.

20            MR. KIMREY:  So that we're going to get the relief --

21   I mean, I don't think anybody here is wanting to, despite

22   Daniel's Law, publish the addresses and phone numbers of New

23   Jersey judges, police officers and prosecutors.  I think we

24   all collect -- again, I just represent two of the defendants.

25            THE COURT:  Right.
```

1          MR. KIMREY:  I speak for my defendants and I guess I

2   speculate as to the others, it's informed speculation, we all

3   want to suppress that information.

4          So the harm, the alleged harm that's occurring, is

5   going to be addressed right away with this production that you

6   may order, Your Honor.

7          THE COURT:  Right.

8          MR. KIMREY:  And on the assignments, I just want to

9   make a point that was mentioned to me during the break.

10          My understanding is that the terms and conditions

11   that Atlas has are not uniformly the assignment agreements

12   from the assignors.  So we ask in your order, Your Honor, that

13   you not only order that those terms and conditions be

14   produced, but if there are separate assignment agreements that

15   are beyond those terms and conditions, that those be produced

16   as well.

17          THE COURT:  Wouldn't it all be the same?  I mean,

18   wouldn't that be a part of --

19          MR. KIMREY:  I don't know.

20          THE COURT:  I don't know.

21          MR. KIMREY:  Somebody told me this, that --

22          THE COURT:  So you mean that after they sought the

23   information to be deleted and prior to the filing of this

24   lawsuit, there were assignments?

25          MR. KIMREY:  Right.  So somehow all of these police

1  officers and perhaps judges and law enforcement officials --

2          THE COURT:  Right.

3          MR. KIMREY:  -- assigned their rights under Daniel's

4  Law to Atlas to prosecute -- to pursue and prosecute on their

5  behalves.

6          Atlas has suggested that those assignments are

7  reflected in their standard terms and conditions.  So in other

8  words, it sounds to me like Atlas is suggesting that there is

9  a uniform assignment agreement that all of the assignors sign.

10         THE COURT:  I see.  Which is part of the terms and

11 conditions --

12         MR. KIMREY:  Right.

13         THE COURT:  Which is part of the terms --

14         MR. KIMREY:  I've been told that that is not the

15 case, that there are actually different forms of assignment

16 that may be in -- and you would know, obviously.

17         THE COURT:  Mr. Shaw, maybe you can --

18         MR. SHAW:  Yes, Your Honor.  Adam Shaw.  I can clear

19 it up.

20         There is a form of assignment that's different than

21 the terms of conditions.  And we can also give them an

22 exemplar of that.  They're all --

23         THE COURT:  All right.  Well, we'll include that too.

24 It will be the assignment form -- is that what it's called?

25         MR. PARIKH:  Your Honor -- I apologize.

```
 1              THE COURT:  State your name, please.

 2              MR. PARIKH:  Yes.  Rajiv Parikh.

 3              Judge, so the process -- you know, this is what I

 4    alluded to earlier.  Happy to just kind of make it very clear

 5    for everyone.

 6              Your Honor is 100 percent correct.  Once a request

 7    was put in and the defendants violated the timeline, then

 8    prior to filing of the lawsuit, an assignment was entered into

 9    between Atlas and the covered person who was assigning their

10    claims.

11              There are, you know, let's say --

12              THE COURT:  19,000.

13              MR. PARIKH:  -- 19,000 per defendant, Judge.

14              So if they want an example or want a couple of them,

15    we're happy to provide those to them.

16              But what we're really talking about here is the

17    defendants trying to get into merits discovery early on in the

18    case.

19              And what I will say, just on one point, not to

20    besmirch any counsel here, multiple counsel have come up here

21    and said they want to comply with Daniel's Law, but as I said

22    earlier, as we stand here today, there is a named plaintiff

23    who all of them know the name of whose information still

24    exists when you go online onto multiple of these defendants'

25    websites, so --
```

         1          THE COURT:  I'm not going to require all of the

         2    assignments, because -- at this point because that I don't

         3    think is relevant to the facial challenge to the statute,

         4    because you do have individual plaintiffs here.

         5          MR. KIMREY:  Your Honor, it's relevant -- I agree,

         6    Your Honor, it's not relevant to the facial challenges, but

         7    it's relevant to -- and I'm speaking in a vacuum because I

         8    haven't seen a motion to remand yet.

         9          THE COURT:  Right.

        10          MR. KIMREY:  But it could be relevant to the motion

        11    to remand.

        12          For instance, we have argued that Atlas's Delaware

        13    registration should be disregarded for purposes of traditional

        14    *Strawbridge v. Curtiss* diversity, because it's not the real

        15    party-in-interest in the case.  The assignors are the real

        16    parties-in-interest, the actual named plaintiffs.  And there

        17    is case law and there is a trend in the US recognizing this

        18    more and more.

        19          THE COURT:  Right.

        20          MR. KIMREY:  *Wright & Miller* addresses this trend, in

        21    fact, Your Honor --

        22          THE COURT:  Right.

        23          MR. KIMREY:  -- saying that if the assignee is not

        24    really the real party-in-interest -- and the term of art is

        25    "collusion."

1              THE COURT:  Right.

2              MR. KIMREY:  But it's not collusion as you think of

3    collusion.  That sounds worse than the actual concept.

4              THE COURT:  Right.

5              MR. KIMREY:  But if it's a collusive issue, then you

6    can disregard that Delaware citizenship, which matters to us,

7    Your Honor, because Whitepages and Hiya are both registered in

8    the state of Delaware as well.  So we've argued that you

9    disregard that citizenship.

10             These assignments are material because some of the

11   case law suggests that there are many factors that go into

12   whether you disregard the citizenship of the assignee.  One of

13   those factors -- and it's not a necessary factor, but it's a

14   factor that courts have considered -- is whether the

15   assignments are complete or partial, the theory being that if

16   the assignor holds on to an interest in what is being

17   assigned, then that diminishes the significance of the

18   citizenship of the assignee.  Because those people, those

19   assignors, those police officers, judges and prosecutors,

20   still have an interest.

21             Politico ran -- was it Politico?  Maybe it wasn't

22   Politico.  There was an article that ran recently about this

23   litigation in the press.  And it said -- I don't know how they

24   obtained this, but it said that plaintiffs' counsel is

25   operating under I think a third contingency, a third

1    contingency fee with respect to this case.

2           If that is the case, then -- and that would be

3    reflected in those assignments, right, perhaps, then that goes

4    to the issue of remand, because it shows that the assignors

5    maintain an interest in, you know, the corpus of the case, so

6    to speak.

7           So that's why the assignments are not material -- I

8    agree, subject to what everybody else here has to say --

9           THE COURT:  Right.

10          MR. KIMREY:  -- they're not material to the facial

11   challenge under the Constitution.

12          THE COURT:  I understand.

13          MR. KIMREY:  But they may be material to the remand

14   issue, depending on what they argue in their motion to remand.

15          THE COURT:  Well, why don't we this.  In terms of the

16   remand, we set a date for the remand motions.  Then everybody

17   will have an opportunity to look at them.  And we'll have a

18   status conference on that subject so you can then -- those who

19   are subject to the motion to remand, we can discuss whether or

20   not you should be entitled to discovery related to the

21   remands.

22          MR. KIMREY:  Yes, Your Honor.

23          THE COURT:  And depending on how that works out, you

24   get discovery, then you'll be permitted certain discovery and

25   then you'll file your brief in opposition thereafter.

1    So I think we can deal with that.  We can't deal with

2  it today, because we don't know what the remand motion is

3  going to say.

4         MR. KIMREY:  Right, right.

5         THE COURT:  So, now --

6         MR. SHAW:  Pardon me, Your Honor.  Adam Shaw.

7         Just on that score, if we could avoid that step, we

8  can give them an exemplar of the assignment and they could use

9  that to the extent that they need to use it.  So that way we

10  don't have to make the motion and then have a separate

11  conference, because our concern is to move it forward.

12         MR. KIMREY:  I appreciate that.

13         May I address counsel?

14         THE COURT:  Sure.

15         MR. KIMREY:  Is the assignment the same across all of

16  the --

17         MR. SHAW:  We'll give you exemplars of -- so that you

18  have the field covered.

19         MR. PARIKH:  They won't be the same, because clearly

20  it will be a different name of a person on there.  But if what

21  you're asking is for the form of the assignment, then we're

22  happy to produce that.

23         MR. KIMREY:  To the extent there are different forms,

24  you'll produce of an exemplar of each of the different forms?

25         MR. SHAW:  Yes.

```
 1            MR. STIO:  Your Honor?

 2            THE COURT:  Go ahead.

 3            MR. STIO:  Angelo Stio.

 4            I think to move this along, and I think what I'm

 5   hearing is facial challenge, they will give the list of names

 6   that will help reduce prejudice, exemplars of the assignment,

 7   but why are we going to go down the road of remand?  Let's

 8   stay everything, do the facial challenge.  The Court and the

 9   court's clerk focuses on that issue, gets a decision, before

10   we go down all these rabbit holes.

11            THE COURT:  I think we need to have the motions for

12   remand filed.  They can be done.  That doesn't mean we're

13   going to decide them.  But I think that's an important step.

14            MR. STIO:  I'm fine with that.

15            THE COURT:  The USC says -- so everybody knows what

16   they're talking about.  I think there's -- that we should do.

17   We should get those filed.  And the question then is whether

18   we should have responses to the motions to remand.

19            I won't necessarily decide it, but shouldn't we get

20   it ready to go?

21            MR. STIO:  What I'm saying is, Your Honor, is that --

22   I am happy with your approach of they file the motion to

23   remand, we look at it, we have a case management conference to

24   see if there's discovery.

25            But what I didn't want is to go down rabbit holes
```

*United States District Court*

```
 1   with the discovery on a motion for remand when the focus
 2   should be on the facial challenge, because that's the silver
 3   bullet.
 4             THE COURT:  I understand.  I'm thinking, though, how
 5   much discovery would you think would be contemplated on a
 6   motion to remand?
 7             MR. STIO:  I don't know.
 8             THE COURT:  And obviously, you haven't seen it.
 9             MR. STIO:  Yeah.
10             THE COURT:  But would it be extensive, do you think?
11             MR. STIO:  I don't think it would be extensive.  But
12   I like -- I'm fine with the approach of they file it, we look
13   at it, we have a case management conference.
14             THE COURT:  Let's do it that way.  That's what we'll
15   do.
16             MR. STIO:  Thank you, Your Honor.
17             THE COURT:  We'll have the motion to remand, then
18   we'll see where we are.
19             How soon -- I hope we can get these motions to remand
20   filed fairly --
21             MR. SHAW:  I think 21 days.  Is that fair, Your
22   Honor?
23             THE COURT:  What date?
24             MR. SHAW:  What date do we have for that?
25             MR. PARIKH:  We can do May 15th, Your Honor.  Does
```

```
 1   that make sense?  That's a couple weeks away.

 2          MR. SHAW:  May 15th?

 3          THE COURT:  Well, I have a criminal trial that starts

 4   the 10th of May, which is a Friday, and it may go the

 5   following week, and I'm going to be away around Memorial Day.

 6          I'm wondering if we can't -- whether we -- I know you

 7   have 37 of them, so --

 8          MR. SHAW:  Yeah.

 9          THE COURT:  Some are going to be different, aren't

10   they.

11          MR. SHAW:  Slightly different, but I believe they're

12   mostly the same.

13          THE COURT:  Do what?

14          MR. SHAW:  They're mostly the same from what we've

15   seen so far.

16          THE COURT:  Well --

17          MR. SHAW:  Are you asking to have it before your

18   criminal trial, Your Honor?

19          THE COURT:  Yes.  I'm just wondering whether we can

20   do it --

21          MR. SHAW:  That's the 10th?

22          THE COURT:  Yeah.

23          How about, we could do it by -- how about the 6th is

24   Monday.  How about the Friday before that, the 3rd of May?  Is

25   that doable?  May 3rd --
```

1          MR. SHAW:  Okay, Your Honor.  We'll endeavor to do

2     that.

3          THE COURT:  -- motions for remand should be filed.

4          And then I was hoping maybe that week to have another

5     status conference.

6          Maybe we can do it on the 7th of May.  And there may

7     be some other things we talk about.  We'll say 10:00 on the

8     7th of May we'll gather again.  And we can talk about whether

9     the remand -- or the briefing should occur on the remand

10    motion, whether there will be discovery or whether it will be

11    stayed until we deal with --

12         Now, on the facial challenge, thinking about a day

13    that we would -- maybe on the -- the parties can get together

14    and discuss a method for dealing with the facial challenge.

15         Now, we have 30 cases where we may have motions -- in

16    other words, we'd order a motion to dismiss based on a facial

17    challenge to be filed by a certain date.  The Court would then

18    say, all other defenses would be stayed, without prejudice and

19    all the rest of it, until further order of the Court.  And

20    then we'd set a briefing schedule and so forth.

21         Now, the question becomes, we have 30 briefs.  Now,

22    maybe the parties can get together and talk about that subject

23    as to how that's going to work out.

24         Also, we have the 37 defendants who are going to be

25    subject to your remand motions.  And they're also going to be

```
 1   interested in the issue of the facial challenge.  And maybe

 2   what we could do is allow them to -- I don't know, maybe if

 3   they want to file amicus briefs so they can get their views

 4   heard without waiving -- because your claim is we don't even

 5   have jurisdiction over them.

 6           MR. SHAW:  Correct.

 7           THE COURT:  So they would be arguing something in a

 8   case where you say there's no subject matter -- they say there

 9   is, you say there isn't.

10           MR. SHAW:  Right.

11           THE COURT:  But to decide all 37 of those cases

12   before -- assuming you lost it, then they would have a right

13   to brief it.  And I don't want to delay it for long.  I want

14   to get to the facial challenge but give them the right also to

15   have their say if they wish to do so.  Because even though it

16   may not be collateral estoppel or res judicata, I mean, we

17   have to be practical about it.

18           MR. SHAW:  You're right, Your Honor.  But if I could

19   take a step back to the bigger picture --

20           THE COURT:  You may.

21           MR. SHAW:  And, excuse me, it's Adam Shaw.

22           We're building in to that process a second round of

23   motions to dismiss.

24           THE COURT:  We really are, because --

25           MR. SHAW:  You're necessarily building it in.  And
```

1   that's -- and our concern is that that is a massive delay in

2   our ability to prosecute the cases.

3           THE COURT:  How do you suggest I deal with the

4   defenses in 67 cases?

5           MR. SHAW:  The same way that we're making motions

6   that you're going to potentially put on --

7           THE COURT:  How long do you think it's going to take

8   me to decide 67 -- multiple motions, arbitration --

9           MR. SHAW:  Perhaps the parties could just file them.

10          THE COURT:  Wait a minute.  Arbitration and -- so

11  you're saying they ought to file all their motions within a

12  certain time?

13          MR. SHAW:  Yes.

14          THE COURT:  And then just have the -- but further

15  action would be stayed except for the issue of facial

16  challenge to the constitutionality?

17          MR. SHAW:  Right.  I mean, a lot of times, you know,

18  in these cases, whether it's an MDL or large coordination,

19  sometimes you have the parties file their briefs and at least

20  get it fully briefed, even if Your Honor is only dealing with

21  one of those briefs or one of the issues in those briefs.

22          Also, as we've heard, I mean, they wrote a letter

23  saying that there should be coordination and that they're

24  willing to coordinate.

25          I think even though it's 37 people, I think you'll

 1   find much fewer issues, different issues, raised.  And with

 2   the goal of having the ability to move it forward, it may be

 3   best to require those people who are in the bucket that are

 4   here to file their briefs on whatever defenses that they could

 5   raise, and then the facial part of it can go forward.  The

 6   other parts could be there.  It would be a burden on us that

 7   we can respond to it.

 8        Hopefully they could be coordinated in the sense that

 9   they're be smaller, and then Your Honor could at least have

10   them on a pile.

11        THE COURT:  Of course the problem with that is, let's

12   assume they filed all their motions and that I would only

13   focus on the facial constitutionality of the statute.  We

14   wouldn't get around to fully briefing it for many months

15   maybe.

16        And then, of course, there's always changes in the

17   law.  There are different, more -- new decisions come out.

18   And then everybody will be asking for supplemental briefing.

19   I mean, that's inevitable.  Then --

20        MR. SHAW:  Well, the flip -- pardon me, Your Honor.

21        The flip side, though, is these counsel saying, well,

22   once you give us the list, everything is fine.  We're going to

23   take care of protecting interests.

24        THE COURT:  No, I'm not saying --

25        MR. SHAW:  They said that.

1       But that's what's the burden is on us, that we're not

2  able to prosecute our case for the year, whatever amount of

3  time it takes, let's say six, nine months, for that

4  constitutional challenge to weave its way through the courts

5  and then come back and essentially starting at square one

6  again on all the other defenses.

7       I'm suggesting that there should be a path that

8  doesn't do that, that only benefits the defendants in allowing

9  all of their motions to be serial, to have come here and made

10  a choice to try to remove, and then to wait and see how things

11  happen on other issues and then come back again.  It's

12  multiple motions to dismiss.  It's built into the process that

13  it's a delay and prevents us from prosecuting.

14       THE COURT:  Any defense counsel wish to speak to

15  that?  Yeah.

16       MR. KIMREY:  Blaine Kimrey again.

17       THE COURT:  Yes.

18       MR. KIMREY:  They haven't moved for injunctive

19  relief, Your Honor.

20       THE COURT:  They what?

21       MR. KIMREY:  They haven't moved for injunctive

22  relief.  I'm not asking that they do so.  They could, you

23  know, if they were seeking to enforce the statute and they're

24  claiming that we're not abiding.  And I'm not aware of

25  Whitepages and Hiya not abiding.  They haven't given me any

1  evidence of that.  They haven't moved for injunctive relief.

2          THE COURT:  Right.

3          MR. KIMREY:  So the claim about delay rings hollow if

4  the issue is getting this information suppressed and it

5  allegedly hasn't been suppressed, because, again, they haven't

6  moved for injunctive relief.

7          And that they're the ones who filed 100-some-odd

8  cases.  You can't file that many cases at once, essentially,

9  and expect for things to move quickly, particularly when you

10 haven't moved for injunctive relief.

11         And what the Court is proposing, or at least what I

12 hear what I think the Court is proposing, is an efficient way

13 to approach this situation.  And the constitutional -- the

14 facial constitutional challenge is clearly potentially case

15 dispositive.  Cases dispositive.

16         THE COURT:  All right.  Yes?

17         MR. MAO:  I'm sorry, Your Honor.  Mark Mao for the

18 plaintiffs.

19         So, Your Honor, with regard to the exigency issue

20 that opposing counsel just raised, one of the reasons why

21 we've been proceeding as we have is, first of all, Atlas is

22 not that large of a company.  And Atlas has been engaging in

23 meet and confers and attempts to resolve the compliance issue

24 with every defendant that's expressed an interest to go into

25 compliance.

1          In terms of an injunction not being filed, it's

2     because the vast majority of these defendants have expressed,

3     just as opposing counsel said, that they want to comply, they

4     understand the importance of compliance, and they're going to

5     try to do so.

6          The problem is, every time they've made that

7     representation, the vast majority of the time we come back and

8     we look and we test the systems again to see whether or not

9     these companies are truly suppressing or deleting the

10    information, we continue to find that the information either

11    gets repopulated or they were never removed.

12         So to say that, you know, plaintiffs have not been

13    diligent in terms of pursuing an injunctive relief, it's also

14    partially on the basis that defendants have continued to

15    express and assure plaintiffs that they be going into

16    compliance.  It's a little disingenuous, Your Honor.  And I

17    think one of the problems here is if these defendants are

18    going to remove and put the case in front of Your Honor, you

19    can't both say, well, we want to move forward with the common

20    issues, figure out from the common issues whether or not we,

21    some of the defendants, want to subscribe to what the Court

22    has ultimately found and then decide at that point whether or

23    not we want to try to remand.

24         For the plaintiffs there is exigency, because we want

25    to make sure the covered persons are actually taken care of

1  and protected, as defendants have acknowledged.

2         If defendants do not want to subscribe to the

3  jurisdiction of this Court, let's say you're group one, right,

4  or there's --

5         THE COURT:  They do want to subscribe to the

6  jurisdiction of the Court.  You're the ones who don't want to

7  subscribe.

8         MR. MAO:  Well, Your Honor, to be clear, to be clear,

9  the issue of whether or not their motion was valid, right,

10  versus whether or not we after discussing internally may

11  ultimately seek to remand, that's a right in which we're

12  reserving.

13         THE COURT:  No.  I understand.  And theoretically, if

14  we do not have subject matter jurisdiction, you don't have any

15  choice.

16         MR. MAO:  Right, Your Honor.  And that was one of the

17  things which Mr. Shaw is trying to address, right, which is to

18  just get ahead of the issue of, we don't want Your Honor

19  making decisions and findings which ultimately somebody there

20  is going to say well, Your Honor, you don't have jurisdiction

21  over that issue anyways.  We are trying to avoid that.

22         But to suggest that there's no exigency, I would like

23  to think that everybody in this room, as defendants have

24  represented, understand that there is exigency here.

25         So part of the issue here is, how do we -- how do we

1    get there?  And I agree with my colleague, Mr. Shaw, not

2    because we're at the same firm, but because of the fact that

3    one of the reasons why we're saying that for the ones that

4    aren't on this Track A or Track 1, as Your Honor had

5    identified, if they're not going to comply, we should be

6    entitled to move forward.

7           THE COURT:  All right.  I think what we're going --

8    yeah, go ahead.

9           MR. LEE:  Your Honor, just --

10          THE COURT:  State your name.

11          MR. LEE:  James Lee, Boies Schiller for the

12   plaintiffs, Judge.

13          THE COURT:  Yes.

14          MR. LEE:  There's just one logistical issue I wanted

15   to make you aware of.

16          THE COURT:  Go ahead.

17          MR. LEE:  We've been talking about this group of 67

18   cases, and one of them is not like the others.  The one that's

19   not like the others, the party in that case, the defendant in

20   that case is LexisNexis.  And we filed the Daniel's Law

21   complaint against LexisNexis alleging very similar things as

22   the complaints you've seen here.  That's in New Jersey state

23   court.

24          But LexisNexis did something that no one else did.

25   What they did in response was retaliate against the covered

1  persons and froze their credit and reported identity theft,

2  which means that the covered persons that sent the takedown

3  request to LexisNexis, any time they want to engage a service

4  that requires a credit check, they can't have it.  They can't

5  buy a car.  They can't rent an apartment.  And so I personally

6  sent a letter to LexisNexis about this.  They ignored it.

7           THE COURT:  Now, who are you representing?

8           MR. LEE:  I represent Atlas and the plaintiffs.

9           THE COURT:  All right.  I understand.

10          MR. LEE:  So we were forced to file a second case.

11 It's a class action against LexisNexis.  It's about the

12 retaliation of freezing their credit pursuant to the New

13 Jersey Identity Theft Protection Act.

14          So it's not a Daniel's Law case.  That's the case --

15          THE COURT:  And that's pending where?

16          MR. LEE:  That's pending before you now.

17          So that got -- that case, not the Daniel's Law case.

18 That still sits in New Jersey state court.  That case, that

19 class action, got removed here and transferred to you, and

20 now, I assume --

21          THE COURT:  When did that happen?  That's just

22 recently?

23          MR. LEE:  Just recently, Judge.  So it's not part of

24 the caption in your order.

25          THE COURT:  Okay.

```
 1          MR. LEE:  And I think they removed it after.  I'm not

 2   really sure they did it timely either.  But I just wanted you

 3   to be aware that that case sits here, because we're talking

 4   about ordering things and ordering things in the Daniel's Law

 5   cases.

 6          THE COURT:  Right.

 7          MR. LEE:  And I understand your position on that.

 8   But all I'm saying is the class action is different.

 9          THE COURT:  Okay.

10          MR. LEE:  And that can't be delayed or set to the

11   side while we wait for some of these facial issues on Daniel's

12   Law to be resolved, because this is legitimately about

13   people's ability to live their lives.

14          THE COURT:  Okay.  Well, I haven't looked at that

15   complaint.

16          What's the number of that case?

17          MR. LEE:  That number is 04566, Judge.

18          THE COURT:  056 -- it's 24, you mean?

19          MR. LEE:  04566.

20          THE COURT:  04566.  Well, that maybe we should also

21   tee up at the conference on the 7th --

22          MR. LEE:  Certainly.

23          THE COURT:  -- after I have had a chance to look it.

24   And you'll be here, I assume, and we can talk about that.

25          MR. LEE:  Thanks, Judge.
```

*United States District Court*

```
 1              THE COURT:  All right.  Now, wait a minute.

 2              MR. ROONEY:  Your Honor, can I --

 3              THE COURT:  Sure.  Absolutely.

 4         Please give us your name again.

 5              MR. ROONEY:  Gavin Rooney from Lowenstein Sandler.  I

 6    represent LexisNexis on that case that counsel just alerted

 7    Your Honor to.

 8              THE COURT:  Go ahead.  Right.

 9              MR. ROONEY:  We have a very different view of the

10    merits of the case.  From our perspective, we did exactly what

11    these covered persons and Atlas asked us to do, which was to

12    redact and remove names and addresses from information that's

13    given to others.

14         We're in the business of providing credit reports, so

15    the way you do that is you impose a freeze on a credit report.

16    And if that's not what Atlas and the covered persons wanted,

17    well, they should have thought this through before they made

18    the request.

19         So in terms of the merits of the case, we would be

20    prepared to file a motion to dismiss, and we would certainly

21    be willing to discuss that with Your Honor on the 7th after

22    you've had a chance to look at the complaint, since the

23    complaint is not the same pattern complaint as you see with

24    the other cases.

25              THE COURT:  I understand.
```

```
 1          MR. ROONEY:  Thank you.

 2          THE COURT:  All right.  Good morning.  Or good

 3  afternoon.

 4          MR. STICHEL:  Your Honor, Mark Stichel, and I

 5  represent eMerges in case 4434.  And I just come with a

 6  housekeeping matter.

 7          We come to the beginning of the hearing where you

 8  mentioned pro hac vice motions.

 9          THE COURT:  Yes.

10          MR. STICHEL:  I know one has been filed on my behalf.

11  There are others that have been filed.  And we've received an

12  automatic message from the clerk's office saying that it will

13  be heard on May 20, 2024.

14          So the question is, is there any way we can expedite

15  the pro hac vice motions?

16          THE COURT:  I don't -- look, file your motion.  If

17  it's in order, I sign them.

18          MR. STICHEL:  It's been filed already, Your Honor.

19          THE COURT:  What case number again?

20          MR. STICHEL:  It is 4434.

21          THE COURT:  And it's actually a motion, not a notice

22  of motion?

23          MR. STICHEL:  I'll have to check because New Jersey

24  counsel filed it.

25          THE COURT:  If it's a notice of motion, it won't be
```

1    signed.

2         MR. STICHEL:  Okay.  Can I refile it as a motion

3    then?

4         THE COURT:  Absolutely.

5         MR. STICHEL:  Okay.  Thank you, Your Honor.

6         THE COURT:  And be sure to pay your $250.

7         MR. STICHEL:  Okay.

8         MR. PARIKH:  Your Honor, just for the record -- Rajiv

9    Parikh for the plaintiffs -- we will consent to all pro hac

10    vice motions, just so --

11         THE COURT:  I assumed so.

12         MR. PARIKH:  Thank you, Judge.

13         MS. PURCARO:  Thank you, Your Honor.  Kelly Purcaro,

14    Greenspoon Marder, another housekeeping item.

15         It sounds like we're going to be getting the

16    compliance list.  And I just wanted to make sure --

17         THE COURT:  We're going to call it the assignment

18    list.

19         MS. PURCARO:  The assignment list, the list of

20    covered people.

21         I just wanted to make certain in the order or

22    agreement on the record that we are able as counsel to share

23    those lists with our clients for compliance.  And I know that

24    sounds silly, but I want to clarify --

25         THE COURT:  I think you should be able to do that.

1    Yes, absolutely.

2              MS. PURCARO:  -- because that was the issue we ran

3    into previously.

4              THE COURT:  Absolutely.  All right.

5              MS. PURCARO:  Okay.  Thank you.

6              MR. SHAW:  May I say one thing, Your Honor?  Pardon

7    me.

8              THE COURT:  Yes, go ahead.

9              MR. SHAW:  Thank you.  Excuse me.  Adam Shaw.

10             To the extent that you're -- it seems that at least

11   one thing we're all agreeing on is moving forward with at

12   least the facial challenge, and I would suggest that the

13   defendants make that motion by May 3rd, the same date that we

14   make the remand motion.

15             THE COURT:  Well, all right, let's talk about that,

16   because I think I do want to go forward with that.

17             Whether counsel needs to -- defense counsel needs to

18   get together -- there would have to be a motion in each of the

19   cases, wouldn't there?

20             I don't know -- now, in terms of briefing it, you may

21   work out some way of filing a consolidated brief.

22             MR. STIO:  Your Honor, we can't do it by May 3rd.  We

23   have to meet.

24             We will make a good faith effort and come up with a

25   plan on May 7th for the Court on how we can achieve

1  efficiencies with consolidated briefing.  But to ask for that

2  before May 3rd is not --

3            THE COURT:  I understand.

4            MR. STIO:  Especially on that issue.

5            THE COURT:  All right.  Here's what -- I'm going to

6  enter an order, the next status conference, 10:00, May 7th.

7            Plaintiffs are going to file their motions to remand

8  May 3rd so that at our next conference we'll talk about what

9  we do about the remand motions, whether there's discovery,

10  whether there should be briefing thereafter by the defendants

11  in opposition, or whether we just stay the remand once the

12  motion is filed.  Let's give some thought to that.  And by

13  that time you'll have a chance to have seen the remand motions

14  and will be in a better position to talk about them.

15            My view now is we will go forward with the motions of

16  facially challenging Daniel's Law.  What counsel need to do is

17  to sit down and talk about the procedure for that, whether

18  we're going to have multiple briefs, multiple -- or whether

19  there's some way of having some sort of a consolidated

20  briefing on that.

21            So we'll discuss that on May 7th.  I won't enter an

22  order specifically setting a date for those briefs yet because

23  I think it's important for counsel to talk about how it's

24  going to be done.

25            Also, we have the issue of the 37 defendants who are

1   going to be subject to remand motions, because subject matter

2   jurisdiction has been challenged as to those 37, so that the

3   Court would be going forward with the facial challenge only as

4   to the cases where the Court has subject matter jurisdiction.

5          But I recognize as a practical matter that the

6   defendants in the 37 cases have an interest in what happens

7   and how those 37 defendants would be able to have their voices

8   heard.  Let's put it that way.  Maybe they wouldn't.  Or maybe

9   they could file an amicus brief so they can at least -- and it

10  would be without prejudice to their rights, obviously, on --

11  they believe they do have subject matter jurisdiction.

12         But on May 7th, we talk about a briefing schedule for

13  the -- as I said, the subject -- or the facial challenge

14  matter and deadlines and so forth.  And also any order

15  requiring motions to dismiss on the facial challenge issue

16  would have some provision that it would be without prejudice

17  to the rights of those defendants to at a later date file

18  other motions to dismiss or any other -- raise any other

19  defenses that they may have.

20         Also, we currently have a stay that's pending that

21  ends today in terms of answers and so forth.  It seems to me

22  that it makes sense at this point to continue the stay until

23  May 7th, through May 7th, so people aren't going to have to be

24  filing -- you know, the deadlines for filing motions and all

25  that sort of thing, because it's just going to wreak havoc if

1  we don't have that deadline.

2          Is there anything else we need to do today?

3          Yes, go ahead.

4          MR. McGEE:  Yes, Your Honor.  Ryan McGee for the

5  plaintiffs.

6          THE COURT:  Yes.

7          MR. McGEE:  I just wanted to clarify on the stay,

8  there's that motion to dismiss from Delvepoint, which is an

9  as-applied constitutional challenge.

10          Just understanding that that is going to stay the

11  response from the plaintiffs?

12          THE COURT:  Everything will be stayed --

13          MR. McGEE:  Okay.

14          THE COURT:  -- except your pro hac vice motions,

15  obviously.

16          MR. McGEE:  Of course.  We're getting those on file,

17  but I wanted to clarify that one thing.

18          THE COURT:  All right.  We haven't heard from this

19  fellow.

20          MR. LEWIN:  Your Honor, Ross Lewin for Epson Data

21  Management and the other defendants in 24-4168.

22          THE COURT:  Yes.

23          MR. LEWIN:  A very minor housekeeping point.

24          THE COURT:  Sure.

25          MR. LEWIN:  At the status conference and in

1  subsequent proceedings, is it acceptable to Your Honor that

2  pro hac vice counsel appear without local counsel present?

3          THE COURT:  I don't have any objection to that,

4  unless anybody else does.  No, that's fine.

5          MR. LEWIN:  Thank you.

6          THE COURT:  Yes.  Good afternoon.

7          MR. STALTARI:  Your Honor, my name is Anthony

8  Staltari, S-T-A-L-T-A-R-I.  I'm from Quinn Emanuel, and we

9  represent defendant Yardi in 24-cv-4103.

10          I just have a quick question about the pro hacs

11  again.  I'm sorry to belabor the point.

12          THE COURT:  It's all right.

13          MR. STALTARI:  So when you opened this morning, you

14  said you wanted a motion, not a notice of motion.

15          THE COURT:  Yes.

16          MR. STALTARI:  Unfortunately, the clerk's office

17  requires a notice of motion and will send you a rejection

18  notice --

19          THE COURT:  Don't worry about it.  File a motion.

20          MR. STALTARI:  I understand.  But I've been on the

21  receiving end of getting yelled at before.

22          THE COURT:  If you have an order which doesn't use

23  the word "proposed order" --

24          MR. STALTARI:  Got you.

25          THE COURT:  -- I will sign it.  And I've done many of

1    those, and they've been filed by the clerk's office.

2         MR. STALTARI:  Understood.  Understood.  Thank you,

3    Your Honor.

4         MR. PARIKH:  Your Honor, Rajiv Parikh for the

5    plaintiffs.

6         THE COURT:  Yes.

7         MR. PARIKH:  First, thank you for your indulgence

8    today with everyone.  I think it's very much appreciated, and

9    I think this was a very productive conference.

10        THE COURT:  I enjoyed the company of all of you.

11        MR. PARIKH:  Thank you.  So just two points, Judge,

12   with respect to the -- I guess what we're going to call the

13   covered persons list that plaintiffs will provide to the

14   defendants.

15        THE COURT:  Right.  So we're going to call it covered

16   persons list?  We'll do it that way.  That's a good phrase.

17        MR. PARIKH:  I hope that's not offensive.

18        THE COURT:  Everybody agreeable to that, the covered

19   persons list?

20        MR. PARIKH:  So with respect to that list, Your

21   Honor, I would like a representation or a confirmation from

22   defendants, I would say within seven days, perhaps, if that's

23   reasonable, that once they get the list, that they can confirm

24   their clients in fact are going to suppress the information.

25   And that way we can put that behind us.

1          So I would ask the Court whether that's something the

2     Court would be willing to instruct to the defendants.

3          THE COURT:  I think we're getting into the weeds on

4     that.  I think we'll just give the information and -- you

5     know, if the law is constitutional, their other defenses are

6     rejected, it would be in their best interest to do it.  Now,

7     if the statute is unconstitutional, they don't have to worry

8     about it.

9          MR. PARIKH:  Understood.

10         THE COURT:  So I think you might try to work out

11    something informally with them, but I don't think I ought to

12    get into that kind of detail at this point.

13         MR. PARIKH:  Okay.  Happy to do that.  Thank you,

14    Judge.

15         The second just housekeeping question, May 7th in

16    person here in Camden?

17         THE COURT:  That's the place.

18         MR. PARIKH:  Great.  Thank you, Judge.

19         THE COURT:  I think if this -- I think it will be in

20    this courtroom, but I'll obviously have to check with the

21    powers that be here that this courtroom will be available.

22    But if it isn't, we'll find another courtroom somewhere in the

23    courthouse.  So we'll put it in our order.

24         MR. PARIKH:  Thank you, Judge.

25         THE COURT:  Anything further today?

1          MR. STIO:  Nothing from defendants.

2          THE COURT:  Thank you all very much.

3          MR. SHAW:  Thank you.

4          THE DEPUTY CLERK:  All rise.

5          (Proceedings concluded at 12:19 p.m.)

6                              -  -  -

7          I certify that the foregoing is a correct transcript

8     from the record of proceedings in the above-entitled matter.

9

10

11     */S/ Ann Marie Mitchell*          *20th day of April, 2024*

12     *Court Reporter/Transcriber*     *Date*

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*

**$**

**$250** [2] - 17:1, 111:6

**/**

**/S** [1] - 119:11

**0**

**04566** [3] - 108:17, 108:19, 108:20
**0477** [1] - 21:16
**056** [1] - 108:18

**1**

**1** [2] - 39:14, 106:4
**100** [3] - 20:6, 55:25, 90:6
**100-some-odd** [1] - 103:7
**10:00** [2] - 98:7, 113:6
**10th** [2] - 97:4, 97:21
**11:16** [1] - 78:3
**11:29** [1] - 78:3
**12(b)(6** [4] - 25:10, 25:22, 83:23, 84:6
**12(b)(6)** [1] - 76:15
**1292** [4] - 30:3, 30:20, 32:16, 84:19
**12:19** [1] - 119:5
**13-year-old** [1] - 57:8
**14-year-old** [1] - 57:8
**145** [1] - 18:16
**15-minute** [1] - 77:24
**150** [1] - 17:2
**15th** [2] - 96:25, 97:2
**16,000** [1] - 54:9
**19,000** [17] - 20:8, 22:13, 23:7, 27:4, 41:2, 46:11, 46:14, 47:2, 47:7, 52:1, 53:22, 53:24, 54:9, 80:3, 80:15, 90:12, 90:13

**2**

**20** [2] - 53:17, 110:13
**20,000** [3] - 43:19, 54:3, 80:3
**200** [3] - 23:19, 38:14, 55:25
**2024** [3] - 39:14, 110:13, 119:11
**20th** [1] - 119:11
**21** [2] - 69:11, 96:21
**24** [1] - 108:18
**24-4168** [1] - 115:21
**24-cv-3998** [1] - 31:17
**24-cv-4000** [1] - 31:17

**24-cv-4037** [1] - 33:15
**24-cv-4103** [1] - 116:9
**26(a)(1** [1] - 77:16
**28** [1] - 84:19

**3**

**30** [26] - 19:3, 19:12, 20:25, 21:3, 21:17, 22:1, 23:22, 24:3, 24:12, 25:6, 25:15, 25:20, 26:7, 29:2, 33:16, 33:18, 35:14, 42:16, 47:16, 49:3, 58:12, 58:15, 62:2, 70:7, 98:15, 98:21
**300** [1] - 55:25
**37** [15] - 22:1, 24:6, 25:18, 28:19, 33:17, 42:16, 49:4, 69:5, 69:21, 97:7, 98:24, 99:11, 100:25, 113:25, 114:2, 114:6, 114:7
**3rd** [6] - 97:24, 97:25, 112:13, 122:22, 113:2, 113:8

**4**

**400** [2] - 56:12, 56:13
**4176** [1] - 41:14
**4178** [1] - 47:15
**4324** [1] - 47:14
**4389** [1] - 35:11
**4392** [1] - 48:19
**4434** [2] - 110:5, 110:20

**5**

**5.3** [1] - 60:12
**50** [1] - 19:25
**500** [4] - 55:25, 56:5, 56:8, 56:19

**6**

**60** [1] - 65:13
**67** [17] - 16:8, 18:17, 19:2, 20:25, 25:10, 26:8, 29:15, 31:1, 53:25, 55:1, 55:3, 57:16, 59:7, 100:4, 100:8, 106:17
**6th** [1] - 97:23

**7**

**7th** [11] - 98:6, 98:8, 108:21, 109:21, 112:25, 113:6,

113:21, 114:12, 114:23, 118:15

**8**

**80** [1] - 18:20

**9**

**9:58** [1] - 16:2

**A**

**a.m** [3] - 16:2, 78:3
**abeyance** [1] - 86:7
**abiding** [2] - 102:24, 102:25
**ability** [7] - 26:11, 27:19, 37:9, 40:10, 100:2, 101:2, 108:13
**able** [15] - 37:25, 40:12, 49:8, 49:10, 51:9, 55:21, 57:12, 58:2, 58:13, 61:3, 70:1, 102:2, 111:22, 111:25, 114:7
**above-entitled** [1] - 119:8
**abrogated** [1] - 27:4
**absent** [1] - 17:15
**absolutely** [16] - 35:17, 52:2, 55:15, 60:14, 60:20, 61:16, 61:19, 62:23, 63:1, 63:15, 67:2, 75:17, 109:3, 111:4, 112:1, 112:4
**accept** [1] - 28:9
**acceptable** [1] - 116:1
**according** [2] - 26:17, 68:7
**account** [3] - 53:9, 53:10
**achieve** [1] - 112:25
**acknowledged** [1] - 105:1
**ACLU** [2] - 32:20, 64:1
**Act** [1] - 107:13
**action** [7] - 20:16, 20:17, 20:18, 100:15, 107:11, 107:19, 108:8
**actions** [5] - 22:16, 27:2, 27:3, 80:12
**actual** [2] - 91:16, 92:3
**Adam** [7] - 18:12, 50:17, 67:12, 89:18, 94:6, 99:21, 112:9
**address** [16] - 22:18, 33:24, 34:2, 34:3, 34:8, 35:20, 41:25,

55:18, 57:2, 57:3, 65:15, 65:17, 80:17, 94:13, 105:17
**addressed** [1] - 88:5
**addresses** [6] - 41:20, 44:22, 81:22, 87:22, 91:20, 109:12
**adds** [1] - 87:10
**admission** [1] - 40:17
**admitted** [1] - 16:19
**advise** [2] - 17:15, 80:22
**advised** [1] - 64:10
**affirms** [1] - 86:11
**afternoon** [2] - 110:3, 116:6
**AG** [1] - 20:14
**agenda** [1] - 18:1
**agree** [11] - 20:5, 21:17, 31:23, 35:16, 40:8, 41:15, 49:11, 83:14, 91:5, 93:8, 106:1
**agreeable** [1] - 117:18
**agreed** [3] - 79:23, 79:24, 80:25
**agreeing** [1] - 112:11
**agreement** [8] - 25:12, 58:20, 60:5, 60:9, 71:19, 79:18, 89:9, 111:22
**agreements** [3] - 71:17, 88:11, 88:14
**agrees** [2] - 62:12, 84:21
**ahead** [14] - 50:6, 50:7, 52:25, 66:21, 66:24, 70:11, 71:8, 95:2, 105:18, 106:8, 106:16, 109:8, 112:8, 115:3
**alerted** [1] - 109:6
**allegations** [1] - 72:13
**allege** [1] - 23:6
**alleged** [3] - 16:8, 73:21, 88:4
**allegedly** [1] - 103:5
**alleging** [1] - 106:21
**allow** [4] - 23:8, 45:20, 77:22, 99:2
**allowing** [2] - 76:19, 102:8
**allows** [1] - 26:12
**alluded** [2] - 45:15, 90:4
**almost** [1] - 69:9
**altogether** [1] - 34:20
**Amendment** [4] - 29:24, 44:8, 44:9, 79:1

**amicus** [2] - 99:3, 114:9
**amount** [4] - 17:1, 58:13, 82:9, 102:2
**Angelo** [2] - 21:11, 95:3
**Ann** [1] - 119:11
**answer** [13] - 24:16, 53:3, 56:23, 70:11, 82:18, 82:25, 83:1, 83:10, 83:19, 83:20, 83:22, 85:16, 86:6
**answers** [1] - 114:21
**Anthony** [1] - 116:7
**anticipate** [1] - 35:24
**anyway** [1] - 34:20
**anyways** [1] - 105:21
**apartment** [1] - 107:5
**apologize** [1] - 89:25
**apparatus** [1] - 81:16
**Appeals** [5] - 16:12, 30:4, 30:21, 32:16, 32:21
**appear** [1] - 116:2
**appellate** [2] - 64:3, 64:13
**Append** [1] - 47:14
**Appendix** [1] - 59:10
**applicability** [2] - 70:12, 70:13
**applied** [12] - 32:4, 43:12, 43:15, 49:12, 50:13, 68:8, 68:11, 70:16, 75:14, 79:12, 86:21, 115:9
**applies** [2] - 78:19, 78:20
**apply** [3] - 43:6, 44:24, 45:1
**appreciate** [1] - 94:12
**appreciated** [1] - 117:8
**approach** [6] - 34:22, 40:9, 75:18, 95:22, 96:12, 103:13
**appropriate** [1] - 58:13
**appropriately** [1] - 85:6
**April** [1] - 119:11
**arbitrability** [21] - 22:25, 26:14, 27:18, 28:1, 28:2, 28:18, 29:1, 29:5, 30:7, 79:2, 79:4, 79:16, 80:11, 82:2, 82:14, 83:7, 83:9, 83:13, 83:14, 83:20, 85:25
**arbitrate** [1] - 80:25
**arbitration** [13] -

28:10, 71:5, 71:10, 71:15, 71:17, 71:19, 78:11, 78:14, 79:18, 79:24, 86:24, 100:8, 100:10
**argue** [1] - 93:14
**argued** [2] - 91:12, 92:8
**arguing** [1] - 99:7
**argument** [5] - 19:18, 42:2, 45:4, 49:7, 49:10
**arguments** [10] - 19:17, 19:19, 27:20, 34:7, 49:8, 50:11, 66:8, 70:23, 85:13
**art** [1] - 91:24
**article** [1] - 92:22
**as-applied** [9] - 43:12, 49:12, 50:13, 68:8, 68:11, 70:16, 75:14, 79:12, 115:9
**aside** [1] - 52:18
**assert** [2] - 22:14, 61:12, 83:9
**asserting** [1] - 85:15
**assigned** [4] - 17:5, 18:18, 89:3, 92:17
**assignee** [3] - 91:23, 92:12, 92:18
**assignees** [1] - 41:3
**assigning** [1] - 90:9
**assignment** [18] - 23:10, 23:14, 35:18, 65:4, 65:7, 88:11, 88:14, 89:9, 89:15, 89:20, 89:24, 90:8, 94:8, 94:15, 94:21, 95:6, 111:17, 111:19
**assignments** [14] - 20:21, 22:13, 22:14, 23:6, 62:7, 62:8, 88:8, 88:24, 89:6, 91:2, 92:10, 92:15, 93:3, 93:7
**assignor** [1] - 92:16
**assignors** [7] - 41:5, 80:3, 88:12, 89:9, 91:15, 92:19, 93:4
**assume** [9] - 41:1, 41:2, 51:12, 64:16, 80:16, 83:22, 101:12, 107:20, 108:24
**assumed** [2] - 79:23, 111:11
**assuming** [4] - 63:8, 73:1, 84:15, 99:12
**assure** [1] - 104:15
**Atlas** [31] - 20:22,

45:17, 46:6, 46:19, 46:21, 46:24, 52:8, 53:8, 55:14, 55:16, 55:17, 55:18, 55:20, 55:24, 57:11, 61:4, 61:10, 67:1, 80:19, 81:16, 88:11, 89:4, 89:6, 89:8, 90:9, 103:21, 103:22, 107:8, 109:11, 109:16
**atlas** [1] - 38:25
**Atlas's** [8] - 22:16, 47:5, 49:14, 54:6, 56:5, 61:3, 62:11, 91:12
**atlasmail.com** [1] - 22:18
**attach** [1] - 16:19
**attack** [3] - 38:16, 39:1, 39:16
**attacks** [1] - 61:6
**attempt** [1] - 65:22
**attempting** [3] - 34:10, 34:18, 37:20
**attempts** [1] - 103:23
**attention** [2] - 23:1, 34:17
**attorney** [1] - 35:10
**attorneys** [3] - 17:9, 62:17, 67:19
**attorneys'** [1] - 59:13
**Austin** [1] - 48:18
**automatic** [1] - 110:12
**automatically** [1] - 17:8
**available** [4] - 41:2, 44:15, 80:18, 118:21
**avoid** [9] - 17:11, 19:16, 19:23, 47:20, 48:6, 79:5, 80:15, 94:7, 105:21
**avoidance** [1] - 43:7
**aware** [5] - 24:10, 33:2, 102:24, 106:15, 108:3

**B**

**background** [1] - 49:9
**bad** [1] - 44:21
**ball** [3] - 27:11, 59:3, 74:4
**bare** [1] - 45:9
**BARTLE** [1] - 16:2
**based** [2] - 83:19, 98:16
**basic** [7] - 73:25, 75:6, 77:8, 77:9, 77:11, 77:16

**basis** [6] - 22:13, 44:10, 58:8, 72:12, 75:5, 104:14
**bear** [1] - 23:4
**becomes** [1] - 98:21
**begin** [1] - 48:20
**beginning** [3] - 26:12, 59:16, 110:7
**behalf** [7] - 31:1, 31:18, 31:21, 47:13, 52:20, 66:2, 110:10
**behalves** [1] - 89:5
**behind** [2] - 27:3, 117:25
**belabor** [1] - 116:11
**benefit** [2] - 17:18, 40:10
**benefits** [1] - 102:8
**besmirch** [1] - 90:20
**best** [6] - 22:8, 26:3, 37:22, 40:20, 101:3, 118:6
**better** [4] - 17:12, 44:10, 61:3, 113:14
**between** [6] - 19:13, 46:24, 54:9, 71:19, 79:18, 90:9
**beyond** [3] - 45:10, 85:8, 88:15
**bifurcate** [1] - 45:20
**bigger** [1] - 99:19
**bingo** [2] - 79:21
**bit** [7] - 17:4, 18:14, 18:19, 19:11, 54:2, 61:18, 68:14
**Blaine** [3] - 31:14, 50:8, 102:16
**blasted** [1] - 43:18
**blasts** [1] - 46:18
**blockage** [1] - 40:3
**blocked** [1] - 39:1
**boat** [1] - 49:8
**bogged** [3] - 31:5, 34:12, 70:18
**Boies** [2] - 66:17, 106:11
**bombarded** [1] - 22:17
**bones** [1] - 45:9
**bound** [1] - 81:13
**box** [1] - 83:15
**bracket** [1] - 26:6
**break** [1] - 88:9
**brief** [16] - 26:2, 64:3, 69:10, 69:22, 69:24, 70:4, 93:25, 99:13, 112:21, 114:9
**briefed** [1] - 100:20
**briefing** [20] - 25:13, 25:16, 25:24, 26:11,

29:24, 33:23, 34:13, 34:22, 36:15, 50:12, 84:11, 98:9, 98:20, 101:14, 101:18, 112:20, 113:1, 113:10, 113:20, 114:12
**briefly** [2] - 35:13, 35:20
**briefs** [9] - 69:8, 98:21, 99:3, 100:19, 100:21, 101:4, 113:18, 113:22
**bring** [4] - 20:16, 23:1, 45:10
**brokers** [2] - 54:15, 55:23
**Brooks** [1] - 47:13
**brought** [2] - 20:14, 67:25
**browsewrap** [1] - 78:24
**bucket** [16] - 25:6, 28:18, 28:21, 28:22, 29:6, 29:8, 49:4, 50:21, 52:10, 67:22, 71:2, 73:4, 73:14, 77:19, 77:20, 101:3
**buckets** [4] - 48:20, 48:21, 54:14, 87:12
**building** [2] - 99:22, 99:25
**built** [2] - 34:23, 102:12
**bullet** [1] - 96:3
**burden** [2] - 101:6, 102:1
**burdensome** [1] - 76:1
**business** [4] - 44:12, 47:5, 66:15, 109:14
**businesses** [4] - 23:19, 44:13, 57:22, 77:9
**but..** [1] - 74:8
**button** [2] - 56:7, 80:21
**buttons** [4] - 56:8, 56:11, 56:12, 56:13
**buy** [1] - 107:5

**C**

**CAFA** [5] - 19:6, 19:18, 20:1, 20:9, 49:1
**Camden** [3] - 17:5, 17:8, 118:16
**cannot** [1] - 40:21
**caption** [5] - 16:23,

20:15, 69:21, 107:24
**car** [1] - 107:5
**CARCO** [1] - 21:15
**care** [2] - 101:23, 104:25
**carefully** [1] - 61:4
**carveout** [1] - 34:24
**Case** [1] - 48:19
**case** [64] - 17:19, 17:21, 19:24, 20:14, 20:22, 22:7, 22:16, 24:10, 29:19, 31:17, 33:15, 34:6, 37:17, 38:10, 41:13, 47:19, 51:1, 57:23, 63:7, 64:1, 64:4, 64:6, 64:11, 68:19, 73:10, 73:11, 76:10, 76:18, 76:20, 77:2, 77:16, 83:9, 83:23, 87:14, 89:15, 90:18, 91:15, 91:17, 92:11, 93:1, 93:2, 93:5, 95:23, 96:13, 99:8, 102:2, 103:14, 104:18, 106:19, 106:20, 107:10, 107:14, 107:17, 107:18, 108:3, 108:16, 109:6, 109:10, 109:19, 110:5, 110:19
**cases** [76] - 16:8, 16:12, 17:5, 17:20, 18:16, 18:23, 18:25, 19:20, 20:5, 20:11, 20:13, 21:1, 21:17, 22:12, 23:22, 24:12, 24:20, 25:6, 25:16, 26:25, 27:1, 28:15, 29:16, 30:8, 31:1, 32:8, 32:11, 34:3, 34:9, 36:8, 36:9, 36:17, 36:19, 43:8, 45:13, 45:23, 45:25, 46:3, 50:21, 50:24, 54:1, 55:1, 57:16, 67:21, 67:22, 69:1, 69:5, 69:10, 69:22, 70:6, 70:7, 70:21, 73:7, 73:11, 73:13, 73:24, 75:7, 75:8, 76:23, 87:12, 98:15, 99:11, 100:2, 100:4, 100:18, 103:8, 103:15, 106:18, 108:5, 109:24, 112:19, 114:4, 114:6
**category** [2] - 35:12, 35:14

**central** [2] - 30:19, 31:7
**cert** [2] - 84:24, 86:11
**certain** [10] - 19:20, 69:1, 70:9, 82:9, 82:19, 83:1, 93:24, 98:17, 100:12, 111:21
**certainly** [3] - 37:5, 108:22, 109:20
**certification** [1] - 30:3
**certifies** [1] - 84:18
**certify** [2] - 30:20, 119:7
**cetera** [4] - 45:18, 57:5, 61:6, 80:12
**challenge** [66] - 21:1, 23:23, 24:8, 24:11, 24:14, 25:7, 26:7, 28:14, 28:23, 29:2, 29:9, 29:10, 29:20, 30:9, 30:10, 31:25, 32:20, 33:3, 37:3, 43:15, 44:9, 47:20, 49:3, 49:19, 63:23, 64:17, 70:8, 70:9, 70:10, 70:12, 70:19, 71:11, 72:1, 73:15, 73:20, 79:1, 79:12, 82:5, 82:8, 82:9, 82:21, 82:24, 84:12, 85:8, 85:22, 85:23, 86:14, 91:3, 93:11, 95:5, 95:8, 96:2, 98:12, 98:14, 98:17, 99:1, 99:14, 100:16, 102:4, 103:14, 112:12, 114:3, 114:13, 114:15, 115:9
**challenged** [2] - 27:11, 114:2
**challenges** [14] - 28:18, 28:25, 43:12, 43:13, 45:11, 49:12, 50:13, 50:14, 68:7, 79:14, 82:11, 86:20, 91:6
**challenging** [7] - 21:4, 22:1, 48:24, 49:2, 64:2, 64:4, 113:16
**chance** [3] - 108:23, 109:22, 113:13
**changes** [1] - 101:16
**characterize** [1] - 58:16
**check** [6] - 17:3, 37:21, 40:14, 107:4, 110:23, 118:20
**checkboxes** [1] -

56:15
**checked** [1] - 51:2
**cherry** [1] - 84:7
**chief** [1] - 16:11
**children** [2] - 57:5, 60:22
**choice** [3] - 82:20, 102:10, 105:15
**choose** [1] - 53:13
**chose** [1] - 63:19
**circuit** [2] - 84:19, 84:21
**circumstance** [2] - 22:7, 45:2
**cite** [1] - 70:21
**citizenship** [5] - 19:23, 92:6, 92:9, 92:12, 92:18
**Civil** [1] - 60:12
**claim** [8] - 21:23, 21:24, 23:18, 72:13, 76:14, 83:25, 99:4, 103:3
**claiming** [1] - 102:24
**claims** [3] - 22:12, 23:20, 90:10
**clarification** [4] - 39:10, 43:22, 71:7, 74:18
**clarify** [3] - 111:24, 115:7, 115:17
**class** [7] - 20:16, 20:17, 20:18, 80:12, 107:11, 107:19, 108:8
**clause** [2] - 33:6, 79:24
**Clause** [1] - 79:2
**clear** [11] - 19:9, 27:9, 60:14, 63:24, 66:25, 79:10, 82:1, 89:18, 90:4, 105:8
**clearly** [4] - 19:3, 67:9, 94:19, 103:14
**clerk** [1] - 95:9
**clerk's** [3] - 110:12, 116:16, 117:1
**click** [2] - 28:9, 80:21
**clickwrap** [1] - 78:24
**client** [3] - 41:18, 58:6, 80:20
**client's** [1] - 38:13
**clients** [9] - 23:11, 29:8, 29:10, 29:12, 31:22, 34:10, 49:6, 111:23, 117:24
**clients'** [1] - 62:22
**closed** [1] - 39:17
**co** [1] - 64:22
**co-counsel** [1] - 64:22

**collateral** [1] - 99:16
**colleague** [1] - 106:1
**colleagues** [2] - 17:15, 34:1
**collect** [2] - 63:6, 87:24
**collections** [1] - 34:9
**collusion** [4] - 49:2, 91:25, 92:2, 92:3
**collusive** [3] - 19:16, 19:21, 92:5
**collusively** [1] - 22:6
**comfortable** [1] - 85:15
**coming** [3] - 16:6, 36:2, 38:11
**commend** [1] - 70:24
**comment** [4] - 31:3, 33:9, 63:22, 65:1
**comments** [2] - 17:17, 41:17
**common** [15] - 22:11, 34:3, 50:21, 71:2, 71:9, 71:14, 71:16, 71:23, 71:24, 72:5, 72:9, 72:24, 104:19, 104:20
**companies** [7] - 34:7, 34:17, 55:4, 55:6, 56:5, 57:21, 104:9
**company** [11] - 22:16, 39:12, 41:19, 60:4, 75:20, 79:18, 80:22, 80:25, 81:1, 103:22, 117:10
**compilation** [1] - 62:15
**compiled** [1] - 63:21
**complaint** [12] - 37:17, 44:5, 45:6, 45:8, 45:9, 72:13, 73:22, 106:21, 108:15, 109:22, 109:23
**complaints** [4] - 22:20, 40:24, 53:20, 106:22
**complete** [10] - 19:4, 19:5, 19:14, 21:18, 21:22, 21:24, 29:13, 33:19, 35:14, 92:15
**complex** [1] - 76:23
**compliance** [18] - 37:21, 48:5, 48:8, 48:9, 54:11, 58:18, 61:24, 62:20, 63:16, 64:24, 65:3, 75:15, 103:23, 103:25, 104:4, 104:16, 111:16, 111:23
**complicated** [2] -

66:10, 75:22
**complied** [2] - 54:18, 72:7
**comply** [5] - 43:20, 77:11, 90:21, 104:3, 106:5
**complying** [1] - 51:22
**component** [1] - 60:24
**components** [1] - 61:1
**concept** [1] - 92:3
**concern** [5] - 36:12, 43:7, 45:11, 94:11, 100:1
**concerned** [3] - 44:2, 49:7, 79:4
**concerning** [1] - 51:25
**concerns** [1] - 35:22
**concluded** [1] - 119:5
**concur** [1] - 33:25
**concurrently** [1] - 17:3
**conditions** [9] - 78:20, 78:23, 80:10, 88:10, 88:13, 88:15, 89:7, 89:11, 89:21
**confer** [9] - 24:17, 25:3, 25:4, 26:5, 30:24, 48:1, 48:10, 58:5, 74:2
**conference** [13] - 16:8, 17:24, 29:17, 93:18, 94:11, 95:23, 96:13, 98:5, 108:21, 113:6, 113:8, 115:25, 117:9
**confers** [2] - 77:22, 103:23
**confidential** [3] - 60:15, 60:16, 61:8
**confirm** [1] - 117:23
**confirmation** [1] - 117:21
**consent** [1] - 111:9
**consideration** [1] - 36:24
**considered** [1] - 92:14
**considering** [3] - 43:1, 43:12, 43:14
**consolidate** [1] - 18:21
**consolidated** [7] - 25:13, 25:16, 25:23, 26:2, 112:21, 113:1, 113:19
**Constancy** [1] - 47:13
**Constitution** [4] - 33:4, 33:7, 93:11
**constitution** [1] - 33:5
**constitutional** [46] - 24:8, 24:11, 24:13,

27:15, 29:20, 30:2, 30:21, 31:24, 32:14, 32:19, 32:25, 33:24, 37:3, 37:8, 37:13, 37:22, 42:24, 43:7, 43:8, 43:10, 44:3, 45:8, 45:11, 47:19, 48:1, 48:8, 49:5, 49:8, 49:18, 63:23, 68:2, 70:13, 75:12, 75:13, 76:8, 77:20, 79:11, 82:4, 84:12, 84:16, 85:8, 102:4, 103:13, 103:14, 115:9, 118:5
**constitutionality** [14] - 27:10, 32:1, 35:17, 41:16, 42:2, 62:24, 64:2, 76:13, 82:16, 82:25, 86:1, 86:21, 100:16, 101:13
**constitutionally** [1] - 79:1
**constrained** [1] - 81:6
**contact** [2] - 29:14, 40:4
**contacted** [1] - 46:21
**contacting** [1] - 46:22
**contemplated** [1] - 96:5
**contesting** [1] - 42:20
**contingency** [2] - 92:25, 93:1
**continue** [4] - 73:6, 74:7, 104:10, 114:22
**continued** [1] - 104:14
**continues** [1] - 57:9
**contract** [6] - 28:3, 60:4, 60:6, 60:18, 62:2, 77:11
**contract-type** [1] - 77:11
**contrived** [1] - 52:3
**cookie** [1] - 22:19
**coordinate** [1] - 100:24
**coordinated** [1] - 101:8
**coordination** [2] - 100:18, 100:23
**copies** [1] - 60:22
**core** [1] - 67:24
**corporate** [2] - 22:12, 57:22
**corporation's** [1] - 27:2
**corpus** [1] - 93:5
**correct** [34] - 19:6, 20:2, 20:3, 21:2, 22:3, 23:24, 24:2,

24:9, 24:21, 28:17, 36:5, 40:6, 40:25, 53:23, 55:5, 55:7, 55:9, 55:14, 56:6, 57:14, 57:18, 60:4, 64:17, 74:12, 74:16, 75:1, 75:5, 75:24, 76:11, 79:20, 90:6, 99:6, 119:7
**CoStar** [1] - 42:14
**counsel** [34] - 18:5, 18:6, 21:7, 28:5, 33:10, 36:13, 36:20, 42:9, 47:8, 47:23, 50:4, 63:12, 64:22, 68:7, 69:12, 71:22, 78:6, 90:20, 92:24, 94:13, 101:21, 102:14, 103:20, 104:3, 109:6, 110:24, 111:22, 112:17, 113:16, 113:23, 116:2
**COUNSEL** [1] - 27:22
**counsel's** [1] - 41:17
**counties** [1] - 18:21
**counting** [1] - 42:19
**couple** [6] - 18:25, 19:11, 29:8, 39:9, 90:14, 97:1
**course** [7] - 19:5, 47:23, 58:12, 65:18, 101:11, 101:16, 115:16
**court** [9] - 16:1, 40:11, 43:22, 60:8, 63:23, 68:19, 77:19, 106:23, 107:18
**Court** [16] - 16:13, 19:16, 20:11, 20:13, 32:21, 32:23, 39:10, 64:15, 64:18, 71:7, 74:18, 84:25, 86:10, 105:3, 119:12
**Court's** [2] - 23:1, 58:25
**court's** [1] - 59:11, 95:9
**courthouse** [1] - 118:23
**courtroom** [4] - 26:22, 118:20, 118:21, 118:22
**courts** [3] - 83:8, 92:14, 102:4
**coverable** [1] - 39:23
**covered** [24] - 23:18, 36:24, 39:24, 46:24, 47:6, 52:7, 54:4, 56:23, 57:5, 58:22,

64:10, 71:12, 90:9, 94:18, 104:25, 106:25, 107:2, 109:11, 109:16, 111:20, 117:13, 117:15, 117:18
**crash** [1] - 75:20
**credit** [5] - 107:1, 107:4, 107:12, 109:14, 109:15
**criminal** [2] - 97:3, 97:18
**cross** [3] - 16:22, 37:21, 40:14
**cross-check** [2] - 37:21, 40:14
**Curtiss** [1] - 91:14
**cutter/boilerplate** [1] - 22:20

# D

**damage** [1] - 63:6
**damages** [2] - 37:14, 75:4
**Daniel's** [17] - 16:10, 20:18, 22:15, 24:8, 26:23, 38:4, 51:22, 64:2, 87:22, 89:3, 90:21, 106:20, 107:14, 107:17, 108:4, 108:11, 113:16
**Data** [1] - 115:20
**data** [1] - 54:15
**date** [7] - 93:16, 96:23, 96:24, 98:17, 112:13, 113:22, 114:17
**Date** [1] - 119:12
**dates** [1] - 40:23
**days** [12] - 23:10, 47:22, 48:4, 58:12, 58:15, 62:2, 66:6, 69:11, 70:10, 75:17, 96:21, 117:22
**deadline** [3] - 43:21, 43:23, 115:1
**deadlines** [2] - 114:14, 114:24
**deal** [8] - 16:15, 24:6, 45:12, 70:8, 94:1, 98:11, 100:3
**dealing** [4] - 48:7, 62:25, 98:14, 100:20
**deals** [1] - 29:19
**dealt** [2] - 70:7, 75:9
**decide** [17] - 26:12, 29:15, 30:1, 30:2, 30:13, 30:20, 32:15,

50:15, 55:1, 55:3, 74:13, 76:18, 95:13, 95:19, 99:11, 100:8, 104:22
**decided** [16] - 23:13, 29:25, 30:4, 30:19, 31:24, 43:9, 44:3, 44:10, 56:24, 60:11, 64:15, 74:24, 79:6, 82:7, 85:20, 86:8
**decision** [4] - 37:24, 76:2, 84:19, 95:9
**decisions** [2] - 101:17, 105:19
**declaring** [1] - 79:8
**deemed** [3] - 33:6, 79:24, 82:12
**defendant** [25] - 19:13, 19:22, 31:8, 35:23, 35:25, 40:11, 41:13, 48:23, 51:25, 55:6, 55:8, 57:12, 58:4, 58:16, 62:1, 65:21, 67:1, 67:7, 70:17, 72:5, 82:24, 90:13, 103:24, 106:19, 116:9
**defendant's** [1] - 44:11
**defendants** [114] - 16:9, 18:24, 19:14, 19:25, 21:13, 22:5, 22:17, 22:21, 22:22, 22:23, 22:25, 23:8, 23:14, 23:16, 23:17, 24:23, 25:22, 25:25, 27:14, 27:16, 27:17, 27:25, 33:14, 33:16, 33:18, 36:1, 36:2, 36:13, 36:25, 37:9, 38:2, 40:11, 42:14, 42:21, 42:25, 43:1, 43:6, 43:11, 43:18, 45:10, 45:16, 46:22, 47:22, 48:4, 49:13, 51:9, 51:21, 52:9, 53:5, 53:12, 53:13, 53:17, 53:18, 53:25, 54:10, 54:12, 54:17, 55:2, 55:3, 57:15, 57:17, 57:19, 57:23, 58:3, 58:9, 59:7, 60:7, 61:11, 62:4, 62:20, 63:19, 66:3, 66:5, 66:7, 70:3, 72:5, 73:5, 74:10, 74:13, 74:20, 78:18, 78:19, 78:20, 80:20, 82:8, 85:5, 87:24,

88:1, 90:7, 90:17, 98:24, 102:8, 104:2, 104:14, 104:17, 104:21, 105:1, 105:2, 105:23, 112:13, 113:10, 113:25, 114:6, 114:7, 114:17, 115:21, 117:14, 117:22, 118:2, 119:1
**defendants'** [5] - 24:22, 25:2, 25:13, 28:5, 90:24
**defense** [16] - 21:7, 33:10, 42:9, 42:25, 47:8, 50:4, 63:12, 67:19, 71:22, 78:6, 82:12, 82:22, 84:6, 85:24, 102:14, 112:17
**defenses** [27] - 22:22, 22:24, 25:23, 26:1, 28:1, 31:9, 43:12, 49:22, 67:24, 70:11, 70:12, 70:14, 71:24, 72:24, 79:15, 83:2, 83:12, 83:24, 84:3, 84:14, 87:3, 98:18, 100:4, 101:4, 102:6, 114:19, 118:5
**definition** [1] - 72:17
**definitions** [1] - 71:11
**Delaware** [3] - 91:12, 92:6, 92:8
**delay** [4] - 99:13, 100:1, 102:13, 103:3
**delayed** [1] - 108:10
**delete** [8] - 46:8, 46:9, 47:22, 54:24, 62:21, 65:22, 65:23, 74:17, 79:19, 80:19, 80:23, 80:25
**deleted** [8] - 48:4, 51:11, 55:11, 55:18, 55:22, 56:4, 79:25, 88:23
**deleting** [2] - 81:1, 104:9
**deletion** [2] - 52:1, 57:13
**deliver** [1] - 72:18
**delivered** [3] - 39:2, 52:4, 52:9
**Delvepoint** [1] - 115:8
**denied** [2] - 64:17, 85:2
**denominator** [1] - 34:3
**depositions** [2] - 47:7, 77:14

**DEPUTY CLERK** [3] - 78:2, 78:4, 119:4
**describe** [1] - 22:8
**described** [2] - 27:2, 81:7
**deserve** [1] - 42:6
**designated** [1] - 16:11
**despite** [2] - 57:9, 63:11, 87:21
**detail** [1] - 118:12
**details** [1] - 82:13
**determine** [1] - 41:19
**difference** [1] - 44:19
**different** [27] - 19:25, 22:21, 31:8, 33:14, 54:2, 54:13, 56:25, 58:4, 70:17, 70:20, 70:21, 70:23, 72:16, 76:9, 89:15, 89:20, 94:20, 94:23, 94:24, 97:9, 97:11, 101:1, 101:17, 108:8, 109:9
**differently** [1] - 94:19
**diligent** [1] - 104:13
**diming** [1] - 59:8
**diminishes** [1] - 92:17
**direct** [1] - 69:10
**directed** [3] - 19:22, 39:12, 46:5
**direction** [1] - 46:1
**directly** [2] - 23:7, 53:4
**disagree** [1] - 50:25
**disagreement** [1] - 64:25
**disclose** [1] - 72:19
**disclosed** [1] - 59:1
**disclosure** [2] - 23:9, 62:16
**discovery** [43] - 23:3, 31:6, 36:18, 37:14, 42:4, 44:5, 45:13, 45:17, 45:20, 45:22, 46:1, 46:2, 46:4, 46:13, 47:2, 50:15, 51:15, 60:8, 61:12, 68:12, 73:16, 73:20, 73:23, 73:25, 75:6, 75:25, 76:19, 76:21, 76:22, 77:2, 80:15, 86:23, 87:5, 90:17, 93:20, 93:24, 95:24, 96:1, 96:5, 98:10, 113:9
**discuss** [5] - 69:23, 93:19, 98:14, 109:21, 113:21
**discussing** [1] - 105:10
**discussion** [2] -

17:25, 48:23

**discussions** [3] - 34:11, 34:19, 73:5

**disingenuous** [1] - 104:16

**dismiss** [21] - 24:7, 29:23, 50:23, 68:3, 68:14, 71:1, 71:13, 72:11, 73:14, 76:10, 76:14, 82:10, 82:20, 85:6, 98:16, 99:23, 102:12, 109:20, 114:15, 114:18, 115:8

**dismissed** [1] - 36:19

**dispensation** [1] - 69:14

**dispositive** [4] - 32:24, 35:19, 103:15

**dispute** [1] - 81:1

**disregard** [3] - 92:6, 92:9, 92:12

**disregarded** [1] - 91:13

**dissipated** [1] - 76:6

**distribution** [1] - 40:1

**District** [1] - 17:2

**diversity** [16] - 19:4, 19:6, 19:10, 19:13, 19:14, 19:15, 20:2, 21:18, 21:22, 21:24, 29:13, 33:19, 35:14, 91:14

**division** [1] - 64:13

**doable** [1] - 97:25

**Docket** [2] - 21:15, 35:11

**document** [5] - 43:6, 59:24, 60:3, 61:11, 62:9

**documents** [3] - 60:15, 77:12, 77:16

**Doe** [8] - 39:11, 39:13, 54:21, 55:10, 55:17, 55:21, 56:3, 56:18

**DOMINO** [3] - 48:17, 48:18, 49:25

**Domino** [1] - 48:18

**done** [10] - 58:13, 59:17, 61:21, 62:18, 69:6, 69:7, 70:5, 95:12, 113:24, 116:25

**door** [2] - 39:16, 61:17

**dots** [1] - 51:4

**down** [12] - 23:2, 31:5, 34:12, 38:17, 56:21, 70:18, 75:22, 85:4, 95:7, 95:10, 95:25, 113:17

**due** [5] - 32:10, 43:14, 43:15, 43:25, 69:12

**during** [1] - 88:9

### E

**early** [3] - 83:9, 83:15, 90:17

**easily** [2] - 60:21, 61:20

**Eastern** [1] - 17:2

**easy** [1] - 77:5

**echo** [1] - 41:17

**effectively** [1] - 87:13

**efficiencies** [1] - 113:1

**efficient** [5] - 25:25, 26:10, 74:8, 75:7, 103:12

**efficiently** [1] - 25:8

**effort** [3] - 62:21, 73:7, 112:24

**either** [14] - 17:7, 19:19, 26:1, 27:16, 48:21, 56:10, 57:25, 58:19, 68:21, 69:21, 77:22, 85:6, 104:10, 108:2

**electronically** [4] - 17:10, 41:2, 51:12, 80:22

**elemental** [1] - 79:14

**elephant** [1] - 86:15

**elsewhere** [1] - 45:24

**email** [15] - 22:18, 23:19, 38:17, 38:20, 38:25, 39:1, 46:15, 46:18, 49:14, 52:8, 53:8, 53:9, 65:15, 66:6

**emails** [6] - 22:17, 22:19, 38:11, 38:14, 53:25, 55:12

**Emanuel** [1] - 116:8

**eMerges** [1] - 110:5

**emphasizing** [1] - 42:25

**end** [5] - 30:1, 61:13, 74:4, 75:11, 116:21

**endeavor** [1] - 98:1

**ends** [2] - 45:22, 114:21

**enforce** [1] - 102:23

**enforcement** [3] - 62:11, 80:5, 89:1

**engage** [5] - 34:11, 34:18, 36:18, 80:18, 107:3

**engaged** [1] - 34:13

**engaging** [1] - 103:22

**enjoyed** [1] - 117:10

**ensure** [2] - 61:5, 61:7

**entail** [1] - 80:14

**enter** [4] - 61:23, 66:5, 113:6, 113:21

**entered** [5] - 17:23, 58:20, 59:14, 60:10, 90:8

**entire** [2] - 31:18, 64:2

**entitled** [4] - 75:4, 93:20, 106:6, 119:8

**entity** [1] - 57:22

**Epson** [1] - 115:20

**error** [1] - 72:7

**especially** [2] - 75:6, 113:4

**essentially** [2] - 102:5, 103:8

**establish** [1] - 49:15

**estoppel** [1] - 99:16

**et** [4] - 45:18, 57:5, 61:6, 80:12

**evidence** [1] - 103:1

**evident** [2] - 44:4, 45:5

**ex** [1] - 81:23

**ex-wives** [1] - 81:23

**exact** [1] - 56:1

**exactly** [5] - 69:8, 69:9, 73:9, 86:5, 109:10

**examine** [1] - 23:8

**example** [11] - 20:21, 34:10, 37:18, 43:14, 44:11, 44:13, 45:4, 54:20, 55:3, 57:1, 90:14

**except** [5] - 59:1, 62:16, 72:5, 100:15, 115:14

**exception** [2] - 64:5, 64:12

**exceptions** [1] - 43:5

**exchanging** [1] - 74:2

**excuse** [3] - 27:22, 99:21, 112:9

**exemplar** [1] - 89:22, 94:8, 94:24

**exemplars** [2] - 94:17, 95:6

**exigency** [4] - 103:19, 104:24, 105:22, 105:24

**exists** [1] - 90:24

**expect** [3] - 42:19, 75:19, 103:9

**expedite** [1] - 110:14

**expense** [1] - 48:7

**explain** [1] - 78:16

**explicitly** [1] - 60:14

**express** [1] - 104:15

**expressed** [2] - 103:24, 104:2

**extensions** [1] - 47:14

**extensive** [3] - 77:13, 96:10, 96:11

**extent** [9] - 34:17, 43:11, 45:9, 56:15, 69:22, 77:21, 94:9, 94:23, 112:10

**external** [1] - 61:6

**eyes** [1] - 59:13

### F

**face** [6] - 19:10, 43:24, 45:8, 45:10, 74:4, 75:13

**facial** [44] - 50:13, 50:14, 68:6, 70:7, 70:9, 70:15, 70:19, 72:1, 73:15, 73:20, 75:9, 76:2, 77:20, 79:1, 82:4, 82:8, 82:11, 82:21, 82:25, 84:11, 85:8, 85:22, 85:23, 86:14, 91:3, 91:6, 93:10, 95:5, 95:8, 96:2, 98:12, 98:14, 98:16, 99:1, 99:14, 100:15, 101:5, 101:13, 103:14, 108:11, 112:12, 114:3, 114:13, 114:15

**facially** [6] - 32:4, 79:12, 82:9, 82:25, 84:16, 113:16

**facilitated** [1] - 81:15

**fact** [8] - 29:7, 49:13, 54:13, 58:22, 69:7, 91:21, 106:2, 117:24

**fact-finding** [1] - 49:13

**factor** [2] - 92:13, 92:14

**factored** [1] - 34:22

**factors** [2] - 92:11, 92:13

**facts** [2] - 43:16, 81:3

**factual** [6] - 22:22, 43:13, 44:3, 44:7, 44:10, 45:5

**failure** [2] - 76:14, 83:24

**fair** [1] - 96:21

**fairly** [2] - 77:5, 96:20

**faith** [2] - 62:21, 112:24

**family** [1] - 57:5

**fantastic** [2] - 31:23, 32:13

**far** [1] - 97:15

**fashion** [4] - 17:11, 25:14, 34:4, 49:23

**Federal** [1] - 84:5

**federal** [1] - 32:25

**fee** [2] - 16:25, 93:1

**fellow** [1] - 115:19

**few** [2] - 18:23, 20:22

**fewer** [1] - 101:1

**field** [1] - 94:18

**fighting** [1] - 32:6

**figure** [2] - 20:11, 104:20

**file** [38] - 16:19, 17:3, 18:5, 21:19, 24:19, 25:22, 26:1, 26:4, 29:23, 68:22, 69:18, 69:20, 70:9, 70:11, 82:10, 82:18, 82:25, 83:22, 83:23, 85:6, 86:6, 93:25, 95:22, 96:12, 99:3, 100:9, 100:11, 100:19, 101:4, 103:8, 107:10, 109:20, 110:16, 113:7, 114:9, 114:17, 115:16, 116:19

**filed** [18] - 18:16, 19:2, 60:15, 95:12, 95:17, 96:20, 98:3, 98:17, 101:12, 103:7, 104:1, 106:20, 110:10, 110:11, 110:18, 110:24, 113:12, 117:1

**files** [1] - 76:10

**filing** [8] - 16:17, 16:25, 82:11, 88:23, 90:8, 112:21, 114:24

**finally** [1] - 49:11

**findings** [1] - 105:19

**fine** [7] - 52:11, 67:3, 74:14, 95:14, 96:12, 101:22, 116:4

**firm** [2] - 66:22, 106:2

**first** [13] - 18:3, 24:18, 28:21, 28:22, 29:8, 41:16, 42:24, 45:21, 54:15, 64:3, 83:6, 103:21, 117:7

**First** [4] - 29:24, 44:8, 44:9, 79:1

**fit** [1] - 48:20

**five** [3] - 23:10, 57:22, 66:6

**flagged** [1] - 38:16

**flawed** [1] - 62:6

**flexibility** [1] - 75:17
**Flexner** [1] - 66:18
**flip** [2] - 101:20, 101:21
**flow** [1] - 61:10
**focus** [3] - 24:5, 96:1, 101:13
**focuses** [1] - 95:9
**folks** [3] - 39:24, 40:15, 40:19
**following** [1] - 97:5
**forced** [1] - 107:10
**foregoing** [1] - 119:7
**forget** [1] - 76:13
**form** [10] - 16:20, 16:21, 16:24, 19:23, 20:16, 22:19, 60:19, 89:20, 89:24, 94:21
**former** [1] - 36:20
**forms** [3] - 89:15, 94:23, 94:24
**forth** [5] - 65:25, 70:11, 98:20, 114:14, 114:21
**forward** [25] - 25:19, 42:2, 45:21, 49:18, 50:22, 50:24, 67:23, 68:15, 68:19, 73:25, 75:7, 76:19, 76:21, 82:8, 85:22, 94:11, 101:2, 101:5, 104:19, 106:6, 112:11, 112:16, 113:15, 114:3
**four** [1] - 23:11
**fraudulent** [2] - 48:22, 49:3
**Free** [1] - 79:2
**free** [1] - 33:6
**freeze** [1] - 109:15
**freezing** [1] - 107:12
**Friday** [2] - 97:4, 97:24
**front** [3] - 19:2, 77:5, 104:18
**froze** [1] - 107:1
**fruit** [1] - 74:7
**full** [3] - 19:10, 23:9, 44:6
**fully** [3] - 74:17, 100:20, 101:14
**function** [1] - 44:25
**functionality** [1] - 44:14
**fundamental** [1] - 33:24
**futoro** [1] - 51:22
**future** [1] - 50:14

## G

**game** [2] - 74:4, 74:24
**garbage** [1] - 52:11
**gather** [1] - 98:8
**Gavin** [1] - 109:5
**general** [1] - 74:1
**generally** [1] - 76:19
**genuinely** [1] - 51:21
**giant** [1] - 46:18
**given** [4] - 58:21, 75:21, 102:25, 109:13
**Gmail** [1] - 53:9
**goal** [1] - 101:2
**governmental** [1] - 45:2
**governs** [1] - 62:9
**grant** [1] - 86:11
**granted** [1] - 83:25
**great** [4] - 34:1, 55:13, 56:22, 118:18
**Greenspoon** [2] - 35:7, 111:14
**ground** [3] - 20:24, 29:23, 48:23
**grounds** [4] - 43:9, 49:1, 71:13, 77:20
**group** [12] - 21:12, 31:18, 32:6, 33:17, 36:2, 42:16, 48:11, 53:22, 60:7, 80:3, 105:3, 106:17
**Group** [1] - 21:15
**guess** [5] - 42:18, 62:2, 72:23, 88:1, 117:12
**guys** [1] - 44:21

## H

**hac** [9] - 16:16, 16:19, 16:24, 16:25, 110:8, 110:15, 111:9, 115:14, 116:2
**hacs** [1] - 116:10
**Hamilton** [1] - 21:12
**handful** [1] - 34:18
**handle** [2] - 16:12, 25:6
**handling** [2] - 47:19, 48:1
**hanging** [1] - 74:7
**happy** [9] - 51:15, 59:18, 73:12, 74:15, 90:4, 90:15, 94:22, 95:22, 118:13
**harm** [4] - 51:6, 62:14, 88:4
**HARVEY** [1] - 16:2

**havoc** [1] - 114:25
**hear** [12] - 21:6, 24:25, 27:23, 29:17, 31:3, 33:8, 33:10, 50:2, 52:12, 64:19, 72:21, 103:12
**heard** [9] - 47:9, 67:23, 71:10, 73:4, 99:4, 100:22, 110:13, 114:8, 115:18
**hearing** [3] - 50:20, 95:5, 110:7
**heart** [1] - 30:17
**held** [4] - 16:1, 37:13, 71:25, 86:7
**help** [2] - 25:4, 95:6
**hesitant** [1] - 29:5
**hide** [2] - 27:3, 27:11
**Hiya** [5] - 31:16, 31:17, 32:5, 92:7, 102:25
**hold** [2] - 68:18, 68:23
**holds** [1] - 92:16
**holes** [2] - 95:10, 95:25
**holiday** [1] - 43:19
**hollow** [1] - 103:3
**home** [8] - 55:18, 57:2, 57:3, 73:12, 75:11, 76:3, 80:17
**Honor** [148] - 16:4, 18:7, 18:10, 19:3, 20:7, 20:10, 21:2, 21:5, 21:9, 21:11, 21:17, 22:3, 24:4, 24:15, 25:9, 25:10, 26:19, 27:22, 29:4, 29:12, 30:23, 31:13, 31:22, 32:14, 32:18, 33:11, 33:21, 35:1, 35:4, 35:13, 36:21, 41:4, 41:7, 41:10, 42:11, 42:19, 42:23, 44:20, 46:10, 46:17, 47:4, 47:18, 48:17, 49:25, 50:8, 50:17, 51:13, 52:2, 52:12, 52:20, 52:23, 54:3, 54:11, 54:15, 56:14, 57:1, 57:19, 58:8, 58:18, 59:5, 59:10, 60:1, 60:23, 61:7, 62:23, 63:1, 63:9, 63:18, 64:14, 64:18, 64:22, 65:11, 66:17, 66:23, 67:12, 69:2, 69:4, 69:13, 70:1, 70:24, 73:3, 75:1, 78:1, 78:9, 79:6, 79:11, 80:1, 81:4,

82:1, 83:3, 83:19, 84:10, 84:22, 86:5, 87:9, 87:15, 88:6, 88:12, 89:18, 89:25, 90:6, 91:5, 91:6, 91:21, 92:7, 93:22, 94:6, 95:1, 95:21, 96:16, 96:22, 96:25, 97:18, 98:1, 99:18, 100:20, 101:9, 101:20, 102:19, 103:17, 103:19, 104:16, 104:18, 105:8, 105:16, 105:18, 105:20, 106:4, 106:9, 109:2, 109:7, 109:21, 110:4, 110:18, 111:5, 111:8, 111:13, 112:6, 112:22, 115:4, 115:20, 116:1, 116:7, 117:3, 117:4, 117:21
**Honorable** [1] - 16:1
**hope** [2] - 96:19, 117:17
**hopefully** [2] - 69:13, 101:8
**hoping** [1] - 98:4
**hostage** [1] - 71:25
**hours** [1] - 56:20
**housekeeping** [4] - 110:6, 111:14, 115:23, 118:15
**houses** [1] - 51:5
**hovers** [1] - 54:9
**hundreds** [2] - 56:2, 56:3
**hypothetical** [3] - 39:11, 54:21, 81:6
**hypothetically** [2] - 56:17, 82:7

## I

**idea** [6] - 16:18, 31:23, 32:13, 33:23, 34:1, 47:24
**identifiable** [1] - 87:17
**identified** [3] - 38:25, 39:16, 106:5
**identify** [3] - 17:19, 17:21, 40:23
**identifying** [1] - 65:14
**identity** [1] - 107:1
**Identity** [1] - 107:6
**ignored** [1] - 107:6
**Ill** [1] - 16:2
**imagine** [1] - 44:12

**immediately** [1] - 30:3
**imminence** [2] - 51:2
**imminent** [1] - 51:6
**implications** [1] - 65:5
**implicit** [1] - 16:21
**importance** [1] - 104:4
**important** [8] - 43:2, 43:11, 46:25, 51:5, 63:16, 67:16, 95:13, 113:23
**impose** [1] - 109:15
**impossible** [1] - 43:20
**improper** [1] - 85:11
**include** [4] - 57:5, 60:12, 70:14, 89:23
**included** [1] - 17:24
**includes** [1] - 24:11
**including** [2] - 79:15, 85:25
**increased** [1] - 17:2
**individual** [10] - 20:22, 46:21, 49:13, 52:7, 53:8, 56:13, 56:23, 57:15, 60:3, 91:4
**individualize** [1] - 69:23
**individually** [2] - 27:6, 56:20
**individuals** [8] - 22:13, 22:15, 40:23, 51:10, 53:13, 57:12, 60:21, 80:3
**individuals'** [1] - 27:5
**indulgence** [1] - 117:7
**industries** [1] - 22:21
**industrious** [1] - 70:25
**inevitable** [1] - 101:19
**inflexible** [1] - 18:1
**Infomatics** [1] - 33:14
**Inform** [1] - 33:15
**informally** [1] - 118:11
**information** [73] - 22:19, 23:18, 23:21, 27:5, 37:23, 37:25, 38:21, 39:12, 40:1, 40:14, 40:19, 40:21, 41:24, 44:15, 46:10, 47:22, 48:4, 51:3, 51:6, 51:11, 51:16, 51:25, 52:4, 53:4, 54:24, 55:11, 55:22, 55:23, 56:16, 56:18, 56:19, 57:4, 57:8, 57:10, 57:21, 58:3, 58:10, 58:21, 58:23, 59:1, 62:21, 64:7, 64:9, 65:15, 65:22, 73:17, 73:18, 74:2, 74:14, 74:17, 77:8,

77:9, 77:10, 77:17, 79:19, 79:25, 80:19, 80:21, 80:25, 81:2, 81:20, 87:16, 87:17, 88:3, 88:23, 90:23, 103:4, 104:10, 109:12, 117:24, 118:4
**informed** [1] - 88:2
**ingenious** [1] - 70:22
**injunction** [1] - 104:1
**injunctive** [6] - 102:18, 102:21, 103:1, 103:6, 103:10, 104:13
**instance** [2] - 80:2, 91:12
**instead** [1] - 43:9
**instruct** [1] - 118:2
**intend** [1] - 19:19
**intent** [1] - 26:23
**intentionally** [1] - 43:19
**interest** [18] - 20:13, 42:5, 44:21, 45:3, 45:16, 51:24, 62:22, 63:7, 91:15, 91:16, 91:24, 92:16, 92:20, 93:5, 103:24, 114:6, 118:6
**interested** [5] - 50:1, 51:22, 82:18, 85:19, 99:1
**interests** [2] - 62:19, 101:23
**interfere** [1] - 36:16
**interim** [1] - 40:9
**internal** [1] - 77:11
**internally** [1] - 105:10
**internet** [2] - 44:15, 44:22
**interrelated** [1] - 57:21
**inverse** [1] - 22:9
**investigate** [3] - 19:11, 80:8, 80:9
**involved** [3] - 17:20, 68:16
**involves** [1] - 64:6
**issue** [66] - 23:8, 25:17, 29:21, 30:19, 30:21, 31:7, 31:24, 32:14, 32:25, 33:9, 35:18, 35:23, 37:16, 38:10, 42:24, 44:7, 44:12, 44:21, 46:25, 48:2, 48:8, 49:16, 49:20, 50:10, 59:25, 62:7, 64:24, 70:15, 70:21, 71:17, 72:5,

72:8, 75:10, 75:14, 76:18, 78:11, 79:3, 82:2, 82:3, 82:16, 83:14, 84:10, 86:1, 86:7, 87:9, 92:5, 93:4, 93:14, 95:9, 99:1, 100:15, 103:4, 103:19, 103:23, 105:9, 105:18, 105:21, 105:25, 106:14, 112:2, 113:4, 113:25, 114:15
**issues** [40] - 16:15, 22:25, 26:12, 28:16, 29:1, 30:18, 33:24, 33:25, 34:2, 34:6, 34:10, 35:17, 35:18, 36:7, 40:9, 43:8, 43:10, 45:8, 49:5, 49:17, 50:21, 52:19, 62:25, 68:2, 71:1, 75:12, 75:22, 82:4, 84:2, 85:7, 85:19, 86:18, 100:21, 101:1, 102:11, 104:20, 108:11
**item** [1] - 111:14
**itself** [1] - 61:6

**J**

**James** [1] - 106:11
**January** [1] - 39:14
**Jason** [1] - 41:10
**Jersey** [18] - 16:9, 16:13, 17:4, 18:16, 18:20, 23:9, 29:14, 32:21, 32:23, 33:4, 54:22, 79:2, 80:17, 87:23, 106:22, 107:13, 107:18, 110:23
**Jersey's** [1] - 33:5
**Jim** [3] - 65:13, 65:24
**John** [9] - 39:11, 39:13, 47:12, 54:21, 55:10, 55:17, 55:21, 56:3, 56:18
**join** [6] - 24:24, 26:1, 26:11, 27:16, 34:14, 68:21
**joinder** [3] - 48:22, 49:3, 85:11
**joined** [1] - 22:6
**joint** [2] - 25:5, 26:5
**Jones** [1] - 53:17
**Joy** [1] - 35:11
**Judge** [25] - 18:14, 47:12, 48:12, 48:15, 53:1, 56:2, 56:10,

56:22, 58:5, 59:19, 62:6, 63:4, 63:15, 63:17, 90:3, 90:13, 106:12, 107:23, 108:17, 108:25, 111:12, 117:11, 118:14, 118:18, 118:24
**judge** [5] - 16:12, 59:21, 60:18, 62:10, 64:16
**judges** [4] - 80:6, 87:23, 89:1, 92:19
**judgment** [2] - 68:2, 85:7
**judicata** [1] - 99:16
**jumping** [2] - 43:8, 45:7
**jurisdiction** [56] - 18:4, 19:4, 19:16, 19:24, 21:1, 22:1, 23:23, 24:13, 25:18, 26:13, 26:15, 27:18, 28:1, 28:14, 28:16, 28:24, 28:25, 29:3, 29:7, 29:9, 29:11, 29:21, 29:22, 30:7, 30:9, 30:10, 30:18, 32:7, 33:25, 42:20, 45:24, 49:6, 49:10, 49:20, 62:25, 66:7, 70:13, 79:16, 82:3, 82:14, 83:21, 84:1, 85:9, 86:24, 99:5, 105:3, 105:6, 105:14, 105:20, 114:2, 114:4, 114:11
**jurisdictional** [3] - 22:24, 27:20

**K**

**K-I-M-R-E-Y** [1] - 31:14
**keep** [1] - 27:24
**Kelly** [2] - 35:6, 111:13
**KIMREY** [80] - 31:13, 31:16, 31:21, 32:3, 32:10, 32:13, 32:18, 33:2, 33:5, 50:8, 50:10, 78:9, 78:11, 78:13, 78:16, 78:18, 79:8, 79:14, 79:21, 80:1, 80:8, 80:14, 81:3, 81:6, 81:9, 81:12, 81:14, 81:18, 81:21, 81:23, 82:1, 83:3, 83:6, 83:18, 84:10, 84:14, 84:18, 84:21, 84:24, 85:2, 85:4, 85:11, 85:13,

85:18, 86:3, 86:5, 86:9, 86:14, 86:18, 86:23, 87:1, 87:4, 87:7, 87:15, 87:20, 88:1, 88:8, 88:19, 88:21, 88:25, 89:3, 89:12, 89:14, 91:5, 91:10, 91:20, 91:23, 92:2, 92:5, 93:10, 93:13, 93:22, 94:4, 94:12, 94:15, 94:23, 102:16, 102:18, 102:21, 103:3
**Kimrey** [3] - 31:14, 50:8, 102:16
**kind** [17] - 49:7, 49:16, 49:23, 53:3, 57:21, 59:11, 60:11, 60:24, 67:13, 68:22, 69:9, 77:23, 86:15, 87:6, 90:4, 118:12
**kinds** [2] - 77:15, 84:2
**knowing** [1] - 47:24
**known** [1] - 24:18
**knows** [2] - 59:10, 95:15

**L**

**land** [1] - 18:15
**large** [3] - 22:23, 100:18, 103:22
**largely** [1] - 80:5
**last** [2] - 17:18, 52:23
**late** [1] - 74:23
**Latham** [1] - 42:13
**laugh** [1] - 63:12
**laughing** [1] - 63:11
**Law** [17] - 16:10, 20:18, 22:15, 24:9, 26:23, 38:4, 51:22, 64:3, 87:22, 89:4, 90:21, 106:20, 107:14, 107:17, 108:4, 108:12, 113:16
**law** [14] - 23:9, 32:15, 36:21, 37:10, 42:6, 54:18, 62:10, 62:20, 80:5, 89:1, 91:17, 92:11, 101:17, 118:5
**lawsuit** [3] - 82:13, 88:24, 90:8
**lawsuits** [1] - 54:18
**lawyers** [2] - 16:17, 29:18
**lay** [1] - 18:15
**lead** [2] - 32:7, 34:14
**least** [20] - 17:19, 24:7, 26:17, 29:8,

33:15, 34:18, 39:25, 42:21, 43:1, 43:11, 53:20, 59:16, 70:15, 73:15, 100:19, 101:9, 103:11, 112:10, 112:12, 114:9
**lectern** [1] - 18:8
**led** [1] - 32:20
**LEE** [15] - 106:9, 106:11, 106:14, 106:17, 107:8, 107:10, 107:16, 107:23, 108:1, 108:7, 108:10, 108:17, 108:19, 108:22, 108:25
**Lee** [1] - 106:11
**leeway** [1] - 75:21
**legal** [1] - 22:22
**legitimately** [1] - 108:12
**letter** [10] - 22:8, 24:24, 25:5, 26:6, 27:2, 36:1, 39:2, 46:16, 100:22, 107:6
**letters** [1] - 36:4
**LEWIN** [4] - 115:20, 115:23, 115:25, 116:5
**Lewin** [1] - 115:20
**LexisNexis** [7] - 106:20, 106:21, 106:24, 107:3, 107:6, 107:11, 109:6
**life** [1] - 66:9
**lifetime** [1] - 30:22
**LightBox** [1] - 42:14
**likely** [2] - 34:2, 34:6
**limitations** [1] - 84:1
**limited** [4] - 23:3, 45:25, 48:11, 79:15
**line** [1] - 64:3
**list** [35] - 23:17, 37:20, 41:18, 41:21, 42:3, 54:11, 55:21, 55:24, 56:5, 56:21, 58:16, 61:24, 64:24, 65:4, 65:7, 65:12, 66:7, 66:12, 67:1, 67:19, 95:5, 101:22, 111:16, 111:18, 111:19, 117:13, 117:16, 117:19, 117:20, 117:23
**listen** [1] - 55:18
**listening** [1] - 17:10
**lists** [4] - 36:24, 54:17, 63:21, 111:23
**litigate** [3] - 45:7,

**mass** [1] - 80:12
**litigated** [2] - 45:14, 84:4
**litigation** [2] - 22:9, 92:23
**live** [1] - 108:13
**lives** [1] - 108:13
**LLCs** [1] - 19:11
**local** [2] - 60:12, 116:2
**logistical** [1] - 106:14
**look** [16] - 20:11, 20:18, 20:19, 30:16, 55:21, 59:18, 65:6, 67:14, 93:17, 95:23, 96:12, 104:8, 108:23, 109:22, 110:16
**looked** [2] - 53:21, 108:14
**looking** [1] - 34:12
**looks** [2] - 20:17, 61:2
**lost** [1] - 99:12
**loud** [2] - 29:16, 70:6
**low** [1] - 74:7
**low-hanging** [1] - 74:7
**Lowenstein** [1] - 109:5
**lowest** [1] - 34:3

**M**

**M-A-O** [1] - 66:20
**MacDonald** [6] - 47:10, 47:12, 47:18, 48:6, 48:15
**mailbox** [1] - 39:1
**main** [3] - 35:18, 60:24, 60:25
**maintain** [2] - 40:18, 93:5
**majority** [2] - 104:2, 104:7
**management** [2] - 95:23, 96:13
**Management** [1] - 115:21
**mandatory** [1] - 75:17
**MAO** [8] - 66:17, 66:20, 66:23, 66:25, 67:4, 103:17, 105:8, 105:16
**Mao** [3] - 66:17, 66:20, 103:17
**maps** [1] - 51:4
**Marder** [2] - 35:7, 111:14
**Marie** [1] - 119:11
**Mark** [3] - 66:17, 103:17, 110:4
**mark** [1] - 66:20

**mass** [1] - 80:12
**massive** [1] - 100:1
**material** [4] - 92:10, 93:7, 93:10, 93:13
**matter** [24] - 18:3, 18:4, 23:23, 25:17, 26:13, 26:15, 28:14, 28:24, 29:2, 29:22, 30:10, 32:6, 32:15, 42:20, 63:11, 99:8, 105:14, 110:6, 114:1, 114:4, 114:5, 114:11, 114:14, 119:8
**matters** [2] - 16:14, 92:6
**McGee** [5] - 115:4, 115:7, 115:13, 115:16
**MDL** [1] - 100:18
**mean** [29] - 25:9, 26:16, 27:11, 28:2, 49:21, 49:22, 55:1, 58:3, 58:17, 59:3, 61:18, 68:11, 69:5, 70:21, 71:12, 72:18, 72:19, 74:14, 74:19, 87:21, 88:17, 88:22, 95:12, 99:16, 100:17, 100:22, 101:19, 108:18
**means** [2] - 16:18, 107:2
**meet** [12] - 24:17, 25:3, 25:4, 26:5, 30:24, 48:1, 48:10, 72:19, 74:1, 77:22, 103:23, 112:23
**members** [1] - 57:5
**Memorial** [1] - 97:5
**mention** [1] - 83:13
**mentioned** [4] - 36:22, 53:7, 88:9, 110:8
**merits** [6] - 27:7, 51:14, 61:12, 90:17, 109:10, 109:19
**message** [1] - 110:12
**met** [1] - 19:10
**method** [2] - 45:19, 98:14
**midnight** [1] - 38:11
**might** [11] - 18:25, 34:22, 35:24, 43:23, 44:12, 68:2, 70:14, 70:21, 74:6, 85:25, 118:10
**mill** [1] - 76:18
**Miller** [1] - 91:20
**minimal** [2] - 19:6, 20:1

**minor** [1] - 115:23
**minute** [2] - 100:10, 109:1
**miss** [1] - 36:14
**missing** [1] - 49:7
**Mississippi** [1] - 20:14
**misunderstanding** [1] - 62:5
**Mitchell** [1] - 119:11
**modified** [1] - 59:12
**moment** [5] - 17:11, 24:5, 26:20, 58:25, 82:7
**Monday** [1] - 97:24
**month** [1] - 58:7
**months** [3] - 37:20, 101:14, 102:3
**morass** [1] - 79:5
**morning** [24] - 16:3, 16:4, 16:7, 18:10, 18:11, 21:10, 21:11, 31:12, 31:13, 33:11, 33:12, 35:3, 41:9, 41:10, 42:11, 42:12, 47:10, 47:11, 47:12, 48:16, 48:17, 48:24, 110:2, 116:13
**most** [3] - 18:22, 56:14, 57:19
**mostly** [4] - 49:12, 49:14, 97:12, 97:14
**motion** [59] - 16:18, 16:19, 16:24, 16:25, 17:3, 19:20, 23:12, 24:19, 25:22, 26:4, 29:23, 32:10, 50:23, 62:8, 68:13, 68:22, 69:20, 69:22, 71:1, 71:24, 72:11, 72:25, 73:14, 76:10, 76:14, 77:20, 82:10, 82:11, 82:20, 83:23, 91:8, 91:10, 93:14, 93:19, 94:2, 94:10, 95:22, 96:1, 96:6, 96:17, 98:10, 98:16, 105:9, 109:20, 110:16, 110:21, 110:22, 110:25, 111:2, 112:13, 112:14, 112:18, 113:12, 115:8, 116:14, 116:17, 116:19
**motions** [40] - 16:16, 18:5, 20:24, 21:19, 21:21, 23:2, 24:7, 25:10, 68:3, 68:18, 70:20, 85:6, 85:7, 87:11, 93:16, 95:11, 95:18, 96:19, 98:3,

98:15, 98:25, 99:23, 100:5, 100:8, 100:11, 101:12, 102:9, 102:12, 110:8, 110:15, 111:10, 113:7, 113:9, 113:13, 113:15, 114:1, 114:15, 114:18, 114:24, 115:14
**move** [19] - 31:5, 50:23, 53:3, 68:19, 69:1, 71:13, 73:24, 75:7, 83:8, 83:19, 83:20, 85:18, 86:18, 94:11, 95:4, 101:2, 103:9, 104:19, 106:6
**moved** [6] - 18:21, 102:18, 102:21, 103:1, 103:6, 103:10
**moving** [3] - 33:25, 34:9, 112:11
**MR** [370] - 18:7, 18:10, 18:12, 18:14, 19:7, 19:9, 20:3, 20:7, 20:9, 21:2, 21:5, 21:9, 21:11, 21:15, 21:23, 22:3, 22:11, 23:25, 24:2, 24:4, 24:10, 24:15, 24:21, 25:2, 25:21, 26:19, 26:22, 27:8, 27:13, 27:16, 27:25, 28:4, 28:8, 28:12, 28:17, 28:21, 29:4, 29:12, 30:6, 30:11, 30:15, 30:23, 31:13, 31:16, 31:21, 32:3, 32:10, 32:13, 32:18, 33:2, 33:5, 33:11, 33:13, 33:18, 33:21, 35:1, 36:12, 41:4, 41:10, 41:13, 41:23, 42:11, 42:13, 42:18, 42:23, 43:23, 44:18, 44:20, 44:24, 45:15, 46:4, 46:9, 46:12, 46:17, 46:23, 47:4, 47:10, 47:12, 47:18, 48:6, 48:15, 48:17, 49:25, 50:8, 50:10, 50:17, 50:20, 51:13, 51:18, 51:20, 51:23, 52:2, 52:7, 52:15, 52:17, 52:20, 52:23, 53:1, 53:7, 53:12, 53:16, 53:23, 54:2, 54:6, 54:8, 54:23, 55:6, 55:9, 55:13, 55:15, 55:20, 56:1, 56:6, 56:9, 56:14, 56:22,

57:14, 57:18, 57:25, 58:5, 58:12, 58:17, 59:5, 59:10, 59:18, 59:21, 59:25, 60:5, 60:7, 60:20, 60:23, 61:16, 61:19, 61:22, 61:25, 62:4, 62:23, 63:1, 63:4, 63:9, 63:15, 64:1, 64:9, 64:14, 64:17, 64:20, 64:22, 65:1, 65:3, 65:8, 65:11, 65:17, 65:20, 66:1, 66:5, 66:11, 66:14, 66:16, 66:17, 66:20, 66:23, 66:25, 67:4, 67:12, 67:17, 67:22, 68:5, 68:9, 68:13, 68:21, 69:2, 69:4, 69:7, 69:16, 69:25, 70:24, 71:5, 71:9, 71:21, 72:17, 72:23, 73:2, 73:9, 73:13, 73:24, 74:6, 74:12, 74:16, 74:22, 75:1, 75:5, 75:24, 76:11, 76:16, 76:22, 77:1, 77:4, 77:8, 78:1, 78:9, 78:11, 78:13, 78:16, 78:18, 79:8, 79:14, 79:21, 80:1, 80:8, 80:14, 81:3, 81:6, 81:9, 81:12, 81:14, 81:18, 81:21, 81:23, 82:1, 83:3, 83:6, 83:18, 84:10, 84:14, 84:18, 84:21, 84:24, 85:2, 85:4, 85:11, 85:13, 85:18, 86:3, 86:5, 86:9, 86:14, 86:18, 86:23, 87:1, 87:4, 87:7, 87:9, 87:15, 87:20, 88:1, 88:8, 88:19, 88:21, 88:25, 89:3, 89:12, 89:14, 89:18, 89:25, 90:2, 90:13, 91:5, 91:10, 91:20, 91:23, 92:2, 92:5, 93:10, 93:13, 93:22, 94:4, 94:6, 94:12, 94:15, 94:17, 94:19, 94:23, 94:25, 95:1, 95:3, 95:14, 95:21, 96:7, 96:9, 96:11, 96:16, 96:21, 96:24, 96:25, 97:2, 97:8, 97:11, 97:14, 97:17, 97:21, 98:1, 99:6, 99:10, 99:18, 99:21, 99:25,

100:5, 100:9,
100:13, 100:17,
101:20, 101:25,
102:16, 102:18,
102:21, 103:3,
103:17, 105:8,
105:16, 106:9,
106:11, 106:14,
106:17, 107:8,
107:10, 107:16,
107:23, 108:1,
108:7, 108:10,
108:17, 108:19,
108:22, 108:25,
109:2, 109:5, 109:9,
110:1, 110:4,
110:10, 110:18,
110:20, 110:23,
111:2, 111:5, 111:7,
111:8, 111:12,
112:6, 112:9,
112:22, 113:4,
115:4, 115:7,
115:13, 115:16,
115:20, 115:23,
115:25, 116:5,
116:7, 116:13,
116:16, 116:20,
116:24, 117:2,
117:4, 117:7,
117:11, 117:17,
117:20, 118:9,
118:13, 118:18,
118:24, 119:1, 119:3
**MS** [33] - 35:4, 35:6,
35:10, 35:13, 35:16,
36:1, 36:5, 36:7,
37:4, 37:6, 37:8,
37:16, 38:7, 38:10,
38:13, 38:16, 38:22,
38:24, 39:6, 39:9,
39:15, 39:19, 39:22,
40:6, 40:8, 40:14,
40:17, 40:25, 41:7,
111:13, 111:19,
112:2, 112:5
**multidistrict** [1] - 22:9
**multiple** [12] - 17:20,
54:15, 55:2, 57:17,
57:19, 57:23, 90:20,
90:24, 100:8,
102:12, 113:18
**MyHeritage** [1] - 48:19

## N

**name** [23] - 17:17,
17:18, 17:22, 35:5,
35:6, 35:8, 38:9,
38:23, 41:10, 41:12,
48:17, 52:22, 52:23,

65:3, 65:13, 65:17,
66:19, 90:1, 90:23,
94:20, 106:10,
109:4, 116:7
**named** [4] - 20:10,
51:3, 90:22, 91:16
**names** [13] - 38:5,
51:10, 52:1, 52:12,
55:4, 57:12, 65:12,
72:6, 74:10, 75:19,
87:17, 95:5, 109:12
**narrowly** [1] - 64:11
**nature** [2] - 44:11,
58:21
**nearly** [1] - 27:4
**necessarily** [6] -
32:24, 34:12, 61:18,
71:15, 95:19, 99:25
**necessary** [5] - 37:2,
47:20, 60:14, 69:11,
92:13
**need** [12] - 19:5, 20:1,
23:16, 23:20, 34:19,
58:19, 73:19, 80:22,
94:9, 95:11, 113:16,
115:2
**needed** [1] - 73:23
**needing** [1] - 62:8
**needlessly** [1] - 48:8
**needs** [3] - 23:13,
112:17
**never** [2] - 40:5,
104:11
**New** [20] - 16:9, 16:13,
17:4, 18:16, 18:19,
23:9, 29:14, 32:21,
32:23, 33:4, 33:5,
38:10, 54:22, 79:2,
80:17, 87:22,
106:22, 107:12,
107:18, 110:23
**new** [1] - 101:17
**Newark** [1] - 17:7
**next** [3] - 86:13, 113:6,
113:8
**nickel** [1] - 59:7
**nine** [1] - 102:3
**noble** [1] - 26:23
**nobody** [2] - 74:15,
81:13
**nondisclosure** [1] -
58:20
**none** [1] - 26:14
**normal** [1] - 76:17
**normally** [2] - 49:22,
76:13
**note** [3] - 32:5, 32:18,
35:20
**nothing** [2] - 87:10,
119:1

**notice** [9] - 16:17,
60:13, 71:12, 72:18,
110:21, 110:25,
116:14, 116:17,
116:18
**notion** [2] - 41:16,
50:25
**Number** [3] - 21:16,
35:11, 48:19
**number** [16] - 17:21,
22:23, 31:17, 36:8,
41:13, 41:19, 41:23,
41:25, 56:1, 57:2,
69:1, 70:9, 80:18,
108:16, 108:17,
110:19
**numbers** [6] - 33:15,
41:21, 56:24, 65:18,
81:22, 87:22

## O

**objection** [1] - 116:3
**obtained** [1] - 92:24
**obtaining** [1] - 45:16
**obviate** [1] - 34:19
**obviously** [24] - 17:13,
18:1, 19:21, 19:24,
26:16, 31:19, 32:23,
34:13, 37:12, 38:5,
49:21, 58:4, 61:4,
61:12, 63:5, 67:6,
69:6, 69:17, 87:2,
89:16, 96:8, 114:10,
115:15, 118:20
**occur** [1] - 98:9
**occurring** [1] - 88:4
**offensive** [1] - 117:17
**offered** [1] - 78:22
**office** [4] - 46:16,
110:12, 116:16,
117:1
**officer** [9] - 54:21,
55:10, 56:4, 60:17,
62:11, 79:19, 80:16,
80:24, 81:15
**officers** [5] - 63:11,
80:5, 87:23, 89:1,
92:19
**officials** [1] - 89:1
**often** [1] - 83:16
**omnibus** [1] - 69:10
**once** [13] - 29:16,
30:13, 49:22, 50:7,
70:5, 76:1, 77:2,
85:25, 90:6, 101:22,
103:8, 113:11,
117:23
**one** [71] - 17:9, 17:21,
19:17, 19:22, 21:15,

22:11, 24:7, 24:10,
26:2, 28:5, 30:19,
31:23, 32:7, 33:15,
33:16, 33:18, 34:16,
35:22, 36:7, 36:8,
36:23, 41:13, 41:20,
42:25, 43:24, 45:4,
45:19, 47:16, 49:16,
50:10, 53:3, 56:7,
56:11, 57:21, 57:23,
58:1, 58:19, 59:21,
60:5, 60:24, 61:7,
63:18, 65:3, 65:12,
65:14, 67:18, 69:9,
72:10, 79:21, 80:20,
83:24, 84:6, 86:12,
90:19, 92:12,
100:21, 102:5,
103:20, 104:17,
105:3, 105:16,
106:3, 106:14,
106:18, 106:24,
110:10, 112:6,
112:11, 115:17
**ones** [9] - 21:21,
28:13, 29:13, 56:10,
71:4, 71:9, 103:7,
105:6, 106:3
**ongoing** [1] - 32:20
**online** [1] - 90:24
**open** [3] - 16:1, 61:17,
61:18
**opened** [1] - 116:13
**opening** [1] - 60:15
**operates** [1] - 57:22
**operating** [1] - 92:25
**operation** [2] - 45:17,
46:6
**operational** [1] - 61:10
**opportunity** [4] -
24:17, 25:3, 70:4,
93:17
**opposed** [1] - 49:4
**opposing** [2] - 103:20,
104:3
**opposite** [1] - 46:1
**opposition** [2] - 93:25,
113:11
**opted** [1] - 80:10
**Oracle** [1] - 42:14
**order** [44] - 16:20,
16:21, 16:24, 17:23,
23:12, 28:8, 48:1,
48:6, 48:10, 49:16,
49:24, 58:20, 58:25,
59:1, 59:8, 59:11,
59:14, 60:10, 61:23,
62:17, 66:5, 82:21,
82:22, 83:12, 83:16,
84:8, 84:11, 86:2,

87:19, 88:6, 88:12,
88:13, 98:16, 98:19,
107:24, 110:17,
111:21, 113:6,
113:22, 114:14,
116:22, 116:23,
118:23
**ordering** [2] - 108:4
**orderly** [2] - 25:14,
34:4
**orders** [2] - 17:23,
59:6
**ordinary** [1] - 83:23
**organized** [2] - 34:4,
70:1
**organizing** [1] - 45:19
**otherwise** [1] - 41:20
**ought** [2] - 100:11,
118:11
**ourselves** [2] - 25:11,
31:5
**outsider** [2] - 60:25,
61:2
**own** [2] - 52:10, 53:9

## P

**P-A-R-I-K-H** [1] -
52:24
**P-U-R-C-A-R-O** [1] -
35:10
**p.m** [1] - 119:5
**papers** [2] - 17:7,
60:13
**pardon** [4] - 64:22,
94:6, 101:20, 112:6
**parent** [1] - 57:22
**PARIKH** [68] - 52:20,
52:23, 53:1, 53:7,
53:12, 53:16, 53:23,
54:2, 54:6, 54:8,
54:23, 55:6, 55:9,
55:13, 55:15, 55:20,
56:1, 56:6, 56:9,
56:14, 56:22, 57:14,
57:18, 57:25, 58:5,
58:12, 58:17, 59:5,
59:10, 59:18, 59:21,
59:25, 60:5, 60:7,
60:20, 60:23, 61:16,
61:19, 61:22, 61:25,
62:4, 62:23, 63:1,
63:4, 63:9, 63:15,
64:1, 64:9, 64:14,
64:17, 64:20, 65:17,
89:25, 90:2, 90:13,
94:19, 96:25, 111:8,
111:12, 117:4,
117:7, 117:11,
117:17, 117:20,
118:9, 118:13,

118:18, 118:24
**Parikh** [5] - 52:20,
52:25, 90:2, 111:9,
117:4
**part** [8] - 26:18, 62:12,
88:18, 89:10, 89:13,
101:5, 105:25,
107:23
**partial** [1] - 92:15
**partially** [1] - 104:14
**participate** [1] - 34:14
**participation** [1] -
34:20
**particular** [2] - 33:9,
69:10
**particularly** [1] - 103:9
**parties** [13] - 34:4,
34:13, 50:23, 74:7,
76:1, 76:21, 76:24,
82:11, 91:16, 98:13,
98:22, 100:9, 100:19
**parties-in-interest** [1]
- 91:16
**parts** [1] - 101:6
**party** [6] - 20:12,
85:23, 91:15, 91:24,
106:19
**party-in-interest** [2] -
91:15, 91:24
**path** [2] - 68:17, 102:7
**pattern** [1] - 109:23
**pay** [1] - 111:6
**pending** [3] - 107:15,
107:16, 114:20
**Pennsylvania** [1] -
17:2
**People** [1] - 33:14
**people** [41] - 17:6,
17:10, 17:14, 20:20,
23:7, 23:18, 30:17,
38:1, 38:3, 38:8,
39:19, 41:21, 42:5,
51:7, 53:8, 54:4,
54:8, 56:14, 57:5,
58:22, 67:5, 68:21,
69:18, 70:19, 70:22,
71:2, 71:10, 71:25,
74:16, 77:19, 77:21,
80:2, 80:8, 80:15,
81:14, 81:24, 92:18,
100:25, 101:3,
111:20, 114:23
**people's** [5] - 44:15,
44:22, 51:5, 81:20,
108:13
**PeopleConnect** [1] -
42:15
**Pepper** [1] - 21:12
**per** [1] - 90:13
**percent** [1] - 90:6

**perhaps** [10] - 50:12,
58:14, 81:9, 85:6,
85:11, 85:13, 89:1,
93:3, 100:9, 117:22
**period** [3] - 43:20,
74:24, 83:1
**permitted** [3] - 37:13,
84:8, 93:24
**person** [9] - 17:12,
47:6, 47:7, 52:7,
64:10, 71:12, 90:9,
94:20, 118:16
**personal** [33] - 22:24,
26:13, 26:15, 27:18,
28:1, 28:12, 28:16,
28:25, 29:7, 29:9,
29:11, 29:21, 30:7,
30:9, 30:17, 33:25,
45:24, 49:6, 49:10,
49:19, 49:20, 53:9,
62:25, 66:7, 70:13,
79:16, 80:21, 82:3,
82:13, 83:21, 84:1,
85:8, 86:24
**personally** [3] - 65:14,
87:17, 107:5
**persons** [12] - 36:25,
39:24, 46:24, 56:24,
104:25, 107:1,
107:2, 109:11,
109:16, 117:13,
117:16, 117:19
**perspective** [3] -
33:21, 60:12, 109:10
**petition** [1] - 84:24
**phone** [8] - 17:10,
41:21, 41:25, 57:2,
65:17, 80:18, 81:22,
87:22
**phrase** [1] - 117:16
**pick** [1] - 84:7
**picked** [1] - 46:15
**picture** [1] - 99:19
**pictures** [1] - 51:4
**PII** [1] - 87:17
**pile** [1] - 101:10
**place** [3] - 68:19,
87:11, 118:17
**plaintiff** [10] - 16:8,
19:13, 19:23, 20:10,
20:20, 20:21, 21:19,
22:12, 25:11, 90:22
**plaintiffs** [48] - 18:12,
20:6, 20:22, 22:5,
23:6, 23:11, 23:17,
24:17, 25:5, 26:5,
26:9, 26:11, 26:17,
30:24, 34:11, 38:1,
40:23, 41:1, 41:19,
42:3, 42:18, 42:20,

43:18, 45:17, 46:4,
46:5, 48:9, 48:11,
48:24, 50:18, 52:21,
64:1, 66:6, 66:18,
91:4, 91:16, 103:18,
104:12, 104:15,
104:24, 106:12,
107:8, 111:9, 113:7,
115:5, 115:11,
117:5, 117:13
**plaintiffs'** [10] - 18:4,
18:6, 19:15, 36:20,
44:14, 45:6, 47:23,
51:3, 66:22, 92:24
**plan** [1] - 112:25
**plausibility** [1] - 85:14
**pleading** [1] - 85:14
**pleadings** [1] - 85:7
**plethora** [1] - 16:16
**point** [15] - 36:19,
37:5, 39:19, 40:8,
50:5, 52:16, 70:6,
88:9, 90:19, 91:2,
104:22, 114:22,
115:23, 116:11,
118:12
**pointed** [1] - 69:13
**points** [3] - 33:22,
63:17, 117:11
**police** [11] - 54:21,
55:10, 56:4, 60:17,
63:10, 79:18, 80:16,
80:24, 87:23, 88:25,
92:19
**Politico** [3] - 92:21,
92:22
**position** [4] - 20:23,
27:17, 108:7, 113:14
**possible** [3] - 25:25,
45:19, 49:21
**possibly** [3] - 27:19,
41:24, 59:17
**posture** [1] - 73:7
**potential** [3] - 44:9,
68:17, 73:6
**potentially** [8] - 43:5,
79:5, 79:8, 80:3,
80:14, 87:10, 100:6,
103:14
**powers** [1] - 118:21
**practical** [4] - 30:16,
61:15, 99:17, 114:5
**practice** [2] - 62:8,
76:23
**practices** [2] - 37:22,
47:5
**precede** [1] - 17:17
**prejudice** [8] - 63:2,
63:3, 64:14, 85:24,
95:6, 98:18, 114:10,

114:16
**preliminary** [2] -
16:15, 25:17
**prepared** [1] - 109:20
**present** [2] - 25:14,
116:2
**presents** [1] - 22:7
**preserved** [2] - 79:15,
84:14
**press** [3] - 64:5,
64:11, 92:23
**pretty** [1] - 71:21
**prevent** [3] - 63:5,
86:20, 86:22
**preventing** [1] - 44:21
**prevents** [1] - 102:13
**previewed** [1] - 43:17
**previously** [1] - 112:3
**privacy** [6] - 26:23,
26:25, 55:15, 55:20,
62:11, 62:13
**private** [2] - 27:1,
44:16
**pro** [10] - 16:16, 16:19,
16:24, 16:25, 110:8,
110:15, 111:9,
115:14, 116:2,
116:10
**proactively** [1] - 40:12
**problem** [7] - 30:5,
30:6, 52:13, 52:15,
61:10, 101:11, 104:6
**problems** [2] - 65:12,
104:17
**procedure** [3] - 76:17,
76:20, 113:17
**proceed** [1] - 46:1
**proceeding** [3] -
78:25, 79:11, 103:21
**Proceedings** [1] -
119:5
**proceedings** [2] -
116:1, 119:8
**PROCEEDINGS** [1] -
16:1
**process** [9] - 36:13,
43:14, 43:15, 44:1,
50:23, 77:23, 90:3,
99:22, 102:12
**produce** [9] - 23:11,
23:15, 23:16, 23:17,
58:2, 58:15, 87:16,
94:22, 94:24
**produced** [7] - 23:4,
23:11, 60:3, 60:9,
67:6, 88:14, 88:15
**production** [2] -
36:24, 88:5
**productive** [1] - 117:9
**prohibit** [1] - 45:1

**promptly** [1] - 67:20
**Prophete** [1] - 47:13
**proposal** [2] - 31:4,
49:5
**propose** [3] - 24:15,
77:18
**proposed** [4] - 16:20,
16:22, 16:23, 116:23
**proposing** [2] -
103:11, 103:12
**prosecute** [2] - 89:4,
100:2, 102:2
**prosecuting** [1] -
102:13
**prosecutor** [2] -
60:17, 62:10
**prosecutors** [3] -
80:6, 87:23, 92:19
**protect** [11] - 26:23,
33:6, 37:23, 41:20,
49:24, 51:5, 56:18,
82:15, 82:17, 83:16,
84:9
**protected** [4] - 42:6,
42:7, 62:16, 105:1
**protecting** [5] - 26:25,
42:5, 61:5, 61:6,
101:23
**Protection** [1] -
107:13
**protection** [1] - 34:23
**protections** [2] -
37:10, 38:3
**protective** [6] - 23:12,
58:20, 59:6, 59:8,
59:11, 60:9
**provide** [7] - 22:18,
42:3, 57:12, 80:11,
90:15, 117:13
**provided** [6] - 41:25,
54:13, 54:14, 54:17,
61:11, 67:2
**provides** [2] - 55:16,
55:20
**providing** [3] - 53:4,
61:10, 109:14
**provision** [4] - 59:13,
82:21, 84:5, 114:16
**public** [5] - 26:24,
27:1, 51:24, 63:7,
80:18
**publish** [1] - 87:22
**published** [1] - 57:9
**PURCARO** [34] - 35:4,
35:6, 35:10, 35:13,
35:16, 36:1, 36:5,
36:7, 36:12, 37:4,
37:6, 37:8, 37:16,
38:7, 38:10, 38:13,
38:16, 38:22, 38:24,

39:6, 39:9, 39:15,
39:19, 39:22, 40:6,
40:8, 40:14, 40:17,
40:25, 41:7, 111:13,
111:19, 112:2, 112:5
**Purcaro** [2] - 35:6,
111:13
**purchase** [1] - 17:14
**purpose** [1] - 36:21
**purposes** [2] - 42:1,
91:13
**pursuant** [2] - 60:9,
107:12
**pursue** [3] - 27:20,
45:25, 89:4
**pursuing** [1] - 104:13
**push** [5] - 56:7, 56:8,
56:11, 56:12, 56:13
**put** [14] - 16:20, 25:12,
30:11, 52:10, 56:25,
57:4, 83:16, 87:19,
90:7, 100:6, 104:18,
114:8, 117:25,
118:23
**putting** [1] - 17:6

### Q

**questions** [3] - 43:2,
43:3, 48:13
**quick** [3] - 41:15,
50:10, 116:10
**quickly** [1] - 41:19,
51:10, 103:9
**Quinn** [1] - 116:8
**quo** [1] - 40:18

### R

**rabbit** [2] - 95:10,
95:25
**raise** [15] - 18:3,
34:16, 36:23, 49:21,
67:24, 83:1, 83:2,
83:15, 83:25, 84:1,
84:6, 84:7, 86:25,
101:5, 114:18
**raised** [11] - 24:8,
37:1, 48:22, 49:1,
67:18, 67:25, 71:24,
84:2, 86:16, 101:1,
103:20
**raises** [1] - 51:8
**raising** [3] - 43:1,
82:23, 85:24
**Raj** [1] - 52:20
**RAJ** [1] - 52:23
**Rajiv** [3] - 90:2, 111:8,
117:4
**ran** [3] - 92:21, 92:22,
112:2

**rather** [1] - 58:24
**reached** [2] - 38:2,
54:16
**read** [2] - 53:20, 63:10
**ready** [1] - 95:20
**real** [8] - 20:12, 44:18,
57:10, 63:10, 91:14,
91:15, 91:24
**really** [10] - 22:7, 34:1,
44:24, 60:16, 62:2,
62:4, 90:16, 91:24,
99:24, 108:2
**reason** [6] - 19:21,
27:17, 29:4, 35:22,
60:2, 61:7
**reasonable** [4] -
43:24, 75:16, 75:19,
117:23
**reasoning** [1] - 62:7
**reasons** [4] - 45:24,
83:4, 103:20, 106:3
**reassigned** [1] - 17:8
**receive** [1] - 54:16
**received** [4] - 16:16,
40:5, 67:8, 110:11
**receiving** [1] - 116:21
**recently** [4] - 36:14,
92:22, 107:22,
107:23
**recess** [2] - 77:25,
78:3
**recessed** [1] - 78:7
**recognize** [1] - 114:5
**recognizing** [1] -
91:17
**recommendation** [1] -
35:16
**record** [10] - 43:13,
44:3, 44:7, 44:11,
45:5, 52:22, 79:10,
111:8, 111:22, 119:8
**redact** [5] - 38:8,
41:20, 74:14, 74:25,
109:12
**redaction** [2] - 74:11,
75:16
**reduce** [1] - 95:6
**redundancy** [1] - 67:7
**redundant** [1] - 58:11
**reference** [1] - 83:12
**refile** [1] - 111:2
**refine** [2] - 59:16,
62:18
**reflected** [2] - 89:7,
93:3
**regard** [4] - 25:18,
30:6, 73:15, 103:19
**regarding** [4] - 33:23,
63:22, 64:10, 82:21
**regardless** [5] - 39:22,

39:23, 62:24, 67:20,
73:7
**registered** [1] - 92:7
**registration** [1] -
91:13
**regular** [1] - 81:18
**reiterating** [1] - 37:1
**rejected** [1] - 118:6
**rejection** [1] - 116:17
**related** [2] - 85:7,
93:20
**relationship** [1] -
46:24
**relatively** [1] - 51:9
**relax** [1] - 69:19
**released** [1] - 40:20
**relevant** [6] - 18:2,
91:3, 91:5, 91:6,
91:7, 91:10
**relief** [8] - 83:25,
87:20, 102:19,
102:22, 103:1,
103:6, 103:10,
104:13
**religion** [1] - 74:23
**remand** [48] - 18:5,
19:20, 20:24, 21:19,
21:21, 23:3, 24:19,
25:7, 26:4, 26:7,
32:10, 35:24, 48:25,
68:17, 69:1, 69:20,
77:21, 82:4, 91:8,
91:11, 93:4, 93:13,
93:14, 93:16, 93:19,
94:2, 95:7, 95:12,
95:18, 95:23, 96:1,
96:6, 96:17, 96:19,
98:3, 98:9, 98:25,
104:23, 105:11,
112:14, 113:7,
113:9, 113:11,
113:13, 114:1
**remands** [1] - 93:21
**remember** [1] - 76:20
**removal** [2] - 48:22,
60:13
**remove** [7] - 18:23,
38:20, 39:25, 40:15,
102:10, 104:18,
109:12
**removed** [12] - 16:13,
18:17, 36:9, 36:10,
39:12, 56:16, 56:19,
57:2, 72:6, 104:11,
107:19, 108:1
**rent** [1] - 107:5
**reply** [1] - 70:4
**repopulated** [1] -
104:11
**report** [2] - 64:9,

109:15
**reported** [1] - 107:1
**reporter** [7] - 17:19,
35:9, 39:10, 43:22,
64:6, 71:7, 74:18
**Reporter/**
**Transcriber** [1] -
119:12
**reports** [1] - 109:14
**represent** [10] - 21:12,
31:16, 33:13, 37:17,
48:18, 87:24, 107:8,
109:6, 110:5, 116:9
**representation** [2] -
104:7, 117:21
**represented** [2] -
20:12, 105:24
**representing** [2] -
42:14, 107:7
**request** [20] - 17:9,
23:10, 23:17, 36:25,
37:19, 39:5, 39:8,
39:13, 39:25, 46:14,
47:18, 53:16, 53:17,
57:9, 57:13, 57:25,
81:16, 90:6, 107:3,
109:18
**requested** [2] - 37:10,
60:8, 74:11
**requests** [26] - 27:5,
27:6, 37:21, 38:8,
38:17, 39:3, 39:12,
39:15, 39:20, 40:24,
43:3, 43:19, 44:4,
45:18, 46:5, 46:7,
46:9, 46:18, 53:14,
54:10, 54:16, 56:25,
57:7, 63:20
**require** [9] - 43:13,
47:7, 49:12, 50:15,
67:7, 69:18, 87:16,
91:1, 101:3
**required** [1] - 47:25
**requirement** [1] -
48:10
**requires** [3] - 45:5,
107:4, 116:17
**requiring** [2] - 61:23,
114:15
**res** [1] - 99:16
**reservation** [1] - 50:11
**reserved** [1] - 50:14
**reserving** [1] - 50:9
**resolve** [2] - 25:17,
103:23
**resolved** [4] - 30:22,
86:1, 86:15, 108:12
**respect** [11] - 24:12,
28:23, 46:2, 47:19,
57:18, 63:18, 63:22,

81:1, 93:1, 117:12,
117:20
**respond** [2] - 70:4,
101:7
**RESPONSE** [1] - 16:4
**response** [2] - 106:25,
115:11
**responses** [1] - 95:18
**rest** [3] - 67:20, 68:18,
98:19
**Restoration** [1] -
47:14
**result** [1] - 26:10
**retaining** [1] - 36:13
**retaliate** [1] - 106:25
**retaliation** [1] - 107:12
**return** [1] - 77:25
**rights** [4] - 22:14,
89:3, 114:10, 114:17
**rings** [1] - 103:3
**rise** [3] - 78:2, 78:4,
119:4
**road** [3] - 23:2, 75:23,
95:7
**Robert** [1] - 33:13
**Rockwell** [1] - 35:11
**rolling** [2] - 58:8, 59:4
**room** [2] - 58:9, 86:15,
105:23
**ROONEY** [4] - 109:2,
109:5, 109:9, 110:1
**Rooney** [1] - 109:5
**Ross** [1] - 115:20
**roughly** [1] - 22:1
**round** [2] - 87:11,
99:22
**rule** [2] - 23:9, 60:8
**Rule** [5] - 60:12,
76:15, 77:16, 83:23,
84:6
**Rules** [1] - 84:6
**rules** [3] - 49:23,
59:11, 60:13
**ruling** [1] - 27:18
**run** [2] - 18:23, 76:18
**run-of-the-mill** [1] -
76:18
**runs** [1] - 69:17
**Ryan** [1] - 115:4

### S

**S-P-A-K** [1] - 41:13
**S-T-A-L-T-A-R-I** [1] -
116:8
**safety** [2] - 26:24, 27:1
**Sanders** [1] - 21:12
**Sandler** [1] - 109:5
**satisfies** [1] - 43:25
**schedule** [6] - 25:12,

26:8, 36:15, 67:13, 98:20, 114:12
**scheduling** [1] - 21:8
**Schiller** [2] - 66:18, 106:11
**score** [1] - 94:7
**seal** [1] - 23:12
**Searchers** [1] - 33:14
**seat** [1] - 78:5
**seated** [1] - 16:5
**second** [10] - 19:7, 19:18, 23:16, 28:18, 29:6, 65:1, 87:11, 99:22, 107:10, 118:15
**secondly** [1] - 36:18
**security** [1] - 61:4
**see** [14] - 20:20, 26:19, 32:11, 39:21, 40:13, 45:21, 64:8, 70:1, 89:10, 95:24, 96:18, 102:10, 104:8, 109:23
**seek** [4] - 18:5, 48:9, 82:24, 105:11
**seeking** [4] - 37:14, 79:19, 80:24, 102:23
**seeks** [1] - 79:24
**seem** [3] - 19:3, 36:8, 68:24
**selling** [1] - 44:16
**send** [7] - 38:20, 53:14, 53:25, 55:12, 66:6, 67:8, 116:17
**sense** [7] - 23:5, 67:19, 68:24, 76:24, 97:1, 101:8, 114:22
**sensitive** [1] - 58:21
**sent** [10] - 23:19, 46:16, 46:18, 52:7, 53:8, 53:16, 53:17, 54:9, 107:2, 107:6
**separate** [6] - 43:25, 68:10, 73:4, 77:20, 88:14, 94:10
**sequenced** [1] - 25:16
**serial** [1] - 102:9
**series** [2] - 57:20
**serious** [1] - 43:3
**Serrin** [1] - 42:13
**servants** [2] - 26:24, 27:1
**served** [1] - 36:8
**server** [1] - 38:24
**service** [12] - 44:24, 52:8, 53:9, 54:6, 59:24, 59:25, 61:2, 62:2, 62:9, 62:12, 62:16, 107:3
**services** [1] - 78:22

**serving** [1] - 18:24
**set** [6] - 19:20, 19:23, 45:25, 93:16, 98:20, 108:10
**setting** [2] - 17:24, 113:22
**settle** [2] - 45:23, 73:12
**settlement** [7] - 34:11, 34:19, 34:21, 42:1, 73:6, 73:8, 77:23
**setups** [1] - 77:17
**seven** [1] - 117:22
**several** [2] - 17:23, 83:4
**shake** [1] - 45:22
**shall** [1] - 59:1
**share** [1] - 111:22
**shared** [1] - 58:22
**shares** [1] - 42:5
**SHAW** [93] - 18:7, 18:10, 18:12, 18:14, 19:7, 19:9, 20:3, 20:7, 20:9, 21:2, 21:5, 21:9, 24:4, 41:4, 50:17, 50:20, 51:13, 51:18, 51:20, 51:23, 52:2, 52:7, 52:15, 52:17, 64:22, 67:12, 67:17, 67:22, 68:5, 68:9, 68:13, 68:21, 69:2, 69:4, 69:7, 69:16, 69:25, 70:24, 71:5, 71:9, 71:21, 71:23, 72:3, 72:10, 72:17, 72:23, 73:2, 73:9, 73:13, 73:24, 74:6, 74:12, 74:16, 74:22, 75:1, 75:5, 75:24, 76:11, 76:16, 76:22, 77:1, 77:4, 77:8, 78:1, 87:9, 89:18, 94:6, 94:17, 94:25, 96:21, 96:24, 97:2, 97:8, 97:11, 97:14, 97:17, 97:21, 98:1, 99:6, 99:10, 99:18, 99:21, 99:25, 100:5, 100:9, 100:13, 100:17, 101:20, 101:25, 112:6, 112:9, 119:3
**Shaw** [17] - 18:12, 50:2, 50:16, 50:17, 53:7, 64:21, 67:11, 67:12, 78:7, 87:8, 89:17, 89:18, 94:6, 99:21, 105:17, 106:1, 112:9
**shorter** [1] - 26:2

**shotgun** [1] - 75:18
**show** [1] - 27:4
**shows** [2] - 61:9, 93:4
**shut** [2] - 38:16, 39:2
**side** [3] - 25:13, 101:21, 108:11
**sidetracked** [1] - 67:15
**Sidley** [1] - 48:18
**sign** [7] - 16:22, 34:4, 60:19, 60:22, 89:9, 110:17, 116:25
**signatory** [3] - 24:22, 35:23, 35:25
**signed** [2] - 36:1, 111:1
**significance** [1] - 92:17
**significant** [1] - 62:5
**signs** [1] - 60:3
**silly** [1] - 111:24
**silver** [1] - 96:2
**similar** [3] - 25:23, 37:18, 106:21
**simply** [5] - 44:22, 48:9, 49:17, 58:25, 64:4
**single** [1] - 66:25
**sit** [1] - 113:17
**sites** [2] - 56:16, 58:1
**sits** [2] - 107:18, 108:3
**sitting** [1] - 56:3
**situation** [2] - 37:19, 103:13
**six** [1] - 102:3
**slew** [1] - 75:12
**slightly** [1] - 97:11
**small** [1] - 47:21
**smaller** [1] - 101:9
**Smith** [3] - 47:13, 53:16, 65:13
**Smiths** [2] - 65:13, 65:24
**someone** [2] - 16:19, 17:13
**sometimes** [5] - 16:17, 17:6, 76:11, 76:12, 100:19
**somewhat** [2] - 34:15, 52:3
**somewhere** [3] - 29:23, 52:10, 118:22
**soon** [4] - 52:18, 58:2, 69:3, 96:19
**sooner** [1] - 58:14
**sorry** [4] - 27:8, 27:22, 103:17, 116:11
**Sorry** [1] - 66:17
**sort** [7] - 25:13, 34:21, 45:4, 48:2, 59:3,

113:19, 114:25
**sought** [4] - 51:11, 75:15, 82:9, 88:22
**sounds** [7] - 32:13, 68:1, 71:21, 89:8, 92:3, 111:15, 111:24
**SPAK** [3] - 41:10, 41:13, 41:23
**Spak** [1] - 41:11
**spam** [4] - 38:16, 39:1, 39:16, 52:10
**speaking** [3] - 71:6, 82:6, 91:7
**speaks** [1] - 17:17
**specifically** [3] - 83:12, 83:13, 113:22
**speculate** [1] - 88:2
**speculation** [1] - 88:2
**speech** [2] - 33:6, 33:7
**Speech** [1] - 79:2
**spell** [4] - 17:18, 35:8, 41:12, 52:22
**spoken** [1] - 50:6
**spot** [1] - 63:19
**spouse** [1] - 57:4
**spouses** [1] - 60:22
**square** [2] - 86:12, 102:5
**staged** [1] - 34:22
**staggered** [1] - 33:23
**stake** [1] - 45:3
**STALTARI** [6] - 116:7, 116:13, 116:16, 116:20, 116:24, 117:2
**Staltari** [1] - 116:8
**stand** [1] - 90:22
**standard** [5] - 59:11, 60:6, 60:19, 72:11, 89:7
**standpoint** [2] - 24:22, 25:2
**start** [3] - 25:15, 29:22, 38:11
**starting** [1] - 102:5
**starts** [1] - 97:3
**state** [13] - 18:19, 20:17, 40:11, 60:8, 63:23, 72:13, 76:14, 83:25, 90:1, 92:8, 106:10, 106:22, 107:18
**statue** [1] - 86:21
**status** [8] - 16:7, 17:24, 29:17, 40:18, 93:18, 98:5, 113:6, 115:25
**statute** [30] - 16:9, 24:14, 27:10, 29:24, 32:1, 43:4, 45:1,

45:10, 48:5, 50:15, 63:8, 70:8, 71:11, 72:2, 72:12, 72:14, 72:17, 73:21, 74:3, 74:20, 75:10, 75:16, 79:9, 82:9, 84:1, 84:16, 91:3, 101:13, 102:23, 118:7
**statutory** [4] - 43:2, 43:5, 43:9, 87:3
**stay** [19] - 18:7, 40:10, 69:15, 69:17, 70:6, 73:9, 73:10, 73:16, 74:1, 75:5, 76:11, 77:5, 87:13, 95:8, 113:11, 114:20, 114:22, 115:7, 115:10
**stayed** [7] - 30:12, 36:17, 51:1, 98:11, 98:18, 100:15, 115:12
**staying** [1] - 71:3
**stays** [1] - 77:2
**step** [7] - 20:4, 21:20, 22:4, 53:3, 94:7, 95:13, 99:19
**STICHEL** [8] - 110:4, 110:10, 110:18, 110:20, 110:23, 111:2, 111:5, 111:7
**Stichel** [1] - 110:4
**still** [16] - 18:20, 18:23, 18:24, 18:25, 19:11, 36:13, 39:23, 51:3, 74:20, 74:24, 75:3, 83:19, 83:20, 90:23, 92:20, 107:18
**STIO** [50] - 21:11, 21:15, 21:23, 22:3, 22:11, 23:25, 24:2, 24:10, 24:15, 24:21, 25:2, 25:21, 26:19, 26:22, 27:8, 27:13, 27:16, 27:25, 28:4, 28:8, 28:12, 28:17, 28:21, 29:4, 29:12, 30:6, 30:11, 30:15, 30:23, 65:1, 65:3, 65:8, 65:11, 65:20, 66:1, 66:5, 66:11, 66:14, 66:16, 95:1, 95:3, 95:14, 95:21, 96:7, 96:9, 96:11, 96:16, 112:22, 113:4, 119:1
**Stio** [2] - 21:11, 95:3
**stories** [2] - 63:10
**Strawbridge** [1] - 91:14

**streamline** [1] - 34:20
**structured** [1] - 58:1
**subject** [30] - 17:25,
18:4, 21:7, 23:23,
25:11, 25:17, 26:13,
26:15, 28:14, 28:24,
29:2, 29:22, 30:10,
32:6, 40:24, 42:20,
78:13, 78:23, 93:8,
93:18, 93:19, 98:22,
98:25, 99:8, 105:14,
114:1, 114:4,
114:11, 114:13
**subjects** [1] - 17:25
**submit** [2] - 20:24,
26:5
**submitted** [2] - 24:24,
52:1
**subscribe** [4] -
104:21, 105:2,
105:5, 105:7
**subscribers** [3] -
44:16, 78:22, 80:4
**subsequent** [1] -
116:1
**subset** [3] - 47:21,
54:8, 56:12
**substantive** [1] -
16:14
**successful** [1] - 63:6
**sufficient** [1] - 58:7
**suggest** [3] - 100:3,
105:22, 112:12
**suggested** [2] - 19:14,
89:6
**suggesting** [5] -
72:23, 75:24, 85:22,
89:8, 102:7
**suggestion** [2] -
36:15, 50:10
**suggestions** [1] -
72:21
**suggests** [1] - 92:11
**suing** [1] - 72:7
**summary** [1] - 68:2
**Superior** [3] - 16:13,
64:15, 64:18
**supplemental** [1] -
101:18
**supplied** [1] - 62:1
**supply** [2] - 51:9,
52:12
**supplying** [1] - 62:15
**supposed** [1] - 65:23
**suppress** [3] - 46:10,
88:3, 117:24
**suppressed** [2] -
103:4, 103:5
**suppressing** [1] -
104:9

**suppression** [1] -
81:16
**Supreme** [6] - 20:11,
20:13, 32:23, 84:25,
86:10
**sympathize** [1] - 36:21
**system** [4] - 38:13,
49:14, 62:10, 75:20
**systems** [2] - 61:3,
104:8
**SZYBA** [5] - 33:11,
33:13, 33:18, 33:21,
35:1
**Szyba** [1] - 33:13

# T

**tailored** [2] - 45:2,
64:11
**takedown** [1] - 107:2
**targets** [1] - 51:4
**technology** [1] - 40:3
**tee** [3] - 29:19, 30:18,
108:21
**teed** [4] - 32:14, 49:16,
70:15, 70:23
**teeing** [1] - 41:16
**telephone** [1] - 46:15
**ten** [8] - 21:13, 21:14,
43:21, 43:23, 47:22,
48:4, 56:20, 75:17
**ten-day** [2] - 43:21,
43:23
**tent** [1] - 76:3
**term** [1] - 91:24
**termed** [1] - 85:7
**terms** [29] - 28:4, 28:8,
28:9, 44:20, 59:23,
59:24, 59:25, 61:2,
62:2, 62:9, 62:12,
62:16, 64:24, 78:20,
78:23, 80:10, 88:10,
88:13, 88:15, 89:7,
89:10, 89:13, 89:21,
93:15, 104:1,
104:13, 109:19,
112:20, 114:21
**test** [1] - 104:8
**The court** [425] - 16:3,
16:5, 16:7, 16:12,
17:18, 18:9, 18:11,
18:13, 19:5, 19:8,
20:1, 20:4, 20:8,
20:25, 21:3, 21:6,
21:10, 21:14, 21:21,
21:25, 22:10, 23:22,
24:1, 24:3, 24:5,
24:12, 24:20, 24:25,
25:5, 25:14, 25:19,
26:6, 26:9, 26:12,

26:16, 26:21, 27:7,
27:9, 27:14, 27:21,
27:24, 28:2, 28:7,
28:11, 28:13, 28:20,
28:22, 29:10, 29:15,
30:3, 30:8, 30:13,
30:16, 30:21, 30:25,
31:2, 31:14, 31:15,
31:20, 32:2, 32:9,
32:12, 32:16, 32:17,
33:1, 33:3, 33:8,
33:12, 33:16, 33:20,
34:25, 35:2, 35:5,
35:8, 35:12, 35:15,
35:25, 36:4, 36:6,
36:11, 37:2, 37:5,
37:7, 37:12, 38:5,
38:8, 38:12, 38:15,
38:18, 38:23, 39:5,
39:7, 39:11, 39:18,
39:21, 40:2, 40:7,
40:13, 40:16, 40:22,
41:1, 41:5, 41:8,
41:12, 41:22, 42:9,
42:12, 42:16, 42:22,
44:17, 44:19, 44:23,
45:12, 46:2, 46:7,
46:11, 46:13, 46:20,
47:1, 47:8, 47:11,
47:17, 48:3, 48:14,
48:16, 49:15, 50:2,
50:9, 50:12, 50:16,
50:19, 51:8, 51:17,
51:19, 51:21, 51:24,
52:6, 52:14, 52:16,
52:18, 52:22, 52:25,
53:6, 53:11, 53:15,
53:19, 53:24, 54:5,
54:7, 54:20, 54:24,
55:8, 55:10, 55:14,
55:17, 55:24, 56:3,
56:7, 56:13, 56:17,
57:11, 57:15, 57:24,
58:2, 58:11, 58:15,
58:24, 59:2, 59:6,
59:15, 59:20, 59:23,
60:2, 60:6, 60:16,
60:21, 61:14, 61:17,
61:20, 61:23, 62:1,
62:14, 62:17, 62:24,
63:2, 63:5, 63:13,
63:25, 64:8, 64:13,
64:15, 64:19, 64:23,
65:2, 65:6, 65:10,
65:16, 65:19, 65:21,
66:4, 66:9, 66:12,
66:15, 66:19, 66:21,
66:24, 67:3, 67:6,
67:15, 67:18, 67:25,
68:4, 68:6, 68:10,
68:20, 68:25, 69:3,

69:5, 69:15, 69:17,
70:3, 71:4, 71:6,
71:8, 71:15, 71:22,
72:1, 72:4, 72:15,
72:22, 73:1, 73:8,
73:10, 73:19, 74:3,
74:9, 74:13, 74:19,
74:23, 75:3, 75:8,
75:9, 76:9, 76:13,
76:17, 76:25, 77:3,
77:7, 77:24, 78:5,
78:10, 78:12, 78:15,
78:17, 79:5, 79:7,
79:13, 79:17, 79:23,
80:7, 80:13, 80:16,
81:5, 81:8, 81:11,
81:13, 81:17, 81:20,
81:22, 81:25, 82:6,
83:5, 83:11, 83:22,
84:13, 84:15, 84:17,
84:18, 84:20, 84:23,
85:1, 85:3, 85:10,
85:12, 85:17, 85:21,
86:2, 86:4, 86:6,
86:12, 86:17, 86:20,
86:24, 87:2, 87:5,
87:8, 87:18, 87:25,
88:7, 88:17, 88:20,
88:22, 89:2, 89:10,
89:13, 89:17, 89:23,
90:1, 90:12, 91:1,
91:9, 91:19, 91:22,
92:1, 92:4, 93:9,
93:12, 93:15, 93:23,
94:5, 94:14, 95:2,
95:8, 95:11, 95:15,
96:4, 96:8, 96:10,
96:14, 96:17, 96:23,
97:3, 97:9, 97:13,
97:16, 97:19, 97:22,
98:3, 98:17, 98:19,
99:7, 99:11, 99:20,
99:24, 100:3, 100:7,
100:10, 100:14,
101:11, 101:24,
102:14, 102:17,
102:20, 103:2,
103:11, 103:12,
103:16, 104:21,
105:5, 105:6,
105:13, 106:7,
106:10, 106:13,
106:16, 107:7,
107:9, 107:15,
107:21, 107:25,
108:6, 108:9,
108:14, 108:18,
108:20, 108:23,
109:1, 109:3, 109:8,
109:25, 110:2,
110:9, 110:16,

110:19, 110:21,
110:25, 111:4,
111:6, 111:11,
111:17, 111:25,
112:4, 112:8,
112:15, 112:25,
113:3, 113:5, 114:2,
114:4, 115:6,
115:12, 115:14,
115:18, 115:22,
115:24, 116:3,
116:6, 116:12,
116:15, 116:19,
116:22, 116:25,
117:6, 117:10,
117:15, 117:18,
118:1, 118:3,
118:10, 118:17,
118:19, 118:25,
119:2
**theft** [1] - 107:1
**Theft** [1] - 107:13
**themselves** [2] - 52:8,
78:23
**theoretically** [1] -
105:13
**theory** [4] - 22:5,
74:21, 75:3, 92:15
**thereafter** [2] - 93:25,
113:10
**therefore** [1] - 48:5
**they've** [5] - 17:7,
72:7, 74:23, 104:6,
117:1
**thinking** [7] - 29:16,
69:6, 69:7, 70:5,
77:7, 96:4, 98:12
**third** [4] - 65:20, 66:1,
92:25
**thousands** [4] - 22:17,
23:20, 38:11, 75:19
**thread** [1] - 22:11
**three** [4] - 33:13,
37:20, 53:17, 69:16
**threshold** [6] - 19:10,
26:12, 33:24, 34:2,
35:17, 40:9
**threw** [1] - 52:11
**throw** [5] - 31:4,
52:14, 63:20, 66:13,
73:22
**timeline** [1] - 90:7
**timely** [1] - 108:2
**timing** [1] - 34:24
**timing-wise** [1] -
34:24
**today** [12] - 18:2,
32:10, 37:18, 52:19,
69:18, 71:10, 90:22,
94:2, 114:21, 115:2,

117:8, 118:25
**together** [5] - 25:12,
36:2, 98:13, 98:22,
112:18
**tomorrow** [1] - 69:19
**took** [1] - 70:7
**tool** [1] - 58:18
**tools** [4] - 55:16,
55:21, 62:11, 62:13
**topic** [1] - 48:11
**total** [1] - 54:4
**towards** [2] - 64:11,
75:25
**town** [2] - 54:21, 80:17
**Track** [2] - 106:4
**track** [6] - 34:21,
41:23, 68:15, 68:17,
75:8, 77:21
**traditional** [1] - 91:13
**transcript** [3] - 17:13,
119:7
**transferred** [2] -
45:24, 107:19
**trend** [2] - 91:17,
91:20
**Trenton** [1] - 17:7
**trial** [2] - 97:3, 97:18
**tried** [1] - 40:4
**Troutman** [1] - 21:12
**true** [2] - 26:18, 33:19
**truly** [1] - 104:9
**trusting** [1] - 17:4
**try** [10] - 20:11, 25:12,
26:6, 31:4, 61:14,
77:4, 102:10, 104:5,
104:23, 118:10
**trying** [7] - 25:24,
39:6, 39:19, 43:20,
90:17, 105:17,
105:21
**turn** [3] - 17:16, 23:6,
64:20
**TURNER** [16] - 42:11,
42:13, 42:18, 42:23,
43:23, 44:18, 44:20,
44:24, 45:15, 46:4,
46:9, 46:12, 46:17,
46:23, 47:4
**Turner** [2] - 42:13,
49:11
**two** [13] - 31:21,
33:21, 41:23, 49:1,
54:14, 56:11, 58:1,
60:25, 63:17, 65:9,
65:11, 87:24, 117:11
**Twombly/Iqbal** [1] -
85:13
**Tyler** [1] - 48:18
**type** [3] - 40:1, 57:10,
77:11

**typed** [1] - 16:23
**typically** [1] - 83:8

## U

**U.S.C** [1] - 84:19
**ultimately** [4] - 61:9,
104:22, 105:11,
105:19
**uncheck** [1] - 56:15
**unclear** [1] - 48:23
**unconstitutional** [7] -
30:1, 32:4, 74:3,
75:11, 76:3, 79:9,
118:7
**under** [28] - 19:3, 19:6,
20:1, 20:17, 22:15,
23:9, 30:3, 30:20,
33:3, 37:10, 38:4,
42:5, 43:4, 43:6,
49:23, 60:8, 71:11,
72:11, 72:13, 72:17,
74:20, 75:16, 76:14,
79:1, 84:19, 89:3,
92:25, 93:11
**understood** [4] -
58:12, 117:2, 118:9
**unfortunately** [1] -
116:16
**uniform** [1] - 89:9
**uniformly** [1] - 88:11
**unique** [3] - 22:7,
22:22, 34:6
**unless** [4] - 48:12,
56:19, 60:14, 116:4
**unnecessary** [1] -
47:4
**unpublished** [1] -
65:17
**unverified** [1] - 23:19
**up** [32] - 17:24, 18:9,
19:23, 23:22, 25:5,
26:8, 27:24, 29:19,
30:3, 30:19, 32:14,
32:16, 32:23, 41:16,
46:15, 49:16, 53:2,
58:15, 68:18, 68:23,
70:15, 70:23, 76:3,
77:5, 78:11, 86:10,
87:13, 89:19, 90:20,
108:21, 112:24
**urgency** [6] - 26:16,
27:3, 27:4, 35:21,
36:22, 41:18
**US** [4] - 33:3, 33:7,
84:25, 91:17
**usage** [2] - 62:10,
62:12
**USC** [1] - 95:15
**useful** [1] - 42:1

**user** [1] - 81:18
**users** [3] - 61:6,
78:21, 80:4
**utilize** [1] - 68:23

## V

**vacuum** [1] - 91:7
**valid** [3] - 39:22, 43:4,
105:9
**validity** [1] - 43:2
**various** [1] - 18:21
**vary** [1] - 47:6
**varying** [1] - 57:6
**vast** [2] - 104:2, 104:7
**vehicle** [1] - 20:17
**verified** [1] - 52:8
**versus** [1] - 105:10
**vice** [9] - 16:16, 16:19,
16:24, 16:25, 110:8,
110:15, 111:10,
115:14, 116:2
**Vicinage** [1] - 17:6
**vicinage** [1] - 17:8
**view** [2] - 109:9,
113:15
**views** [1] - 99:3
**violated** [3] - 16:9,
74:20, 90:7
**violates** [1] - 29:24
**violation** [1] - 60:12
**visibility** [1] - 39:3
**voice** [1] - 27:24
**voices** [1] - 114:7

## W

**wait** [6] - 49:9, 59:6,
100:10, 102:10,
108:11, 109:1
**waited** [1] - 27:5
**waiting** [1] - 37:23
**waive** [3] - 26:15,
27:19, 49:9
**waived** [5] - 79:3,
82:2, 82:3, 82:12,
82:22
**waiver** [3] - 40:17,
80:11, 81:10
**waiving** [4] - 49:17,
49:19, 83:14, 99:4
**walked** [1] - 46:16
**wants** [11] - 17:13,
21:19, 25:1, 25:10,
30:25, 50:4, 54:24,
55:11, 56:18, 61:5,
62:11
**waste** [1] - 58:24
**wasted** [1] - 76:5
**watch** [1] - 32:22
**Watkins** [1] - 42:14

**ways** [1] - 70:20
**weave** [1] - 102:4
**website** [1] - 28:9
**websites** [7] - 57:7,
57:9, 57:20, 78:21,
78:23, 90:25
**wedded** [1] - 31:4
**weeds** [1] - 118:3
**week** [3] - 38:14, 97:5,
98:4
**weeks** [2] - 69:16,
97:1
**Whitepages** [12] -
31:16, 31:17, 32:5,
80:2, 80:4, 80:9,
81:19, 81:24, 92:7,
102:25
**willing** [3] - 100:24,
109:21, 118:2
**wise** [1] - 34:24
**wish** [3] - 32:15,
99:15, 102:14
**wishes** [1] - 81:23
**wives** [1] - 81:23
**wondering** [2] - 97:6,
97:19
**word** [4] - 16:20,
16:22, 17:1, 116:19
**words** [10] - 21:25,
38:20, 49:17, 53:19,
68:25, 82:20, 83:18,
84:5, 89:8, 98:16
**works** [6] - 20:9, 26:8,
26:9, 62:5, 93:23
**worried** [1] - 80:17
**worry** [3] - 45:7,
116:19, 118:7
**worse** [1] - 92:3
**worth** [2] - 37:1, 42:25
**wrap** [1] - 76:3
**wreak** [1] - 114:25
**Wright** [1] - 91:20
**writing** [1] - 70:20
**written** [2] - 42:6,
71:17
**wrote** [1] - 100:22

## Y

**Yahoo** [1] - 53:10
**Yardi** [1] - 116:9
**year** [3] - 87:10, 87:14,
102:2
**Year's** [1] - 38:11
**years** [2] - 31:6, 45:14
**yelled** [1] - 116:21
**yesterday** [1] - 51:2